CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Lisa M. Schweitzer

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------- X
                                                   :
In re                                              :    Chapter 11
                                                   :
Inversiones Alsacia S.A., et al.,[1]               :    Case No. 14-_____ (___)
                                                   :
                       Debtors.                    :    Joint Administration Requested
                                                   :
------------------------------------------------- X
```

**DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER**
**(A) SCHEDULING A COMBINED HEARING TO CONSIDER THE**
**ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF**
**THE PLAN, (B) ESTABLISHING DEADLINES AND PROCEDURES TO FILE**
**OBJECTIONS TO THE DISCLOSURE STATEMENT AND PLAN, (C) APPROVING**
**THE FORM AND MANNER OF NOTICE OF THE CONFIRMATION**
**HEARING, (D) ESTABLISHING PROCEDURES FOR ANY PROPOSED**
**ASSUMPTION AND CURE OF EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES PURSUANT TO THE PLAN, AND (E) GRANTING**
**RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE**
**SOLICITATION PROCEDURES, (B) APPROVING THE ADEQUACY**
**OF THE DISCLOSURE STATEMENT AND (C) CONFIRMING THE PLAN**

**("SCHEDULING AND SOLICITATION PROCEDURES MOTION")**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtor's Chilean and/or Bermudan tax identification number, as applicable, are: Inversiones Alsacia S.A. [400-3]; Express de Santiago Uno S.A. [390-2]; Inversiones Eco Uno S.A. [710-4]; and Panamerican Investments Ltd. [3471]. The location of the corporate headquarters and the service address for Inversiones Alsacia S.A. and Panamerican Investments Ltd. is: Avenida Santa Clara 555, Huechuraba, Santiago, Chile. The location of the corporate headquarters and the service address for Express de Santiago Uno S.A. and Inversiones Eco Uno S.A. is: Camino El Roble 200, Pudahuel, Santiago, Chile.

Inversiones Alsacia S.A. ("Alsacia") and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby file this motion (the "Motion") seeking (I) entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Scheduling Order"): (a) scheduling a combined hearing (the "Confirmation Hearing") to consider the adequacy of the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Inversiones Alsacia S.A. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, and including any supplements or annexes thereto, the "Disclosure Statement") and confirmation of the *Debtors' Joint Prepackaged Chapter 11 Plan*, dated October 16, 2014 (as may be amended, and including all exhibits and supplements thereto, the "Plan"),[2] (b) establishing a deadline for objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline") and approving related procedures, (c) approving the form and manner of notice of the Confirmation Hearing and the commencement of the Chapter 11 Cases (the "Notice Procedures"), (d) establishing procedures for any proposed assumption and cure of executory contracts and unexpired leases pursuant to the Plan (the "Assumption Procedures"), and (e) granting the Debtors such other and further relief as the Court deems just and proper; and (II) entry of an order (the "Confirmation Order") (a) approving the solicitation procedures (the "Solicitation Procedures") used in connection with the Debtors' prepetition solicitation of the Plan described below and further discussed in the Disclosure Statement, (b) approving the adequacy of the Disclosure Statement, and (c) confirming the Plan. In support of this Motion, the Debtors rely on the *Declaration of Jose Ferrer Fernandez in Support of First Day Motions and Applications in Compliance with Local*

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. The Plan and the Disclosure Statement have been filed contemporaneously herewith and are incorporated herein by reference.

*Rule 1007-2* (the "First Day Declaration").  In further support of this Motion, the Debtors

respectfully represent as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference* from the United States District Court for the

Southern District of New York dated January 31, 2012.  This matter is a core proceeding within

the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with

Article III of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory bases for the relief requested herein are sections 105, 341, 365,

1125, 1126, 1128 and 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code"), Rules 2002, 3016, 3017, 3018 and 3020 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 3017-1, 3018, and 3020-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the *Amended*

*Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy*

*Court for the Southern District of New York*, as amended, effective August 1, 2013 (as adopted

by General Order M-454) (the "Guidelines").

## BACKGROUND[3]

### A.    The Chapter 11 Filings

4.    On the date hereof, each of the Debtors filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code (the date and time of such filing, the "Petition Date").  The

---

[3]    A more complete description of the Debtors' corporate structure and businesses, and the events leading to
the Chapter 11 Cases, are set forth in the First Day Declaration and the Disclosure Statement, each filed on the date
hereof.

Debtors have filed a motion seeking joint administration of their chapter 11 cases (the "Chapter 11 Cases") under Bankruptcy Rule 1015(b) and consolidation for procedural purposes only.  The Debtors are operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' Chapter 11 Cases.

**B.      The Debtors' Businesses**

5.      Alsacia and its debtor-affiliate, Express de Santiago Uno S.A. ("Express" together with Alsacia, the "Concessionaires"), operate passenger bus lines of the public transportation system of the Santiago, Chile metropolitan area (known as the Transantiago system) under two concession agreements (the "Concession Agreements") with the Republic of Chile's Ministry of Transportation and Telecommunications ("MTT").  The Concessionaires' combined operations constitute the largest bus transportation operator in the Santiago metropolitan area, as measured by bus capacity and scheduled route length.

6.      During 2013, the Debtors reported  consolidated revenues of approximately $431.7 million and generated approximately $59.3 million in EBITDA.  As of the Petition Date, the Debtors had outstanding prepetition debt obligations of approximately $368.1 million, consisting primarily of approximately $347.3 million in outstanding principal amount under the 8.0% senior secured notes due 2018 issued by Alsacia (the "Senior Secured Notes").  The Senior Secured Notes are guaranteed by debtor-affiliates Express, Inversiones Eco Uno S.A. ("Eco Uno") and Panamerican Investments Ltd. ("Panamerican").

**C.      The Proposed Restructuring**

7.      Since the issuance of the Senior Secured Notes in 2011, the Debtors' cash flows have not grown to a level sufficient to support the Debtors' existing debt obligations on their current terms.  Due to a number of factors, including new concession agreements that included

4

unfavorable changes to revenue formulas and other terms, rising fare evasion, declining

passenger traffic as a result of a rise in competing modes of transportation, substantial

investment in an ongoing bus overhaul program and the Debtors' existing debt service

obligations, the Debtors determined it would be necessary to restructure the Senior Secured

Notes in order to meet their financial obligations over the long-term.

8.      To that end, in the months prior to the Petition Date, the Debtors engaged in

extensive negotiations and discussions with an informal group of holders of approximately 63%

of the outstanding Senior Secured Notes (the "Ad Hoc Group").  These discussions culminated

in an agreement with certain holders, or investment managers for holders, of the Senior Secured

Notes who signed a restructuring and plan support agreement (the "Consenting Senior Secured

Noteholders") with respect to a consensual restructuring on the terms set forth in the Debtors'

Joint Prepackaged Chapter 11 Plan, dated October 16, 2014 (including all exhibits and

supplements thereto, the "Plan") and as memorialized in the Restructuring and Plan Support

Agreement, dated as of August 31, 2014 (as amended, the "RPSA"), by and among each of the

Debtors, each of the Alsacia Shareholders and each of the Consenting Senior Secured

Noteholders.

9.      Following execution of the RPSA, the Debtors commenced a prepetition

solicitation of the Plan to holders of the Senior Secured Notes Claims – the only class of claims

or interests entitled to vote on the Plan.  Prior to the Petition Date, 100% in amount and number

of the holders of Senior Secured Notes Claims that cast ballots, constituting approximately

82.6% of the outstanding amount of the Senior Secured Notes, voted to accept the Plan.

10.     If confirmed, the Plan will implement the agreed restructuring of the Debtors'

obligations to the holders of the Senior Secured Notes, providing that (i) Qualified Holders of

5

Senior Secured Notes will each receive their pro rata share of the New Notes in accordance with the terms set forth in the Plan, (ii) Non-Qualified Holders of Senior Secured Notes will receive the Non-Qualified Holder Distribution, paid in cash, and (iii) all holders of Senior Secured Notes Claims will receive an amount equal to the accrued interest on the principal amount of the Senior Secured Notes from (and including) October 1, 2014 through (and excluding) the date on which the New Notes are issued (based upon a principal amount of $364,433,466.67), paid in cash. Under the Plan, each holder of any other allowed claim or interest will receive treatment that renders such allowed claim or interest not impaired (through reinstatement or satisfaction of such claim or interest).

11.    The Debtors intend to seek expeditious approval of the Disclosure Statement and confirmation of the Plan in accordance with the terms of the RPSA.  The Debtors believe that the Plan represents the best prospect for restructuring the Debtors' capital structure, providing the Concessionaires with adequate liquidity to perform under the Concession Agreements and positioning the Concessionaires to continue as efficient and competitive passenger bus operators serving the people of Santiago, Chile.

12.    The Plan provides for the classification of certain classes of creditors and interest holders as impaired or unimpaired.  Specifically, the Plan provides for seven (7) different classes of claims and interests in the Debtors, as follows:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1A – 4A | Senior Secured Notes Claims | Impaired | Entitled To Vote |
| 1B – 4B | Other Secured Claims | Unimpaired | Deemed To Accept; Not Entitled To Vote |
| 1C – 4C | Other Priority Claims | Unimpaired | Deemed To Accept; Not Entitled To Vote |

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1D – 4D | General Unsecured Claims | Unimpaired | Deemed To Accept; Not Entitled To Vote |
| 1E – 4E | Intercompany Claims | Unimpaired | Deemed To Accept; Not Entitled to Vote |
| 1F – 4F | Subordinated Claims | Unimpaired | Deemed To Accept; Not Entitled To Vote |
| 1G – 4G | Interests | Unimpaired | Deemed To Accept; Not Entitled To Vote |

13.     The Disclosure Statement provides a more detailed discussion of the Plan's treatment of the various classes of Claims and Interests.

**D.     Summary of the Solicitation Procedures**

14.     Following the execution of the RPSA and to effectuate the terms of the consensual restructuring, on September 15, 2014, prior to the filing of these Chapter 11 Cases, the Debtors, through their balloting agent, Prime Clerk LLC ("Prime Clerk" or the "Balloting Agent"),[4] caused copies of the following materials in connection with voting on the Plan (the "Solicitation Packages") to be transmitted to the holders of claims in Class 1A-4A (Senior Secured Notes Claims) or their Nominees (as defined below), as applicable:  the Disclosure Statement, the Plan (attached as Exhibit A to the Disclosure Statement) and the appropriate ballot, in the form of Exhibit B-1 attached hereto (the "Beneficial Owner Ballot") or master ballot, in the form of Exhibit B-2 attached hereto (the "Master Ballot," and together with the Beneficial Owner Ballot, the "Ballots"), with voting instructions and a pre-paid, pre-addressed

---

[4]     The Debtors employed Prime Clerk prepetition to assist in the solicitation process, and have filed applications to retain Prime Clerk as their claims and noticing agent as well as the balloting agent in these Chapter 11 Cases.

return envelope.  Class 1A-4A (Senior Secured Notes Claims) is the only impaired class of creditors and the only class of creditors entitled to vote on the Plan.

15.      The Debtors established October 10, 2014, at 5:00 p.m. (prevailing Eastern Time) as the deadline for the receipt of votes from the holders of Senior Secured Notes Claims to accept or reject the Plan (the "Voting Deadline").  Contemporaneously herewith, the Debtors filed the *Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Plan of Reorganization of Inversiones Alsacia S.A. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated October 15, 2014 (the "Tabulation Declaration"), certifying the results and methodology for tabulation of Ballots accepting or rejecting the Plan.  As of the voting deadline of October 10, 2014, 100% in amount and number of the holders of Senior Secured Notes Claims that cast ballots, constituting approximately 82.6% of the outstanding amount of the Senior Secured Notes, voted to accept the Plan.[5]

### RELIEF REQUESTED

16.      By this Motion, the Debtors seek, on an emergency basis, entry of the Proposed Scheduling Order: (i) scheduling the Confirmation Hearing to consider the adequacy of the Disclosure Statement and confirmation of the Plan, (ii) establishing the Objection Deadline and approving related procedures, (iii) approving the Notice Procedures, (iv) approving the Assumption Procedures, and (v) granting the Debtors such other and further relief as the Court deems just and proper.  The relief requested in this Motion is particularly appropriate in these

---

[5]      Prime Clerk received a properly completed supplemental Master Ballot from Broadridge Financial Solutions Inc. on October 10, 2014, after the Voting Deadline.  In accordance with the Solicitation Procedures, the Debtors waived the defect with respect to this Master Ballot and directed Prime Clerk to include the votes reflected on this Master Ballot in the final tabulation.

Chapter 11 Cases given that the Debtors' sole impaired class of creditors entitled to vote on the

Plan has already voted to accept the Plan.

17.     The Debtors also request that after appropriate notice and the Confirmation

Hearing, the Court enter the Confirmation Order, which among other things, (i) approves the

Solicitation Procedures, (ii) approves the adequacy of the Disclosure Statement, and

(iii) confirms the Plan.  A form of the Debtors' proposed Confirmation Order will be filed with

the Court prior to the Confirmation Hearing.  The Debtors will also file a memorandum of law

(the "Confirmation Brief") in support of the relief proposed by the Confirmation Order no fewer

than four days prior to the Confirmation Hearing.

18.     Below is a table highlighting the dates relevant to the Solicitation Procedures and

setting forth the Debtors' proposed dates for the mailing of the Confirmation Hearing Notice (as

defined herein), the Objection Deadline and the Confirmation Hearing:

| PROPOSED TIMELINE | |
|---|---|
| **Voting Record Date** | September 5, 2014 |
| **Commencement of Prepetition Solicitation** | September 15, 2014 |
| **Voting Deadline** | October 10, 2014 at 5:00 p.m. (EST) |
| **Petition Date** | October 16, 2014 |
| **Mailing of Confirmation Hearing Notice** | October 21, 2014 |
| **Plan Supplement** | November 13, 2014 |
| **Objection Deadline** | November 18, 2014 |
| **Reply Deadline** | November 21, 2014 |
| **Confirmation Hearing** | November 25, 2014 |

## BASIS FOR RELIEF

### A.     Confirmation Hearing to Consider the Adequacy of the Disclosure Statement and Confirmation of the Plan

19.     Pursuant to section 1128(a) of the Bankruptcy Code, the Debtors request that the

Court set a hearing to consider confirmation of the Plan.  Section 1128(a) of the Bankruptcy

Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." 11

U.S.C. § 1128(a). Pursuant to Bankruptcy Rule 3017(a), the Debtors also request that the Court

set a hearing to consider approval of the Disclosure Statement. Bankruptcy Rule 3017(a)

provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors,

equity security holders and other parties in interest . . . to consider the disclosure statement and

any objections or modifications thereto." Fed. R. Bankr. P. 3017(a). In addition, Bankruptcy

Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court . . .

may fix a date for the hearing on confirmation." Fed R. Bankr. P. 3017(c). Furthermore, Section

105(d)(2)(B)(vi) of the Bankruptcy Code authorizes the Court to combine a hearing on a

disclosure statement with a hearing on confirmation of a plan of reorganization. See 11 U.S.C.

§ 105(d)(2)(B)(vi); see also Part XI of the Guidelines (specifying that in a prepackaged chapter

11 case, the hearings on a debtor's compliance with section 1126(b) of the Bankruptcy Code and

on confirmation of the plan "shall be combined whenever practicable").

    20.    The Debtors request that the Court schedule a single hearing to consider both

approval of the Disclosure Statement and confirmation of the Plan on or about November 25,

2014 (the "Confirmation Hearing Date"). A combined hearing on or about November 25, 2014

is warranted. First, in compliance with Bankruptcy Rules 2002(b) and 3017(a), the Debtors have

requested that the Court schedule the Confirmation Hearing on a date that is forty (40) days after

the Petition Date. The Debtors also will provide notice of the Confirmation Hearing and related

deadlines consistent with Bankruptcy Rules 2002 and 3017(a), section 1128(a) of the Bankruptcy

Code and Part X.D. of the Guidelines. Second, as described above, the Debtors negotiated the

terms of the Plan over several months prior to the Petition Date. During this time, the Ad Hoc

Group and its advisors had access to information concerning the Debtors and had the opportunity

to review much of the information contained in the Disclosure Statement.  <u>Third</u>, the Debtors

commenced solicitation in accordance with sections 1125(g) and 1126(b) of the Bankruptcy

Code prior to the Petition Date.  <u>Fourth</u>, the Plan is a fully consensual prepackaged plan, having

obtained the support of holders of claims in Class 1A-4A, the only class entitled to vote on the

Plan, as set forth in the Tabulation Declaration.  <u>Fifth</u>, a combined hearing will reduce the time

the Debtors remain in bankruptcy, helping to preserve the value of the estates.  <u>Finally</u>, under the

RPSA, the Debtors have acknowledged that time is of the essence with respect to certain case-

related milestones and have an obligation to move as expeditiously as possible.  The requested

timing of the Confirmation Hearing satisfies the requirements of the RPSA.

**B.      Deadline for Objections to the Adequacy of the Disclosure Statement and
         Confirmation of the Plan**

21.      Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least

28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to

consider . . . any objections or modifications" to a disclosure statement.  Fed. R. Bankr. P.

3017(a).  Similarly, Bankruptcy Rule 2002(b) requires at least twenty-eight (28)-days' notice be

given by mail to all creditors of the time fixed for filing objections and the hearing to consider

approval of a disclosure statement and confirmation of a chapter 11 plan.  Fed. R. Bankr.

2002(b).  Additionally, section X.D. of the Guidelines provides that notice of a hearing on the

adequacy of disclosure and plan confirmation must be mailed at least twenty-eight (28) days

prior to the hearing unless such period is otherwise shortened by the Court.  Pursuant to

Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served

"within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1).  Local Rule 3020-1

additionally provides that objections to confirmation of a plan must be filed not later than seven

(7) days prior to the hearing on confirmation of the plan unless the Court orders otherwise.

11

22.    The Debtors request that the Court set the Objection Deadline at 4:00 p.m.

prevailing Eastern Time on November 18, 2014.  In compliance with the Guidelines, the

Debtors' proposed schedule would provide parties-in-interest with at least twenty-eight (28)

days' notice of the Objection Deadline and Confirmation Hearing.

23.    Additionally, the Debtors request that the Court require that objections to the

Disclosure Statement or confirmation of the Plan, if any, must:

(a)    be in writing;

(b)    comply with the Bankruptcy Rules, the Local Rules and other case
management rules and orders of this Court;

(c)    state the name and address of the objecting party and the amount
and nature of the claim or interest asserted by the objecting party
against the estate or property of the Debtors;

(d)    state with particularity the legal and factual basis for such
objections, and, if applicable, a proposed modification to the Plan
that would resolve such objection; and

(e)    be filed with the Court with proof of service thereof and served
upon the following parties, so as to be **actually received** by the
Objection Deadline: (i) the Office of the United States Trustee for
Region 2, U.S. Federal Office Building, 201 Varick Street, Suite
1006, New York, NY 10014; (ii) counsel to the Debtors, Cleary
Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York,
New York 10006, Attn: Lisa M. Schweitzer, Esq.; (iii) counsel to
the Ad Hoc Group, Akin Gump Strauss Hauer & Feld LLP, One
Bryant Park, Bank of America Tower, New York, New York
10036, Attn: Daniel H. Golden, Esq. and David P. Simonds, Esq.;
(iv) counsel to the Trustee and the U.S. Collateral Trustee, Emmet,
Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York,
New York 10271, Attn: Thomas A. Pitta, Esq.; (v) the Chilean
Collateral Trustee, Banco Santander Chile, Bandera 140, piso 4,
Santiago de Chile, Attn: Edward Garcia; and (vi) any persons who
have filed a request for notice in the Chapter 11 Cases pursuant to
Bankruptcy Rule 2002 (collectively, the "Notice Parties").

24.    Setting the Objection Deadline as requested, and requiring that objecting parties

satisfy the above-mentioned conditions, is warranted as the requested relief complies with the

12

Guidelines and the Bankruptcy Rules and will afford the Court, the Debtors, and other parties in interest sufficient time to consider any objections prior to the Confirmation Hearing.

**C.      Form and Manner of the Notice Procedures**

25.      As noted above, Bankruptcy Rule 2002 requires notice to all holders of claims and interests of the time fixed for filing objections and the hearing on confirmation of a chapter 11 plan.  Fed. R. Bankr. P. 2002(b).[6]  Additionally, Part X.A. of the Guidelines requires that notice of the filing of a plan and disclosure statement and notice of the hearing to consider compliance with disclosure requirements and confirmation of the plan must be given to all parties in interest.  To that end, the Debtors request approval of the Notice Procedures, which include distribution of the Confirmation Hearing Notice and the Publication Notice (each as defined below).

26.      The Debtors request authorization to serve the Summary of Debtors' Joint Prepackaged Chapter 11 Plan and Notice of (I) Commencement of Prepackaged Chapter 11 Cases, and (II) Combined Hearing to Approve (A) Debtors' Compliance with Disclosure Requirements and (B) Confirmation of Joint Prepackaged Chapter 11 Plan, substantially in the form of Exhibit 1 to the Proposed Scheduling Order attached hereto (the "Confirmation Hearing Notice"), by first-class mail upon the Debtors' creditor matrix and all record holders of the Debtors' debt securities, which service will occur within two (2) business days after entry of the Proposed Scheduling Order and in compliance with the notice period set forth in the Guidelines and the applicable Bankruptcy Rules.  The Confirmation Hearing Notice likewise will be served

---

[6]      Bankruptcy Rule 3017(a) contains a similar requirement with respect to the hearing on approval of a disclosure statement.  Here, the Debtors are not seeking separate approval of the Disclosure Statement under section 1125(b) of the Bankruptcy Code.  Such approval is not required at the present time because the Disclosure Statement was transmitted prepetition.  Rather, the Debtors will seek approval of the Disclosure Statement, including a finding that the Disclosure Statement contained "adequate information," as that term is used in section 1125 of the Bankruptcy Code, at the Confirmation Hearing pursuant to section 1125(g) of the Bankruptcy Code.

upon the Notice Parties.  Additionally, the Confirmation Hearing Notice will be available on the

Debtors' restructuring website, http://cases.primeclerk.com/alsacia.

27.     With respect to the copies of the Confirmation Hearing Notice that will be sent to

certain holders of debt securities, the Debtors propose to deliver such notices to the record

holders of such Claims, including, without limitation, representatives such as brokers, dealers,

commercial banks, trust companies, or other nominees or agents (collectively, the "Nominees").

Each Nominee will receive reasonably sufficient copies of the Confirmation Hearing Notice and

instructions to distribute the Confirmation Hearing Notice to the beneficial holders of the Claims

for whom such Nominee acts.

28.     The form and content of the Confirmation Hearing Notice is substantially in the

form of Exhibit D to the Guidelines.  In accordance with Bankruptcy Rules 2002 and 3017(d)

and Part X.B. of the Guidelines, the Confirmation Hearing Notice will:  (i) provide notice of the

commencement of the Debtors' Chapter 11 Cases; (ii) provide a brief summary of the Plan; (iii)

disclose the date, time and place of the Confirmation Hearing; (iv) disclose the date and time of

the Objection Deadline and the procedures for objecting to the Disclosure Statement and the

Plan; and (v) provide the manner in which the Disclosure Statement and the Plan can be obtained

or viewed electronically.  See Fed. R. Bankr. P. 2002, 3017(d); Part X.B.1. of the Guidelines.  In

addition, the Confirmation Hearing Notice will inform parties in interest of the potential

scheduling of a meeting of creditors under section 341 of the Bankruptcy Code.  See Part X.B.2.

of the Guidelines.  The Debtors believe that service of the Confirmation Hearing Notice in this

manner will provide sufficient notice of the Confirmation Hearing and all applicable objection

deadlines and requirements.

29.     Bankruptcy Rule 2002(l) also permits the Bankruptcy Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). Prior to the Confirmation Hearing, the Debtors propose to publish a notice, substantially in the form of Exhibit 2 to the Proposed Scheduling Order attached hereto (the "Publication Notice"), in the New York Times (National Edition) and any other publications the Debtors deem necessary in their sole discretion[7] within five (5) business days after entry of the Proposed Scheduling Order (or as soon as practicable thereafter). The Debtors believe that the Publication Notice will provide sufficient notice of the pending approval of the Disclosure Statement, the Confirmation Hearing and the Objection Deadline to entities who will not otherwise receive notice by mail as provided herein.

**D.      Procedures for Proposed Assumption and Cure of Executory Contracts and Unexpired Leases Pursuant to the Plan**

30.     The Plan provides that on the Effective Date, except as otherwise provided therein or pursuant to the Confirmation Order, each executory contract and unexpired lease shall be deemed assumed unless it (a) is listed on the Rejection Schedule, (b) has been previously assumed or rejected by the Debtors by Final Order or has been assumed or rejected by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date, (c) previously expired or terminated according to its own terms, or (d) is the subject of a motion to assume or reject pending as of the Effective Date. See Plan § 5.1.

31.     The Debtors seek to establish the following procedures for notice of the possible assumption of, and proposed cure amounts ("Cure Amounts") for, any executory contracts or unexpired leases in default as of the Petition Date to be assumed under the Plan (the "Assumed Contracts and Leases"). To facilitate a prompt resolution of cure disputes and objections relating

---

[7]      To the extent the Debtors determine to publish the Publication Notice in a local paper in Chile, such notice may be translated into Spanish.

to the assumption of the Assumed Contracts and Leases pursuant to the Plan,[8] the Debtors

propose the following Assumption Procedures:

(a)    at least fourteen (14) calendar days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed notices, in the form attached as <u>Exhibit 3</u> to the Proposed Scheduling Order (the "<u>Assumption/Cure Notice</u>") of the proposed assumption and proposed Cure Amount to the applicable third parties;

(b)    any objections to the proposed assumption, proposed Cure Amount, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or any other matter pertaining to the proposed assumption of the executory contract or lease specified in such Assumption/Cure Notice (a "<u>Cure Objection</u>") must be filed with the Court and served on the Notice Parties no later than four (4) calendar days before the Confirmation Hearing (the "<u>Response Deadline</u>"); <u>provided</u>, <u>however</u>, that if, subsequent to the Response Deadline, the Debtors modify the list of the Assumed Contracts and Leases to add an executory contract or lease or to reduce the Cure Amount thereof, except where such reduction was based upon mutual agreement of the parties, the counterparty to such Assumed Contract or Lease shall have seven (7) days after service of such amendment to object thereto or to propose an alternative Cure Amount(s);

(c)    any party objecting to the potential assumption of such Assumed Contract or Lease or objecting to the Cure Amount(s), shall be required to file and serve a Cure Objection, in writing, setting forth with specificity any and all cure obligations that the objecting party asserts must be cured or satisfied in respect of the Assumed Contract or Lease and/or any and all objections to the potential assumption of such Assumed Contract or Lease, together with all documentation supporting such cure claim or objection, upon each of the Notice Parties so that the Cure Objection is **<u>actually received</u>** by them no later than the Response Deadline.  If a Cure Objection is timely filed and the parties are unable to settle such Cure Objection, the Court shall determine the amount of any disputed Cure Amount(s) or adjudicate such Cure Objection at a hearing to be held at the time of the Confirmation Hearing or such other hearing date the Court may set or to which the parties may mutually agree; and

---

[8]    The Assumption Procedures do not apply to any executory contract or unexpired lease that the Debtors seek to assume in a motion separately from the Plan.

16

(d)    any counterparty to an Assumed Contract or Lease that fails to timely object to the proposed assumption or Cure Amount of any Assumed Contract or Lease shall be deemed to have consented to such assumption or Cure Amount.

32.    The inclusion of an Assumed Contract or Lease in the Assumption/Cure Notice is without prejudice to the Debtors' right to modify their election to assume or reject such Assumed Contract or Lease prior to the entry of a final, non-appealable order (which order may be the order confirming the Plan) approving the assumption or rejection of such Assumed Contract or Lease, and receipt of an Assumption/Cure Notice or inclusion in the list of executory contracts and unexpired leases sought to be assumed under the Plan is not a final determination that any Assumed Contract or Lease will, in fact, be assumed.

33.    In addition, the Debtors specifically reserve the right to designate any executory contract or unexpired lease for rejection under the Plan[9] by filing the Rejection Schedule in the Plan Supplement with the Court identifying the rejected executory contracts and leases, notwithstanding that the Debtors previously served an Assumption/Cure Notice on such party.[10]

34.    Section 365(a) of the Bankruptcy Code empowers a debtor in possession, "subject to the court's approval, [to] assume or reject any executory contract or unexpired lease of the debtor."  The Debtors submit that the foregoing Assumption Procedures should be approved because they will help facilitate the resolution of any issues concerning Cure Amounts and/or objections regarding the possible assumption of executory contracts and unexpired leases, while adequately protecting the rights of the counterparties to the Assumed Contracts and Leases.  The Response Deadline is reasonable and allows counterparties that are served with an

---

[9]    As specified in section 5.4 of the Plan, in the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such executory contract or lease, a proof of claim for such damages must be filed with the Claims and Solicitation Agent no later than thirty (30) days after the later of (i) the Confirmation Date or (ii) the effective date of such rejection.

[10]    According to the Plan, the Plan Supplement must be filed no later than five (5) business days before the Confirmation Hearing.

Assumption/Cure Notice with ample time to object and will provide the opportunity for

resolution of Cure Objections, if any, prior to the Confirmation Hearing.  Furthermore, the

establishment of expedited procedures to govern the filing of any objections to the Debtors'

possible assumption of executory contracts and unexpired leases, the proposed Cure Amount or

the proposed adequate assurance of future performance is an important component of the Plan

and these Chapter 11 Cases.  Accordingly, the Assumption Procedures should be approved

because they are in the best interest of the Debtors, their estates, their creditors and other parties

in interest.

**E.**    **Approval of the Solicitation Procedures**

35.    As described above, the Debtors distributed the Solicitation Package and solicited

the votes of the holders of Senior Secured Notes Claims, as members of the class of claims in

Classes 1A through 4A, to accept or reject the Plan prior to the commencement of these Chapter

11 Cases pursuant to section 1125(g) of the Bankruptcy Code.  See 11 U.S.C. § 1125(g)

(allowing debtors to commence solicitation prior to filing chapter 11 petitions).  The Debtors

relied on section 4(a)(2) and Regulation S under the United States Securities Act of 1933 (as

amended), and similar state securities law provisions, to exempt from registration under the

Securities Act the offer of New Notes to Qualified Holders of Senior Secured Notes Claims

before the filing of the Chapter 11 Cases, including in connection with the solicitation.  The

Debtors believe that both the offer of New Notes to the Qualified Holders of Senior Secured

Notes Claims and the cash tender offer for the Senior Secured Notes directed towards Non-

Qualified Holders was made in compliance with the relevant provisions of Regulation 14E under

the United States Securities Exchange Act of 1934 (as amended), to the extent applicable.

Accordingly, by this Motion, the Debtors seek a determination from this Court at the

Confirmation Hearing that the Solicitation Procedures are in compliance with applicable

nonbankruptcy law.

36.    Additionally, Bankruptcy Code Section 1126(b) provides that:

> [A] holder of a claim or interest that has accepted or rejected the
> plan before the commencement of the case under this title is
> deemed to have accepted or rejected such plan, as the case may be,
> if –
>> (1) the solicitation of such acceptance or rejection was in
>> compliance with any applicable nonbankruptcy law, rule,
>> or regulation governing the adequacy of disclosure in
>> connection with such solicitation; or
>>
>> (2) if there is not any such law, rule, or regulation, such
>> acceptance or rejection was solicited after disclosure to
>> such holder of adequate information, as defined in section
>> 1125(a) of this title.

As described below, the Disclosure Statement is extensive and comprehensive and the Debtors

believe it provides adequate disclosure under applicable nonbankruptcy law and adequate

information as defined in section 1125(a).  Bankruptcy Rule 3017(d) sets forth the materials that

must be provided to holders of claims for the purpose of soliciting their votes to accept or reject a

plan of reorganization.  See Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3017(e) provides that

"the court shall consider the procedures for transmitting the documents and information required

by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other

securities, determine the adequacy of such procedures, and enter any orders as the court deems

appropriate."  Fed. R. Bankr. P. 3017(e).  As set forth herein, the Solicitation Procedures and the

adequacy of disclosure complied with the Bankruptcy Code, the Bankruptcy Rules and

applicable nonbankruptcy law.

## 1.    Voting Record Date

37.    Bankruptcy Rule 3018(b) provides that the holders of record of claims or interests

entitled to receive ballots and the related solicitation materials are determined as of "the date

specified in the solicitation . . . ." Fed. R. Bankr. P. 3018(b). The Solicitation Package clearly

identified September 5, 2014 as the record date (the "Voting Record Date") for determining

which holders of claims and interests were entitled to vote to accept or reject the Plan.

Accordingly, the Debtors' designation of the Voting Record Date conforms to Bankruptcy Rule

3018(b).

### 2.   Approval of Voting Deadline

38.   Bankruptcy Rule 3018(b) provides that prepetition acceptances or rejections of a

plan are valid only if, among other things, the plan was transmitted to substantially all the

holders of claims or interests in each solicited class and the time for voting was not unreasonably

short. See Fed. R. Bankr. P. 3018(b). Parts VII.A.(1)-(3) of the Guidelines indicate that voting

periods of twenty-one (21) days for publicly traded securities, fourteen (14) business days for

debt that is not publicly traded and twenty-one (21) days for "all other claims and interests," all

as measured from the date of mailing of the Solicitation Package, will generally be approved as

reasonable. However, the Guidelines do not preclude a shorter voting period if justified in a

particular case. See Part VII.B. of the Guidelines. The Debtors commenced solicitation of votes

from the holders of the Senior Secured Notes on September 15, 2014.

39.   The Debtors established 5:00 p.m. (prevailing Eastern Time) on October 10, 2014

as the Voting Deadline for the holders of Senior Secured Notes Claims (the only creditors

entitled to vote on the Plan) to accept or reject the Plan (the "Voting Period"), which provided

for a twenty-five (25) day solicitation period. In compliance with Rule 14e-1 under the

Exchange Act (to the extent applicable), the Voting Period was held open for at least twenty (20)

business days. The Disclosure Statement and the Ballot stated in clear and conspicuous language

that the Ballot must have been properly executed, completed and returned to the Balloting Agent

so that it was actually received by the Balloting Agent no later than the Voting Deadline.

40.     The Debtors respectfully submit that the holders of Senior Secured Notes Claims had adequate time to consider the Plan and Disclosure Statement.  Drafts of the Plan and Disclosure Statement were subject to extensive review and comment by the Ad Hoc Group, including the Ad Hoc Group Advisors, prior to the commencement of solicitation of votes on the Plan.  Additionally, the Voting Period complies with the time period deemed reasonable by the Guidelines (which only require a twenty-one (21) day voting period).  Accordingly, the Debtors submit that the requested Voting Deadline provided the holders of Senior Secured Notes Claims with sufficient time to review and vote on the Plan, and that the Voting Period provided by the Solicitation Procedures was sufficient under applicable law and reasonable under the facts and circumstances of these Chapter 11 Cases and therefore should be approved.

### 3.     Approval of Ballot, Solicitation Package, Additional Materials and Transmittal

41.     Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form No. 14 only to "creditors and equity security holders entitled to vote on the plan."  Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity holder or an authorized agent, and conform to the appropriate Official Form."  Fed. R. Bankr. P. 3018(c).

42.     The Debtors caused a Solicitation Package containing the Disclosure Statement, the Plan (attached as Exhibit A to the Disclosure Statement), the Ballots, substantially in the form of Exhibits B-1 and B-2 hereto, and a pre-paid, pre-addressed return envelope to be transmitted to the holders of Senior Secured Notes Claims or their Nominees, as applicable, on September 15, 2014, prior to the filing of these Chapter 11 Cases.  The Ballots conform with Official Form No. 14 and are modeled after Exhibits B and C to the Guidelines except to the

21

extent that they have been tailored to address the particular circumstances of these Chapter 11

Cases to include certain additional information that the Debtors believe to be relevant and

appropriate for the holders of Senior Secured Notes Claims entitled to vote to accept or reject the

Plan.  See Fed. R. Bankr. P. 3017(d).  To be counted as votes to accept or reject the Plan, each

Ballot provides that it must be properly executed, completed and delivered to the Balloting

Agent (directly or via a Nominee, as applicable) so as to be actually received by the Voting

Deadline.

43.    The Solicitation Package was transmitted by the Debtors to the Balloting Agent

which, in turn, delivered the Solicitation Package, by overnight mail and electronic mail (if

available) on September 15, 2014 to the record holders of Senior Secured Notes Claims as of the

Voting Record Date.  Holders of Senior Secured Notes Claims were informed that they could

obtain additional copies of the Solicitation Package, including the Ballots, by contacting the

Balloting Agent.

44.    Nominees were provided with Solicitation Packages (including a Beneficial

Owner Ballot) for each beneficial holder represented by the Nominee as of the Voting Record

Date, as well as the Master Ballot for use by the Nominees to tabulate votes submitted on

Beneficial Owner Ballots by beneficial holders.  Nominees were provided with two options

related to distribution of the Solicitation Packages to beneficial holders who held their Senior

Secured Notes through such Nominee.  Each Nominee was entitled to elect to (1) "pre-validate"

the Beneficial Owner Ballot, i.e., execute the Beneficial Owner Ballot, forward the Solicitation

Package and executed Beneficial Owner Ballot to the beneficial holder as of the Voting Record

Date and instruct the beneficial holder to (A) indicate its vote to accept or reject the Plan and (B)

return the executed Beneficial Owner Ballot directly to the Balloting Agent; or (2) forward the

22

Solicitation Package together with the unexecuted Beneficial Owner Ballot to the beneficial

holder as of the Voting Record Date with instructions for the beneficial holder to complete and

return the executed Beneficial Owner Ballot to the Nominee.  In the event that a Nominee

elected to proceed pursuant to option (2) in the immediately preceding sentence, such Nominee

was required to advise its beneficial holders to return their Beneficial Owner Ballot to the

Nominee by a date that would permit the Nominee sufficient time to prepare and return its

Master Ballot to the Balloting Agent by the Voting Deadline.

45.    As mentioned above, holders of Claims against, or Interests in, the Debtors in the

remaining classes (Classes 1B-4B, 1C-4C, 1D-4D, 1E-4E, 1F-4F and 1G-4G) were not furnished

with a Solicitation Package prior to the Petition Date.  Such holders of Claims or Interests are

Unimpaired and presumed to accept the Plan, pursuant to section 1126(f) of the Bankruptcy

Code.  However, as set forth above, holders of such Claims and Interests will be mailed a copy

of the Confirmation Hearing Notice.

### 4.    Approval of Procedures for Vote Tabulation

46.    The Debtors respectfully request that the Court approve the voting and tabulation

procedures described herein in accordance with section 1126(c) of the Bankruptcy Code and

Bankruptcy Rule 3018(a).  Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been
> accepted by creditors, other than any entity designated under
> subsection (e) of this section, that hold at least two-thirds in
> amount and more than one-half in number of the allowed claims of
> such class held by creditors, other than any entity designated
> under subsection (e) of this section, that have accepted or
> rejected such plan.

11 U.S.C. § 1126(c).  Further, Bankruptcy Rule 3018(a) provides that the "court after notice and

hearing may temporarily allow [a] claim or interest in an amount which the court deems proper

for the purpose of accepting or rejecting a plan."  Fed. R. Bankr. P. 3018(a).

47.    The Debtors request that the Court approve their vote tabulation methodology. The Ballots, Master Ballots and Solicitation Package were transmitted via overnight mail and electronic mail.  To ensure sufficient time to review the Plan and the Disclosure Statement, holders of Senior Secured Notes Claims were also entitled to return their Ballots or Master Ballots to the Balloting Agent by electronic mail, first class mail, overnight courier or hand delivery.  The Balloting Agent did not count or consider for any purpose in determining whether the Plan has been accepted or rejected the following Ballots or Master Ballots, as applicable: (i) any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (ii) any Ballot or Master Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (iii) any unsigned Ballot or Master Ballot; (iv) any Ballot or Master Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; (v) any Ballot or Master Ballot received after the Voting Deadline, unless otherwise determined by the Debtors;[11] and (vi) any Ballot or Master Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

48.    With respect to tabulating the Master Ballots and, where applicable, pre-validated Beneficial Owner Ballots, the following additional protocol was utilized:

(a)    votes cast by holders of Senior Secured Notes who hold their notes through Nominees were applied to the applicable positions held by such Nominees as of the Voting Record Date, as evidenced by the record and depository listings.  Votes submitted by a Nominee were not to be counted in excess of the amount of the Senior Secured Notes held by such Nominee as of the Voting Record Date;

(b)    if conflicting votes or "over-votes" were submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial

---

[11]    As indicated in the Tabulation Declaration, Prime Clerk received a properly completed supplemental Master Ballot from Broadridge Financial Solutions Inc. on October 10, 2014, after the Voting Deadline.  In accordance with the Solicitation Procedures, the Debtors waived the defect with respect to this Master Ballot and directed Prime Clerk to include the votes reflected on this Master Ballot in the final tabulation.

Owner Ballot, the Debtors and the Balloting Agent used reasonable efforts to reconcile discrepancies with such Nominee;

(c)    if over-votes were submitted by a Nominee on a Master Ballot or pre-validated Beneficial Owner Ballot which were not reconciled prior to the preparation of the certification of votes on the Plan, the votes to accept and to reject the Plan were tabulated in the same proportion as the votes to accept or to reject the Plan submitted by the Nominee on a Master Ballot or pre-validated Beneficial Owner Ballot, but only to the extent of the Nominee's Voting Record Date position in the Senior Secured Notes;

(d)    for the purposes of tabulating votes, each beneficial holder was deemed (regardless of whether such holder included interest in the amount voted on its Beneficial Owner Ballot) to have voted only the principal amount of its Senior Secured Notes; any principal amounts thus voted may be thereafter adjusted by the Balloting Agent, on a proportionate basis with a view to the amount of Senior Secured Notes actually voted, to reflect the corresponding claim amount, including any accrued but unpaid prepetition interest, with respect to the Senior Secured Notes thus voted; and

(e)    a single Nominee may have completed and delivered to the Balloting Agent multiple Master Ballots. Votes reflected on multiple Master Ballots were counted except to the extent that they were duplicative of other Master Ballots. If two or more Master Ballots were inconsistent, the last properly completed Master Ballot received prior to the Voting Deadline, to the extent of such inconsistency, superseded any prior received Master Ballot.

49.    Procedures similar to the foregoing Solicitation Procedures have been approved in other prepackaged chapter 11 cases in this district. See, e.g., Order, In re Newland Int'l Props., Corp., Case No. 13-11396 (MG) (Bankr. S.D.N.Y. May 30, 2013), ECF No. 125; Order, In re CIT Group Inc., Case No. 09-16565 (ALG) (Bankr. S.D.N.Y. Dec. 8, 2009), ECF No. 193; Order, In re Bally Total Fitness of Greater New York, Inc., Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 2, 2007), ECF No. 92; Order, In re Trico Marine Servs., Inc., Case No. 04-17985 (SMB) (Bankr. S.D.N.Y. Jan. 21, 2005), ECF No. 52. Accordingly, the Debtors respectfully request that the Court approve the Solicitation Procedures.

25

5.      **Non-Transmission of Disclosure Statement to Certain Holders of Claims and Equity Interests**

50.      For the reasons set forth herein, the Debtors request a waiver of the Bankruptcy Rule requirement that the Debtors mail a copy of the Plan and Disclosure Statement to holders of claims and equity interests deemed to accept the Plan.  See Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, inter alia, classes of unimpaired creditors and equity security holders).  The Debtors submit that because acceptances and rejections of the Plan were solicited prepetition, no disclosure statement was "approved" under Bankruptcy Rule 3017(d), and therefore, Bankruptcy Rule 3017 is not applicable here.  Further, Part X.A. of the Guidelines provides that "[n]o further distribution of the [p]lan or [d]isclosure [s]tatement (or other solicitation document) beyond that which occurred pre-petition is required unless requested by a party-in-interest."  The Debtors will make the Disclosure Statement and the Plan available at no cost on the website maintained in these Chapter 11 Cases, http://cases.primeclerk.com/alsacia, and will include a summary of the Plan in the Confirmation Hearing Notice.  Moreover, it would be a significant and unnecessary administrative burden on the Debtors to transmit the Disclosure Statement and Plan to holders of claims or interests that are not impaired under, and that have been deemed to accept the Plan.    Accordingly, it is not appropriate to require the Debtors to transmit copies of the Solicitation Package to the holders of claims or equity interests that are presumed to accept, and thus not entitled to vote, the Plan.

F.      **Approval that the Disclosure Statement Contains Adequate Information**

51.      At the Confirmation Hearing, in addition to seeking confirmation of the Plan and approval of the Solicitation Procedures and vote tabulation procedures, the Debtors will seek the Court's ruling that the prepetition solicitation complied with section 1126(b)(2) of the

26

Bankruptcy Code because the Disclosure Statement provided "adequate information" within the meaning of section 1125 of the Bankruptcy Code.[12]

52.    Section 1125(a) of the Bankruptcy Code defines "adequate information" as

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).  The Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code.

53.    The Debtors' Disclosure Statement is extensive and comprehensive.  The Disclosure Statement contains descriptions and summaries of, among other things, (i) the Debtors' businesses and capital structure, (ii) the events leading to these Chapter 11 Cases, (iii) the Plan, (iv) the Solicitation Procedures, (v) risk factors affecting the Plan, (vii) a liquidation analysis setting forth the estimated return that creditors would receive in a hypothetical chapter 7 case, (viii) financial information relevant to the creditors' determinations of whether to accept or reject the Plan, and (ix) federal tax and securities law consequences.

54.    In addition, and as noted above, the Disclosure Statement and the Plan were subject to extensive review and comment by the Ad Hoc Group, members of the only class entitled to vote on the Plan, as well as its counsel and other advisors.  Accordingly, and for the reasons that will be more fully established at the Confirmation Hearing, the Debtors submit that

---

[12]    The Debtors also believe the prepetition solicitation complied with section 1126(b)(1) of the Bankruptcy Code.  The Debtors reserve the right to supplement this Motion if necessary prior to the Confirmation Hearing.

the Disclosure Statement contains adequate information within the meaning of section 1125(a) of

the Bankruptcy Code and should be approved.

### G.   Confirmation of the Plan

55.   The Debtors believe that the Plan satisfies all of the requirements for confirmation

under the Bankruptcy Code.  As noted above, the Debtors have requested that the Court schedule

the Confirmation Hearing at which time the Debtors will seek confirmation of the Plan.  Prior to

the Confirmation Hearing, the Debtors will file the Confirmation Brief (i) demonstrating that the

Plan satisfies each requirement for confirmation and (ii) responding to any objections to

confirmation.

### RESERVATION OF RIGHTS

56.   Nothing contained herein is intended or should be construed as an admission as to

the validity of any claim against any of the Debtors, a waiver of any Debtor's right to dispute any

claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the

Bankruptcy Code.  Likewise, nothing contained herein is intended or should be construed to be

an admission as to the validity of any claim or a waiver of any Debtor's right to subsequently

dispute such claim.

### NOTICE

57.   Notice of the Motion has been given via facsimile, electronic transmission, hand

delivery or overnight mail to (i) the Office of the United States Trustee for Region 2; (ii) counsel

to the Trustee and the U.S. Collateral Trustee; (iii) the Chilean Collateral Trustee; (iv) counsel to

the Ad Hoc Group; (v) those creditors holding the thirty (30) largest unsecured claims against the

Debtors' estates; (vi) the Internal Revenue Service; (vii) the Securities and Exchange

Commission; and (viii) all others that are required to be noticed in accordance with Bankruptcy

Rule 2002 and Local Rule 2002-1.  The Debtors submit that, in light of the nature of the relief

requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

58.     No prior motion for the relief requested herein has been made to this or any other

court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  October 16, 2014
        New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ *Lisa M. Schweitzer*
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

## EXHIBIT A

## Proposed Scheduling Order

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- X
                                                         :
In re                                                    :   Chapter 11
                                                         :
Inversiones Alsacia S.A., et al.,[1]                     :   Case No. 14-_____ (___)
                                                         :
                              Debtors.                   :   Joint Administration Requested
                                                         :
-------------------------------------------------------- X
```

### ORDER (I) SCHEDULING A COMBINED HEARING TO CONSIDER THE ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN, (II) ESTABLISHING DEADLINES AND PROCEDURES TO FILE OBJECTIONS TO THE DISCLOSURE STATEMENT AND PLAN, (III) APPROVING THE FORM AND MANNER OF NOTICE OF THE CONFIRMATION HEARING, (IV) ESTABLISHING PROCEDURES FOR ANY PROPOSED ASSUMPTION AND CURE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO THE PLAN, AND (V) GRANTING  RELATED RELIEF

### ("SCHEDULING ORDER")

Upon the motion (the "Motion")[2] of Inversiones Alsacia S.A. and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (the "Debtors"), for entry of an order, as more fully described in the Motion, (i) scheduling the Confirmation Hearing to consider the adequacy of the Disclosure Statement and confirmation of the Plan; (ii) establishing the Objection Deadline and approving related procedures; (iii) approving the Notice Procedures; (iv) approving the Assumption Procedures; and (v) granting the Debtors such other and further relief

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtor's Chilean and/or Bermudan tax identification number, as applicable, are:  Inversiones Alsacia S.A. [400-3]; Express de Santiago Uno S.A. [390-2]; Inversiones Eco Uno S.A. [710-4]; and Panamerican Investments Ltd. [3471].  The location of the corporate headquarters and the service address for Inversiones Alsacia S.A. and Panamerican Investments Ltd. is: Avenida Santa Clara 555, Huechuraba, Santiago, Chile. The location of the corporate headquarters and the service address for Express de Santiago Uno S.A. and Inversiones Eco Uno S.A. is: Camino El Roble 200, Pudahuel, Santiago, Chile.

[2]       Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

as the Court deems just and proper; and upon the *Declaration of Jose Ferrer Fernandez in Support of First Day Motions and Applications in Compliance with Local Rule 1007-2*, filed concurrently with the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated August 31, 2013; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted to the extent set forth herein.

2.    The Confirmation Hearing, at which time the Court will consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held before the Honorable _____, United States Bankruptcy Judge, in court room ____ of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on November 25, 2014 at __:__ _.m. (prevailing Eastern

Time).  The Confirmation Hearing may be continued from time to time by the Court without

further notice.

3.     Any objections to the Disclosure Statement or confirmation of the Plan must be

filed with the Clerk of the Court, together with proof of service thereof, so as to be **actually**

**received** by 4:00 p.m. (prevailing Eastern Time) on November 18, 2014 (the "Objection

Deadline") by (i) the Office of the United States Trustee for Region 2, U.S. Federal Office

Building, 201 Varick Street, Suite 1006, New York, NY 10014; (ii) counsel to the Debtors,

Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn:

Lisa M. Schweitzer, Esq.; (iii) counsel to the Ad Hoc Group, Akin Gump Strauss Hauer & Feld

LLP, One Bryant Park, Bank of America Tower, New York, New York 10036, Attn: Daniel H.

Golden, Esq. and David P. Simonds, Esq.; (iv) counsel to the Trustee and the U.S. Collateral

Trustee, Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, New York

10271, Attn: Thomas A. Pitta, Esq.; (v) the Chilean Collateral Trustee, Banco Santander Chile,

Bandera 140, piso 4, Santiago de Chile, Attn: Edward Garcia; and (vi) any persons who have

filed a request for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002

(collectively, the "Notice Parties").

4.     In addition, any objections to the Disclosure Statement or confirmation of the

Plan must:

    (a)    be in writing;

    (b)    comply with the Bankruptcy Rules, the Local Rules and other case
management rules and orders of the Bankruptcy Court;

    (c)    state the name and address of the objecting party and the amount
and nature of the claim or interest asserted by the objecting party
against the estate or property of the Debtors; and

(d)     state with particularity the legal and factual basis for such objections, and, if applicable, a proposed modification to the Plan that would resolve such objection.

5.      Any objections not timely filed and served in the manner set forth in this Order may not be considered and may be overruled.

6.      Replies to objections received by the Objection Deadline, if any, shall be filed with the Clerk and the Clerk of the Court, together with proof of service thereof, so as to be **actually received** by 4:00 p.m. (prevailing Eastern Time) on November 21, 2014 (the "Reply Deadline").

7.      The Debtors are authorized to combine the notice of the Confirmation Hearing with the notice of the Chapter 11 Cases.

8.      The form of the Confirmation Hearing Notice, substantially in the form attached hereto as Exhibit 1, complies with the requirements of Bankruptcy Rules 2002 and 3017 and is hereby approved in its entirety, and the Debtors shall mail or cause to be mailed a copy of the Confirmation Hearing Notice within two (2) business days after entry of this Order upon (i) the Debtors' creditor matrix; (ii) all record holders of the Debtors' debt securities; and (iii) the Notice Parties.

9.      The Debtors are authorized to enter into transactions to cause the Publication Notice, substantially in the form attached hereto as Exhibit 2, to be published in the New York Times (National Edition) and any other publications the Debtors deem necessary in their sole discretion, within five (5) business days after entry of this Order (or as soon as practicable thereafter), and to make reasonable payments required for such publication.

10.     The Debtors are not required to mail a copy of the Plan or the Disclosure Statement to holders of claims or equity interests that are not impaired and conclusively presumed to accept the Plan.

11.     The Notice Procedures set forth above constitute good and sufficient notice of the Confirmation Hearing, the commencement of the Chapter 11 Cases, the deadline and procedures for objecting to the approval and adequacy of the Solicitation Procedures and the Disclosure Statement and the confirmation of the Plan, and no further notice shall be necessary.

12.     The following procedures for any proposed assumption and cure of executory contracts and unexpired leases (the "Assumption Procedures") are approved:

(a)     at least fourteen (14) calendar days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, notices in the form attached as Exhibit 3 to this Proposed Scheduling Order (the "Assumption/Cure Notice") of the proposed assumption and proposed Cure Amount to the applicable third parties;

(b)     any objections to the proposed assumption, proposed Cure Amount, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or any other matter pertaining to the proposed assumption of the executory contract or lease specified in such Assumption/Cure Notice (a "Cure Objection") must be filed with the Court and served on the Notice Parties no later than four (4) calendar days before the Confirmation Hearing (the "Response Deadline"); provided, however, that if, subsequent to the Response Deadline, the Debtors modify the list of the Assumed Contracts and Leases to add an executory contract or lease or to reduce the Cure Amount thereof, except where such reduction was based upon mutual agreement of the parties, the counterparty to such Assumed Contract or Lease shall have seven (7) days after service of such amendment to object thereto or to propose an alternative Cure Amount(s);

(c)     any party objecting to the potential assumption of such Assumed Contract or Lease or objecting to the Cure Amount(s), shall be required to file and serve a Cure Objection, in writing, setting forth with specificity any and all cure obligations that the objecting party asserts must be cured or satisfied in respect of the Assumed

5

Contract or Lease and/or any and all objections to the potential assumption of such Assumed Contract or Lease, together with all documentation supporting such cure claim or objection, upon each of the Notice Parties so that the Cure Objection is actually received by them no later than the Response Deadline.  If a Cure Objection is timely filed and the parties are unable to settle such Cure Objection, the Court shall determine the amount of any disputed Cure Amount(s) or adjudicate such Cure Objection at a hearing to be held at the time of the Confirmation Hearing or such other hearing date the Court may set or to which the parties may mutually agree; and

(d)    any counterparty to an Assumed Contract or Lease that fails to timely object to the proposed assumption or Cure Amount of any Assumed Contract or Lease shall be deemed to have consented to such assumption or Cure Amount.

13.    The inclusion of an Assumed Contract or Lease in the Assumption/Cure Notice is without prejudice to the Debtors' right to modify their election to assume or reject such Assumed Contract or Lease prior to the entry of a final, non-appealable order (which order may be the order confirming the Plan) approving the assumption or rejection of such Assumed Contract or Lease, and receipt of an Assumption/Cure Notice or inclusion in the list of executory contracts and unexpired leases sought to be assumed under the Plan is not a final determination that any Assumed Contract or Lease will, in fact, be assumed.

14.    The Debtors reserve the right to designate any executory contract or unexpired lease for rejection under the Plan by filing the Rejection Schedule in the Plan Supplement with the Court identifying the rejected executory contracts and leases, notwithstanding that the Debtors previously served an Assumption/Cure Notice on such party.

15.    Nothing contained in the Motion or this Order shall be deemed or construed as an admission as to the validity or priority of any claim or lien against the Debtors or as a waiver of the Debtors' rights to dispute any claim or lien.

6

16.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

18.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

19.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.


Dated: _____, 2014            _____
        New York, NY                  United States Bankruptcy Judge

**EXHIBIT 1**

**Proposed Confirmation Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- X
                                                         :
In re                                                    :    Chapter 11
                                                         :
Inversiones Alsacia S.A., et al.,[1]                     :    Case No. 14-_____ (____)
                                                         :
                            Debtors.                     :    Joint Administration Requested
                                                         :
-------------------------------------------------------- X
```

**SUMMARY OF DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**
**AND NOTICE OF (I) COMMENCEMENT OF PREPACKAGED**
**CHAPTER 11 CASES AND (II) COMBINED HEARING TO APPROVE**
**(A) DEBTORS' COMPLIANCE WITH THE DISCLOSURE REQUIREMENTS**
**AND (B) CONFIRMATION OF JOINT PREPACKAGED CHAPTER 11 PLAN**

**NOTICE IS HEREBY GIVEN** as follows:

<u>**Commencement of the Chapter 11 Cases**</u>

On October 16, 2014 (the "Petition Date"), Inversiones Alsacia S.A. ("Alsacia") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), each filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). By order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), the cases are being jointly administered for procedural purposes under Case No. 14-_____ (   ).

You may be a creditor of one of the Debtors. **The filing of the Chapter 11 Cases automatically stays certain collection and other actions against the Debtors and the Debtors' property. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized.** This notice provides important information concerning the Chapter 11 Cases. You may want to consult an attorney to protect your rights. All pleadings filed in the Chapter 11 Cases may be inspected at the office of the Clerk of the Bankruptcy Court for the Southern District of New York (the "Clerk's Office") at the address

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtor's Chilean and/or Bermudan tax identification number, as applicable, are:  Inversiones Alsacia S.A. [400-3]; Express de Santiago Uno S.A. [390-2]; Inversiones Eco Uno S.A. [710-4]; and Panamerican Investments Ltd. [3471].  The location of the corporate headquarters and the service address for Inversiones Alsacia S.A. and Panamerican Investments Ltd. is: Avenida Santa Clara 555, Huechuraba, Santiago, Chile. The location of the corporate headquarters and the service address for Express de Santiago Uno S.A. and Inversiones Eco Uno S.A. is: Camino El Roble 200, Pudahuel, Santiago, Chile.

listed below.  In addition, most pleadings filed in the Debtors' Chapter 11 Cases will be posted on the website of Prime Clerk LLC ("Prime Clerk") at http://cases.primeclerk.com/alsacia. **PLEASE NOTE:  neither the staff of the Clerk's Office nor Prime Clerk can give legal advice.**

## Summary of Plan of Reorganization[2]

On the Petition Date, the Debtors filed the *Debtors' Joint Prepackaged Chapter 11 Plan* (as may be amended, and including all exhibits and supplements thereto, the "Plan") and a proposed disclosure statement (the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk's Office, One Bowling Green, New York, New York 10004, where they are available for review between the hours of 9:00 a.m. to 4:30 p.m. (prevailing Eastern Time). The Plan and the Disclosure Statement also are available for inspection on the Bankruptcy Court's Internet site at www.nysb.uscourts.gov or free of charge on the Debtors' Internet site at http://cases.primeclerk.com/alsacia.

The Plan is a "prepackaged" plan of reorganization.  The primary purpose of the Plan is to implement a restructuring of the 8.0% senior secured notes due 2018 issued by Alsacia (the "Senior Secured Notes").  If confirmed, the Plan will implement the agreed restructuring of the Debtors' obligations to the holders of the Senior Secured Notes, providing that (i) Qualified Holders[3] of Senior Secured Notes will each receive their pro rata share of the New Notes in accordance with the terms set forth in the Plan, (ii) Non-Qualified Holders[4] of Senior Secured Notes will receive the Non-Qualified Holder Distribution, paid in cash, and (iii) all holders of Senior Secured Notes Claims will receive an amount equal to the accrued interest on the principal amount of the Senior Secured Notes from (and including) October 1, 2014 through (and excluding) the date on which the New Notes are issued (based upon a principal amount of $364,433,466.67), paid in cash.  Under the Plan, each holder of any other allowed claim or interest will receive treatment that renders such allowed claim or interest not impaired (through reinstatement or satisfaction of such claim or interest).

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.  The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein.  To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, the Plan or the Disclosure Statement, as applicable, shall govern and control.  For a more detailed description of the Plan, please refer to the Disclosure Statement.

[3]    A Qualified Holder is a Senior Secured Noteholder that certifies that it is:  (a) a "Qualified Institutional Buyer" as such term is defined in 230 CFR 144A(a); (b) an "Accredited Investor" as defined in Rule 501(a) under the Securities Act; or (c) a person other than a "U.S. Person", as such term is defined in Rule 902(k) under the Securities Act, that is not located in the United States of America.

[4]    A Non-Qualified Holder is a Senior Secured Noteholder that:  (a) certifies that it is not (i) a "Qualified Institutional Buyer" as such term is defined in 230 CFR 144A(a), (ii) an "Accredited Investor" as such term is defined in Rule 501(a) under the Securities Act, or (iii) a Person other than "U.S. Persons", as such term is defined in Rule 902(k) under the Securities Act, that is not located in the United States of America; and (b) holds Senior Secured Notes in a principal amount that is less than $150,000.

Votes on the Plan were solicited prior to the Petition Date. The following chart summarizes the treatment provided by the Plan to each Class of Claims and Interests and indicates the acceptance or rejection by each Class entitled to vote.

| Class | Class Description | Treatment | Accept/Reject | Estimated Recovery |
|---|---|---|---|---|
| Unclassified | Administrative Claims | Unimpaired. The Plan provides for payment of each Allowed Administrative Claim in full in Cash. | N/A | 100% |
| Unclassified | Professional Claims | Unimpaired. The Plan provides for payment of each Allowed Professional Claim in full in Cash. | N/A | 100% |
| Unclassified | Priority Tax Claims | Unimpaired. The Plan provides that each holder of an Allowed Priority Tax Claim shall receive treatment in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, payment in full in Cash or other less favorable treatment as may be agreed upon by the holder of such Allowed Priority Tax Claim and the applicable Debtor, with the consent of the Requisite Consenting Senior Secured Noteholders, which consent shall not be unreasonably withheld. | N/A | 100% |
| 1A – 4A | Senior Secured Notes Claims | Impaired. In full and final satisfaction and discharge of the Senior Secured Notes Claims, (i) each Qualified Holder of an Allowed Senior Secured Notes Claim shall receive its Pro Rata share of the New Notes, (ii) each Non-Qualified Holder of an Allowed Senior Secured Notes Claim shall | [Accepted] | 46.6% to 100%[5] |

---

[5]    The projected recovery for Class 1A-4A (Senior Secured Notes Claims) is based on a net present value calculation at an 8.0% discount rate of the projected interest, mandatory amortizations and expected excess cash flows of the Reorganized Debtors through December 31, 2018, assuming that there is no extension of the Concession Agreements beyond their scheduled expiration of October 22, 2018. As noted in the Projections in the Disclosure Statement, if the Concession Agreements are extended beyond October 22, 2018, the recovery for Class 1A-4A (Senior Secured Notes Claims) may be higher because the terms of the New Notes provide for their maturity to be extended and for additional amortizations to be made on the New Notes. Because the terms of the New Notes provide for their maturity to be extended and for additional amortizations to be made if certain conditions, including the extension of the Concession Agreements beyond April 21, 2021, are met, the recovery is dependent on, among other things, the terms of any extension, the operating environment during any extension period, and the number and length of extensions granted, if any. There can be no assurances that the Debtors will receive any extension of the Concession Agreements, including an extension through 2021, and any such extension is subject to the risks described in Section XI.B and XI.D of the Disclosure Statement. Recoveries for Class 1A-4A (Senior Secured Notes Claims) at the top of the range indicated above will require that the Debtors receive multiple extensions of the concession agreements and/or that the operating performance of the Reorganized Debtors materially improves through 2021. Repayment of the New Notes remains subject to a number of risks, as described in Section XI of the Disclosure Statement.

| Class | Class Description | Treatment | Accept/Reject | Estimated Recovery |
|---|---|---|---|---|
| | | receive the Non-Qualified Holder Distribution and (iii) each Holder of an Allowed Senior Secured Notes Claim shall receive Cash in the amount equal to interest accrued on the principal amount of the Senior Secured Notes from (and including) October 1, 2014 through (and excluding) the Issue Date, as provided in the Plan. | | |
| 1B – 4B | Other Secured Claims | Unimpaired.  The Plan provides that each holder of an Allowed Other Secured Claim shall, at the election of the Reorganized Debtors, (i) have the legal, equitable and contractual rights of such holder Reinstated, or (ii) receive, at the option of the Debtors, subject to the consenting of the Requisite Consenting Senior Secured Noteholders, which consent shall not be unreasonably withheld, (A) Cash in an amount equal to such Allowed Other Secured Claim, (B) the property of the Debtors that constitutes collateral securing such Allowed Other Secured Claim, or (C) other treatment that renders its Allowed Other Secured Claim Unimpaired. | Deemed to Accept | 100% |
| 1C – 4C | Other Priority Claims | Unimpaired.  The Plan provides that each holder of an Allowed Other Priority Claim shall receive (i) Cash in an amount equal to such Allowed Other Priority Claim or (ii) other treatment, subject to the consent of the Requisite Consenting Senior Secured Noteholders, which consent shall not be unreasonably withheld, rendering its Allowed Other Priority Claim Unimpaired. | Deemed to Accept | 100% |
| 1D – 4D | General Unsecured Claims | Unimpaired.  Holders of Allowed General Unsecured Claims shall receive Cash in an amount equal to such Allowed General Unsecured Claim on the later of the Effective Date or in the ordinary course of business in accordance with the terms of the particular transaction giving rise to such Allowed General Unsecured Claim. | Deemed to Accept | 100% |
| 1E – 4E | Intercompany | Unimpaired.  Each Allowed | Deemed to Accept | 100% |

4

| Class | Class Description | Treatment | Accept/Reject | Estimated Recovery |
|-------|-------------------|-----------|---------------|--------------------|
|  | Claims | Intercompany Claim will be, at the election of the Reorganized Debtors, subject to the prior written consent of the Requisite Consenting Senior Secured Noteholders, which consent shall not be unreasonably withheld, either (i) released, waived, and discharged as of the Effective Date; (ii) contributed to the capital of the obligor Entity; (iii) dividended; or (iv) remain Unimpaired, as may be agreed to by the applicable Reorganized Debtor and the Holder of such Intercompany Claim, subject to the requirements of and restrictions contained in the New Notes Indenture, if any. |  |  |
| 1F – 4F | Subordinated Claims | Unimpaired.  Holders of Allowed Subordinated Claims shall receive Cash in an amount equal to such Allowed Subordinated Claim on the later of the Effective Date, the date on which such Subordinated Claim is Allowed, or in the ordinary course of business in accordance with the terms of the particular transaction giving rise to such Allowed Subordinated Claim. | Deemed to Accept | 100% |
| 1G – 4G | Interests | Unimpaired.  On the Effective Date, the Allowed Interests in the Debtors shall be Reinstated. | Deemed to Accept | 100% |

The Plan provides that on the Effective Date, except as otherwise provided therein or pursuant to the Confirmation Order, each executory contract and unexpired lease shall be deemed assumed unless it (a) is listed on the Rejection Schedule, (b) has been previously assumed or rejected by the Debtors by Final Order or has been assumed or rejected by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date, (c) previously expired or terminated according to its own terms, or (d) is the subject of a motion to assume or reject pending as of the Effective Date.

## Discharge, Injunctions, Exculpation and Releases

Please be advised that the Plan contains certain discharge, injunction, exculpation and release provisions as follows:

**A.    Discharge of Claims and Termination of Interests.**

**Except as otherwise provided for in the Plan and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in**

exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

    B.    Releases by the Debtors.

        Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or the Estates, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Finance Agreements (including the Senior Secured Notes, the Senior Secured Notes Indenture and the Collateral Trust Agreement), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, solicitation, or preparation of the RPSA, the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of <u>Section 8.3</u> of the Plan shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in <u>Section 8.3</u> of the Plan shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes Indenture and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in <u>Section 8.3</u> of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by <u>Section 8.3</u> of the Plan; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors asserting any Claim or Cause of Action released by this <u>Section 8.3</u> of the Plan.

C.    Releases by Releasing Parties.

As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Reorganized Debtors, the Estates, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Finance Agreements (including the Senior Secured Notes, the Senior Secured Notes Indenture and the Collateral Trust Agreement), the Sponsor Support Agreement, the Shareholder Pledge Agreements (solely to the extent that such Shareholder Pledge Agreements secure the Senior Secured Notes), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, solicitation, or preparation of the RPSA, the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; <u>provided</u>, <u>however</u>, that the foregoing provisions of <u>Section 8.4</u> of the Plan shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal

conduct as determined by a Final Order entered by a court of competent jurisdiction; **provided** **further** that nothing in Section 8.4 of the Plan shall release any post-Effective Date obligations (except Cure Claims that have not been timely filed) of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 8.4 of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that such releases are: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtors, the Reorganized Debtors, the Estates and the Released Parties; (b) a good faith settlement and compromise of the Claims released by Section 8.4 of the Plan; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity granting a release under this Section 8.4 of the Plan from asserting any Claim or Cause of Action released by this Section 8.4 of the Plan.

D.    **Exculpation.**

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; **provided**, **however**, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; **provided**, **further**, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan.  The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

E.    **Injunction.**

Except as otherwise provided in the Plan or for obligations issued pursuant to the Plan, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 8.3 or Section 8.4 of the Plan, discharged pursuant to Section 8.2 of the Plan, or are subject to exculpation pursuant to Section 8.5 of the Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in

connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

### Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan

A hearing to consider approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code as well as a hearing to consider confirmation of the Plan will be held before the **Honorable _____, United States Bankruptcy Judge, in Court Room _____ of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on November 25, 2014 at __:__ _.m. (prevailing Eastern Time) (the "Confirmation Hearing")**.  Please be advised that the Confirmation Hearing may be continued from time to time by the Bankruptcy Court without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

Any objections to the adequacy of the Disclosure Statement or confirmation of the Plan (each, an "Objection") must:

    (a)     be in writing;

    (b)     comply with the Bankruptcy Rules, the Local Rules and other case management rules and orders of the Bankruptcy Court;

    (c)     state the name and address of the objecting party and the amount and nature of the claim or interest asserted by the objecting party against the estate or property of the Debtors;

    (d)     state with particularity the legal and factual basis for such objections, and, if applicable, a proposed modification to the Plan that would resolve such objection;

    (e)     be filed with the Clerk of the Bankruptcy Court, together with proof of service thereof; and

    (f)     be served upon the following parties, so as to be **actually received** by no later than **November 18, 2014 at 4:00 p.m. (prevailing Eastern Time)**:  (i) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014; (ii) counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York,

New York 10006, Attn: Lisa M. Schweitzer, Esq.; (iii) counsel to the Ad Hoc Group, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, New York 10036, Attn: Daniel H. Golden, Esq. and David P. Simonds, Esq.; (iv) counsel to the Trustee and the U.S. Collateral Trustee, Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, New York 10271, Attn: Thomas A. Pitta, Esq.; (v) the Chilean Collateral Trustee, Banco Santander Chile, Bandera 140, piso 4, Santiago de Chile, Attn: Edward Garcia; and (vi) any persons who have filed a request for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE DISCLOSURE STATEMENT AND THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### <u>Creditors' Meeting</u>

A meeting pursuant to section 341(a) of the Bankruptcy Code (the "<u>Creditors' Meeting</u>") shall be held at _____, on _____, 2014 at__:__ _.m. (prevailing Eastern Time).  Such meeting will not be convened if (i) the Plan is confirmed prior to the date set forth above for the Creditors' Meeting and (ii) the order confirming the Plan (or order entered substantially contemporaneously therewith) contains a provision waiving the convening of the Creditors' Meeting.

Dated:  New York, New York                     BY ORDER OF THE COURT

      _____, 2014                          _____

                              United States Bankruptcy Judge

CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Lisa M. Schweitzer

*Proposed Counsel for the Debtors
and Debtors in Possession*

**EXHIBIT 2**

**Proposed Publication Notice**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- X
                                                          :
In re                                                     :   Chapter 11
                                                          :
Inversiones Alsacia S.A., et al.,[1]                      :   Case No. 14-_____ (___)
                                                          :
                              Debtors.                    :   Joint Administration Requested
                                                          :
-------------------------------------------------------- X
```

**SUMMARY OF DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**
**AND NOTICE OF (I) COMMENCEMENT OF PREPACKAGED**
**CHAPTER 11 CASES AND (II) COMBINED HEARING TO APPROVE**
**(A) DEBTORS' COMPLIANCE WITH THE DISCLOSURE REQUIREMENTS**
**AND (B) CONFIRMATION OF JOINT PREPACKAGED CHAPTER 11 PLAN**

<u>**TO:**</u>   **ALL HOLDERS OF CLAIMS, HOLDERS OF INTERESTS, AND PARTIES IN**
**INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

<u>**Commencement of the Chapter 11 Cases**</u>

        **PLEASE TAKE NOTICE THAT** on October 16, 2014 (the "<u>Petition Date</u>"), Inversiones
Alsacia S.A. ("<u>Alsacia</u>") and certain of its affiliates, as debtors and debtors in possession
(collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"),
each filed petitions for relief under chapter 11 of title 11 of the United States Code (the
"<u>Bankruptcy Code</u>").  By order of the United States Bankruptcy Court for the Southern District
of New York (the "<u>Bankruptcy Court</u>"), the cases are being jointly administered for procedural
purposes under Case No. 14 - _____ (_____).

        You may be a creditor of one of the Debtors.  **The filing of the Chapter 11 Cases**
**automatically stays certain collection and other actions against the Debtors and the**
**Debtors' property.  If you attempt to collect a debt or take other action in violation of the**

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtor's Chilean and/or
Bermudan tax identification number, as applicable, are:  Inversiones Alsacia S.A. [400-3]; Express de Santiago Uno
S.A. [390-2]; Inversiones Eco Uno S.A. [710-4]; and Panamerican Investments Ltd. [3471].  The location of the
corporate headquarters and the service address for Inversiones Alsacia S.A. and Panamerican Investments Ltd.
is: Avenida Santa Clara 555, Huechuraba, Santiago, Chile. The location of the corporate headquarters and the
service address for Express de Santiago Uno S.A. and Inversiones Eco Uno S.A. is: Camino El Roble 200,
Pudahuel, Santiago, Chile.

**Bankruptcy Code, you may be penalized.**  This notice provides important information concerning the Chapter 11 Cases.  You may want to consult an attorney to protect your rights.

> **PLEASE TAKE FURTHER NOTICE THAT** on the same date, the Debtors filed a proposed joint prepackaged chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the office of the Clerk of the Bankruptcy Court, One Bowling Green, New York, New York 10004, where they are available for review between the hours of 9:00 a.m. to 4:30 p.m. (prevailing Eastern Time).  The Plan and the Disclosure Statement also are available for inspection on the Bankruptcy Court's Internet site at www.nysb.uscourts.gov or free of charge on the Debtors' Internet site at http://cases.primeclerk.com/alsacia.[2]

> **PLEASE TAKE FURTHER NOTICE THAT** a hearing to consider approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code as well as a hearing to consider confirmation of the Plan will be held before the **Honorable _____, United States Bankruptcy Judge, in Court Room _____ of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on November 25, 2014 at __:__ _.m. (prevailing Eastern Time) (the "Confirmation Hearing")**.  Please be advised that the Confirmation Hearing may be continued from time to time by the Bankruptcy Court without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

> **PLEASE TAKE FURTHER NOTICE THAT** objections (each, an "Objection"), if any, to the Plan or the Disclosure Statements must:  (a) be in writing; (b) comply with the Bankruptcy Rules, the Local Rules and other case management rules and orders of the Bankruptcy Court; (c) state the name and address of the objecting party and the amount and nature of the claim or interest asserted by the objecting party against the estate or property of the Debtors; (d) state with particularity the legal and factual basis for such objections, and, if applicable, a proposed modification to the Plan that would resolve such objection; and (e) be filed with the Bankruptcy Court (contemporaneously with a proof of service) and served so as to be **filed and actually received** by no later than **November 18, 2014 at 4:00 p.m. (prevailing Eastern Time)**, by:  (i) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014; (ii) counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn: Lisa M. Schweitzer, Esq.; (iii) counsel to the Ad Hoc Group, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, New York 10036, Attn: Daniel H. Golden, Esq. and David P. Simonds, Esq.; (iv) counsel to the Trustee and the U.S. Collateral

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.  The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein.  To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, the Plan or the Disclosure Statement, as applicable, shall govern and control.  For a more detailed description of the Plan, please refer to the Disclosure Statement.

Trustee, Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, New York 10271, Attn: Thomas A. Pitta, Esq.; (v) the Chilean Collateral Trustee, Banco Santander Chile, Bandera 140, piso 4, Santiago de Chile, Attn: Edward Garcia; and (vi) any persons who have filed a request for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Lisa M. Schweitzer

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

**EXHIBIT 3**

**Proposed Assumption/Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- X
                                                         :
In re                                                    :    Chapter 11
                                                         :
Inversiones Alsacia S.A., et al.,¹                       :    Case No. 14-_____ (___)
                                                         :
                                   Debtors.              :    Joint Administration Requested
                                                         :
-------------------------------------------------------- X
```

### NOTICE OF (I) POSSIBLE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) FIXING CURE AMOUNTS IN CONNECTION THEREWITH, AND (III) DEADLINE TO OBJECT THERETO

**PLEASE TAKE NOTICE THAT** on October 16, 2014 (the "Petition Date"), Inversiones Alsacia S.A. ("Alsacia") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (the "Chapter 11 Cases"), each filed petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  By order of the Bankruptcy Court, the cases are being jointly administered for procedural purposes under Case No. 14 - _____ (___).

**PLEASE TAKE FURTHER NOTICE THAT** on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of (I) an Order (A) Scheduling a Combined Hearing to Consider the Adequacy of the Disclosure Statement and Confirmation of the Plan, (B) Establishing Deadlines and Procedures to File Objections to the Disclosure Statement and Plan, (C) Approving the Form and Manner of Notice of the Confirmation Hearing, (D) Establishing Procedures for Any Proposed Assumption and Cure of Executory Contracts and Unexpired Leases Pursuant to the Plan, and (E) Granting Related Relief; and (II) an Order (A) Approving the Solicitation Procedures, (B) Approving the Adequacy of the Disclosure Statement, and (C) Confirming the Plan* (the "Scheduling and Solicitation Procedures Motion").  Pursuant to the Scheduling and Solicitation Procedures Motion, the Debtors sought Bankruptcy Court approval of, among other things, certain procedures for the fixing of Cure Amounts (as defined below) in connection with the Debtors' potential assumption of certain executory contracts and unexpired leases (each, a "Contract" and collectively, the "Contracts") pursuant to the *Debtors' Joint*

---

¹       The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtor's Chilean and/or Bermudan tax identification number, as applicable, are:  Inversiones Alsacia S.A. [400-3]; Express de Santiago Uno S.A. [390-2]; Inversiones Eco Uno S.A. [710-4]; and Panamerican Investments Ltd. [3471].  The location of the corporate headquarters and the service address for Inversiones Alsacia S.A. and Panamerican Investments Ltd. is: Avenida Santa Clara 555, Huechuraba, Santiago, Chile. The location of the corporate headquarters and the service address for Express de Santiago Uno S.A. and Inversiones Eco Uno S.A. is: Camino El Roble 200, Pudahuel, Santiago, Chile.

*Prepackaged Chapter 11 Plan* (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan"),[2] and the deadline to object to Cure Amounts and the Debtors' potential assumption of Contracts under the Plan.

**PLEASE TAKE FURTHER NOTICE** that on the schedule attached hereto as Exhibit 1, the Debtors have indicated the amounts (in each instance, the "Cure Amount") that the Debtors believe must be paid to you, as the non-Debtor party to the Contract(s) scheduled on Exhibit 1, in order to cure all monetary defaults under the respective Contract(s) in the event that the Debtors, in their sole discretion, assume any such Contract(s).

**PLEASE TAKE FURTHER NOTICE** that if you disagree with or object to the Cure Amount for any Contract scheduled in Exhibit 1 or disagree with or object to the Debtors' proposed assumption of any Contract scheduled on Exhibit 1, you are required to file and serve an objection (an "Objection"), in writing, setting forth with specificity any and all cure obligations that you assert must be cured or satisfied in respect of the Contract and/or any and all objections to the potential assumption of such Contract, together with all documentation supporting such Objection. Any Objections must be filed with the Bankruptcy Court and served upon by (i) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014; (ii) counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn: Lisa M. Schweitzer, Esq.; (iii) counsel to the Ad Hoc Group, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, New York 10036, Attn: Daniel H. Golden, Esq. and David P. Simonds, Esq.; (iv) counsel to the Trustee and the U.S. Collateral Trustee, Emmet, Marvin & Martin, LLP, 120 Broadway, 32nd Floor, New York, New York 10271, Attn: Thomas A. Pitta, Esq.; (v) the Chilean Collateral Trustee, Banco Santander Chile, Bandera 140, piso 4, Santiago de Chile, Attn: Edward Garcia; and (vi) any persons who have filed a request for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, so as to be filed with the Bankruptcy Court and actually received by such parties **BY NO LATER THAN NOVEMBER 21, 2014 at 4:00 P.M. PREVAILING EASTERN TIME.**

**PLEASE TAKE FURTHER NOTICE** that if an Objection is timely filed and not settled, the Bankruptcy Court shall determine the amount of any disputed Cure Amount(s) or adjudicate such Cure Objection at a hearing to be held at the time of the Confirmation Hearing or such other hearing date the Court may set or to which the parties may mutually agree.

**PLEASE TAKE FURTHER NOTICE** that in the event that no objection is timely filed with respect to a Contract, you shall be deemed to have consented to the assumption of the Contract and the Cure Amount.

**PLEASE TAKE FURTHER NOTICE** that if you agree with the assumption of your Contract and the Cure Amount indicated, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that the inclusion of a Contract on Exhibit 1 (a) is without prejudice to the Debtors' rights to modify their election to assume or reject such

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Contract prior to the entry of a final, non-appealable order (which order may be the order confirming the Plan) deeming such contract assumed or rejected, (b) is not a final determination that such contract will, in fact be assumed, and (c) shall not constitute or be deemed to be a determination or admission by the Debtors that such document is, in fact, an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code (all rights with respect thereto being expressly reserved).  The Debtors reserve their right to reject any Contract on Exhibit 1 by including them on a list filed with the Bankruptcy Court prior to confirmation of the Plan and providing you notice of such rejection.  The Debtors may also reject Contracts that are subject to a pending Objection on and after the Effective Date of the Plan.

**PLEASE TAKE FURTHER NOTICE** that you may view copies of the Plan and Disclosure Statement related to the Plan by accessing the Bankruptcy Court's Internet site at www.nysb.uscourts.gov or on the Debtors' Internet site at http://cases.primeclerk.com/alsacia.

Dated:  November [•], 2014
        New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Lisa M. Schweitzer

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

## EXHIBIT 1 TO ASSUMPTION/CURE NOTICE

| Description of Contract(s) | Proposed Cure Amount |
|---|---|
| | |
| | |

## __EXHIBIT B-1__

### Form of Beneficial Owner Ballot

Beneficial Owner Ballot

**IMPORTANT: CHAPTER 11 CASES HAVE NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT. THIS BALLOT IS A PRE-PETITION SOLICITATION OF YOUR VOTE ON A PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL. THE VOTING DEADLINE IS OCTOBER 10, 2014 AT 5:00 P.M. (PREVAILING EASTERN TIME).**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| *In re*: | ) | Chapter 11 |
| | ) | |
| INVERSIONES ALSACIA S.A., *et al.*,[1] | ) | Case No. 14-[___] ([___]) |
| | ) | |
| Debtors. | ) | Joint Administration to be Requested |
| | ) | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT**
**PREPACKAGED CHAPTER 11 PLAN OF INVERSIONES ALSACIA S.A., *ET AL.***

**BALLOT FOR CLAIMS IN CLASSES 1A-4A:  SENIOR SECURED NOTES CLAIMS**

**CUSIP NOS. 05572UAA8 AND P1911CAA0**

Inversiones Alsacia S.A. and certain of its affiliates (collectively, the "Debtors") are soliciting votes with respect to the *Debtors' Joint Prepackaged Chapter 11 Plan* (including all exhibits annexed thereto and the Plan Supplement, as it may be modified, amended, or supplemented from time to time, the "Plan") through their Disclosure Statement for the *Joint Prepackaged Plan of Reorganization of Inversiones Alsacia S.A. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated September 15, 2014 (including all exhibits and supplements, the "Disclosure Statement").  Capitalized terms used in this ballot (the "Ballot") or the attached instructions that are not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

This Ballot is being sent to you because records indicate that you are the Holder of a Claim in Classes 1A-4A (Senior Secured Notes Claims) as of September 5, 2014 (the "Voting Record Date"), and, accordingly, you have a right to vote to accept or reject the Plan.  This Ballot may not be used for any purpose other than submitting votes with respect to the Plan.

***Your rights are described in the Disclosure Statement.  The Plan is Exhibit A to the Disclosure Statement.  The Disclosure Statement, the Plan and certain other materials are included in the packet you are receiving with this Ballot (collectively, the "Solicitation Package").  You should carefully and thoroughly review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.  Your Claim has been placed in Classes 1A-4A under the Plan.***

---

[1]    The Debtors, together with each of the Debtor's Chilean federal tax identification number, are:  Inversiones Alsacia S.A. [99.577.400-3]; Express de Santiago Uno S.A. [99.577.390-2]; Inversiones Eco Uno S.A. [76.195.710-4]; and Panamerican Investments Ltd. [59.164.900-0].  The location of the corporate headquarters and the service address for Inversiones Alsacia S.A. and Panamerican Investments Ltd. is:  Avenida Santa Clara 555, Huechuraba, Santiago, Chile.  The location of the corporate headquarters and the service address for Express de Santiago Uno S.A. and Inversiones Eco Uno S.A. is:  Camino El Roble 200, Pudahuel, Santiago, Chile.



The Debtors are soliciting votes to accept or reject the Plan from the Holders of Senior Secured Notes Claims.  The Debtors may file the Chapter 11 Cases in the Bankruptcy Court and seek to consummate the transactions described in the Plan through the chapter 11 process.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the Claims in one Impaired Class that votes on the Plan, and the Bankruptcy Court finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, each Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of sections 1129(a) and 1129(b) of the Bankruptcy Code.

---

**IMPORTANT**

- **VOTING DEADLINE:  5:00 P.M. (PREVAILING EASTERN TIME) ON OCTOBER 10, 2014 (THE "VOTING DEADLINE")**

- TO CAST YOUR VOTE, YOU MUST INSTRUCT YOUR NOMINEE [2] TO SUBMIT A MASTER BALLOT THAT REFLECTS YOUR INSTRUCTIONS SO THAT THE MASTER BALLOT IS **ACTUALLY RECEIVED** BY THE BALLOTING AGENT (AS DEFINED BELOW) ON OR BEFORE THE VOTING DEADLINE.  YOU MAY INSTRUCT YOUR NOMINEE TO CAST YOUR VOTE BY COMPLETING, SIGNING AND RETURNING THIS BALLOT TO YOUR NOMINEE OR, IF IT IS YOUR CUSTOM TO COMMUNICATE WITH YOUR NOMINEE BY OTHER MEANS SUCH AS EMAIL, FACSIMILE, INTERNET OR TELEPHONE, THEN YOU MAY COMMUNICATE YOUR INSTRUCTIONS BY SUCH MEANS.  NOMINEES MUST RETAIN YOUR BALLOT OR A RECORD OF YOUR OTHERWISE TRANSMITTED INSTRUCTIONS FOR AT LEAST ONE YEAR FOLLOWING THE EFFECTIVE DATE.   ALTERNATIVELY, YOUR NOMINEE MAY PRE-VALIDATE THIS BALLOT IN ACCORDANCE WITH THE PRE-VALIDATION PROCEDURES THAT ARE MORE FULLY DESCRIBED BELOW.  IF THE MASTER BALLOT REFLECTING YOUR VOTE IS NOT RECEIVED BY THE VOTING DEADLINE, THE DEBTORS MAY REJECT SUCH MASTER BALLOT AS INVALID.

- YOU MUST DISCLOSE ALL SENIOR SECURED NOTES CLAIMS THAT YOU HOLD AND MUST VOTE ALL SENIOR SECURED NOTES CLAIMS EITHER TO ACCEPT OR REJECT THE PLAN ON ALL BALLOTS SUBMITTED.  YOU MAY NOT SPLIT YOUR VOTE.  IN ADDITION, THE VOTE CAST ON THIS BALLOT WILL BE APPLIED IN THE SAME MANNER AND IN THE SAME AMOUNT IN EACH OF CLASSES 1A-4A (SENIOR SECURED NOTES CLAIMS).

- DO NOT RETURN ANY SECURITIES WITH THIS BALLOT.  THIS BALLOT IS NOT A LETTER OF TRANSMITTAL AND MAY NOT BE USED FOR ANY PURPOSE OTHER THAN TO CAST VOTES TO ACCEPT OR REJECT THE PLAN.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- REGARDLESS OF WHETHER YOU VOTE ON THE PLAN, THE NOMINEE HOLDING YOUR SENIOR SECURED NOTES MUST COMPLETE THE BOOK-ENTRY CONFIRMATION OR DELIVER A LETTER OF TRANSMITTAL IN RESPECT OF YOUR SENIOR SECURED NOTES IN ACCORDANCE WITH THE PROCEDURE SET FORTH IN SECTIONS 6.4, 6.5 AND 6.6 OF THE PLAN.

---

If you have any questions regarding this Ballot, the enclosed voting instructions or the procedures for voting, or if you need to obtain additional copies of the Solicitation Package, please contact Prime Clerk LLC ("Prime Clerk"

---

[2]        "Nominee" means the broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other such party in whose name your beneficial ownership of the Senior Secured Notes is registered or held of record on your behalf as of the Voting Record Date.



2

Beneficial Owner Ballot

or "Balloting Agent") either (i) by writing Alsacia Ballot Processing, c/o Prime Clerk LLC,  830 Third Avenue, 9th Floor, New York, NY 10022; (ii) by calling U.S. Toll Free: 844-276-3029 or International Toll: +1 917-258-4616; or (iii) by emailing alsaciaballoting@primeclerk.com.

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.**



Senior Secured Notes due 2018
CUSIP 05572U AA8

Beneficial Owner Ballot

## VOTING INSTRUCTIONS

1.  As described in the Disclosure Statement, the Debtors are soliciting the votes of Holders of Claims in Classes 1A-4A (Senior Secured Notes Claims) with respect to the Plan referred to in the Disclosure Statement. The Plan and Disclosure Statement are included in the Solicitation Package you are receiving with the Ballot. This Ballot may be used to vote on the Plan only. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  To ensure that your vote is counted you must instruct your Nominee to submit a Master Ballot that reflects your vote so that the Master Ballot is **actually received** by the Balloting Agent by the Voting Deadline. You may instruct your Nominee to vote on your behalf by (i) completing Item 1 of this Ballot (if not previously completed by your Nominee); (ii) indicating your decision either to accept or reject the Plan in Item 2 of the Ballot; (iii) reviewing the certifications and acknowledgements in Items 4 and 5 of the Ballot; and (iv) **signing the Ballot, providing all information requested in Item 6 of the Ballot and returning the Ballot to your Nominee in accordance with the instructions on this Ballot allowing sufficient time for your Nominee to receive your Ballot, complete a Master Ballot, and transmit the Master Ballot to the Balloting Agent so that it is received by the Voting Deadline**. In the alternative, if it is your custom to communicate with your Nominee by other means such as email, facsimile, internet or telephone, then you may communicate your voting instructions by such means. **NOMINEES MUST RETAIN YOUR BALLOT OR A RECORD OF YOUR OTHERWISE TRANSMITTED INSTRUCTIONS FOR AT LEAST ONE YEAR FOLLOWING THE EFFECTIVE DATE.**

    Alternatively, your Nominee may pre-validate this Ballot by (i) signing the Ballot and providing its DTC Participant Number in Item 6 below, (ii) indicating your account number and the amount of Senior Secured Notes that you hold in Item 1 of the Ballot, and (iii) forwarding this Ballot (together with the other solicitation materials) to you for voting. You must then indicate your vote in Item 2 below, review the certifications contained herein, and return this Ballot directly to the Balloting Agent so that it is **actually received** by the Balloting Agent on or before the Voting Deadline. Your Nominee must maintain a list of any Beneficial Owner (as defined below) to whom the Nominee sent pre-validated Ballots for inspection for at least one year following the Effective Date.

3.  Item 3 of the Ballot is optional. Complete Item 3 only if you voted to reject the Plan or did not vote to either accept or reject the Plan in Item 2. **Please note that if you (i) vote to accept the Plan or (ii) either (x) abstain from voting or (y) reject the Plan and, in the case of (x) or (y), do not check the box in Item 3 below, you will be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged all Claims and causes of action (as set forth in the Plan), against the Released Parties (as defined in the Plan)**.

4.  In order to be included in the tabulation, a Master Ballot reflecting your vote (or your pre-validated Ballot) must be **actually received** by Prime Clerk on or before the Voting Deadline. **The Voting Deadline is October 10, 2014 at 5:00 p.m. (Prevailing Eastern Time)**.[3]

5.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. In all cases, Holders should allow sufficient time to assure timely delivery. No Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Balloting Agent), any indenture trustee, or the Debtors' financial or legal advisors.

---

[3]    The Debtors reserve the absolute right (subject to the RPSA), at any time or from time to time, to extend the period of time (on a daily basis, if necessary) during which Ballots and Master Ballots will be accepted for any reason, including determining whether or not the requisite number of acceptances have been received, by making a public announcement of such extension no later than the first Business Day next succeeding the previously announced Voting Deadline. The Debtors will give notice of any such extension in a manner deemed reasonable to the Debtors in their discretion. There can be no assurance that the Debtors will exercise their right to extend the Voting Deadline.


\
**A**

Senior Secured Notes due 2018
CUSIP 05572U AA8

Beneficial Owner Ballot

6.      If multiple Ballots are received from a single Holder with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will supersede and revoke any previously received Ballot; provided, however, that Holders who cast a ballot prior to the Petition Date shall not be entitled to change their vote or cast new Ballots after the Chapter 11 Cases are commenced, without the Debtors' prior consent.

7.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

8.      The Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or Interest; or (b) an assertion or admission with respect to any Claim or Interest.

9.      Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

10.      You must vote your entire Senior Secured Notes Claim either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.

11.      Any Ballot that is properly completed, executed and timely returned that fails to indicate acceptance or rejection of the Plan or that indicates both acceptance and rejection of the Plan will not be counted.

12.      The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (ii) any Ballot cast by a Person or Entity that does not hold a Claim that is entitled to vote on the Plan; (iii) any unsigned Ballot; (iv) any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan; (v) any Ballot received after the Voting Deadline, unless the Debtors determine otherwise; and (vi) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

## PLEASE SUBMIT YOUR BALLOT PROMPTLY!

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THESE VOTING INSTRUCTIONS, PLEASE CONTACT THE BALLOTING AGENT OR YOUR NOMINEE, AS APPROPRIATE.**



Senior Secured Notes due 2018
CUSIP 05572U AA8

Beneficial Owner Ballot

**Item 1.  Amount of Classes 1A-4A Senior Secured Notes Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Owner[4] (or authorized signatory for a Beneficial Owner) of a Senior Secured Notes Claim in the following aggregate principal amount (*insert amount in box below*):

$_____

**Item 2.  Vote of Classes 1A-4A Senior Secured Notes Claim.**

The holder of the Classes 1A-4A Senior Secured Notes Claim set forth in Item 1 votes to (*please check one*):

| <u>**Accept**</u> **the Plan** | <u>**Reject**</u> **the Plan** |
|:---:|:---:|
| ❏ | ❏ |

THE VOTE CAST ABOVE WILL BE APPLIED IN THE SAME MANNER AND IN THE SAME AMOUNT IN EACH OF CLASSES 1A-4A (SENIOR SECURED NOTES CLAIMS).

**Item 3.  Releases (OPTIONAL).**

**PURSUANT TO THE PLAN, IF YOU RETURN A BALLOT THAT VOTES TO REJECT OR ABSTAINS FROM VOTING ON THE PLAN <u>AND</u> DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASE PROVISIONS IN SECTION 8.4 OF THE PLAN, YOU WILL BE DEEMED, AS OF THE EFFECTIVE DATE, TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED ALL CLAIMS AND ALL CAUSES OF ACTION (AS SET FORTH IN THE PLAN) AGAINST THE RELEASED PARTIES (AS DEFINED IN THE PLAN).**

<u>**Complete this Item 3 only if you voted to REJECT the Plan or did not vote either to accept or reject the Plan in Item 2 above.**</u>

The undersigned Holder of a Senior Secured Notes Claim in the amount identified in Item 1 above, having voted to reject the Plan or abstained from voting on the Plan:

❏Elects to **Opt Out** of the release provisions.

IF YOU CHECK THE BOX ABOVE AND VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN, YOU WILL BE DEEMED TO HAVE OPTED OUT OF THE RELEASES IN ARTICLE 8.4 OF THE PLAN.  IF YOU CHECK THE BOX ABOVE BUT VOTE TO ACCEPT THE PLAN, YOU WILL BE DEEMED TO GRANT THE RELEASES IN ARTICLE VIII OF THE PLAN.

---

[4]    A "<u>Beneficial Owner</u>" is a beneficial owner of Senior Secured Notes whose Senior Secured Notes Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by Nominees holding through the Depository Trust Company ("<u>DTC</u>") or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

\
**A**

Senior Secured Notes due 2018
CUSIP 05572U AA8

## IMPORTANT INFORMATION REGARDING RELEASES:

THE RELEASE PROVISION IN ARTICLE 8.4 OF THE PLAN PROVIDES:[5]

**As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Reorganized Debtors, the Estates, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Finance Agreements (including the Senior Secured Notes, the Senior Secured Notes Indenture and the Collateral Trust Agreement), the Sponsor Support Agreement, the Shareholder Pledge Agreements (solely to the extent that such Shareholder Pledge Agreements secure the Senior Secured Notes), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, solicitation, or preparation of the RPSA, the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of Section 8.4 of the Plan shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in Section 8.4 of the Plan shall release any post-Effective Date obligations (except Cure Claims that have not been timely filed) of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in Section 8.4 of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtors, the Reorganized Debtors, the Estates and the Released Parties; (b) a good faith settlement and compromise of the Claims released by Section 8.4 of the Plan; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity granting a release under Section 8.4 of the Plan from asserting any Claim or Cause of Action released by Section 8.4 of the Plan.**

A "*Released Party*" means each of the following: (a) the Debtors; (b) the Alsacia Shareholders; (c) the Collateral Trustees; (d) the Trustee; (e) the Ad Hoc Group and its members, the Consenting Senior Secured Noteholders; and (f)

---

[5]       The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan shall govern.  You should read the Plan carefully before completing this Ballot.



Beneficial Owner Ballot

with respect to each of the foregoing Entities in clauses (a) and (e), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.  For the avoidance of doubt, the Ad Hoc Group Advisors shall be Released Parties.

**Item 4.  Certification of Classes 1A-4A Senior Secured Notes Claims Held in Additional Accounts.** *Only to be completed if you have submitted other Ballots.*

By returning this Ballot, the Beneficial Owner of the Senior Notes Claims identified in Item 1 certifies that (a) this Ballot is the only Ballot submitted for the Senior Secured Notes Claims owned by such Beneficial Owner as indicated in Item 1, except for the Senior Secured Notes Claims identified in the following table, and (b) all Ballots for Senior Secured Notes Claims submitted by the Beneficial Owner indicate the same vote to accept or reject the Plan that the Beneficial Owner has indicated in Item 2 of this Ballot (please use additional sheets of paper if necessary).  **To be clear, if any Beneficial Owner holds Senior Secured Notes Claims through one or more Nominees, such Beneficial Owner must identify all Senior Secured Notes Claims held through each Nominee in the following table, and must confirm the same vote to accept or reject the Plan on all Ballots submitted.**

ONLY COMPLETE ITEM 4 IF YOU HAVE SUBMITTED OTHER BALLOTS.

| Account Number with Other Nominee | Name of Other Nominee | CUSIP of Other Senior Secured Notes Voted | Principal Amount of Other Senior Secured Notes Claims Voted |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

**Item 5.  Certifications and Acknowledgements.**

Upon execution of this Ballot, the undersigned certifies that:

1.       as of the Voting Record Date, the undersigned Holder was the Beneficial Owner (or authorized signatory for a Beneficial Owner) of Classes 1A-4A Senior Secured Notes Claims in the amount set forth in Item 1;

2.       the undersigned Holder has received a copy of the Disclosure Statement, the Plan and the remainder of the Solicitation Package and acknowledges that the solicitation of votes for the Plan is subject to the terms and conditions set forth in the Disclosure Statement;

3.       the undersigned Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

4.       the undersigned Holder has cast the same vote with respect to all of the Holder's Senior Secured Notes Claims;

5.       the undersigned Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, will be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the undersigned and will not be affected by, and will survive, the death or incapacity of the undersigned;

6.       the undersigned Holder understands and acknowledges that only the latest-received properly completed Ballot (or Master Ballot reflecting your vote) cast and actually received by the Balloting Agent prior to the Voting Deadline with respect to the Senior Secured Notes Claims set forth in Item 1 will be counted, and, if



Senior Secured Notes due 2018
CUSIP 05572U AA8

8

any other Ballot has been previously cast with respect to the Senior Secured Notes Claims set forth in Item 1, such other Ballot shall be deemed revoked;

7.      the undersigned Holder understands and acknowledges that the Balloting Agent may verify the amount of Senior Secured Notes Claims held as of the Voting Record Date with any Nominee through which the Holder holds its Senior Secured Notes and that by returning an executed Ballot, the Holder directs any such Nominee to provide any information or comply with any actions requested by the Balloting Agent to verify the amount set forth in Item 1 hereof.  In the event of a discrepancy regarding such amount that cannot be timely reconciled without undue effort on the part of the Balloting Agent, the amount shown on the records of the Nominee, if applicable, or the Debtors' records shall control; and

8.      the undersigned Holder understands and acknowledges that regardless of whether such Holder votes on the Plan, the Nominee holding such Holder's Senior Secured Notes must complete the Book-Entry Confirmation or deliver a Letter of Transmittal in respect of such Holder's Senior Secured Notes in accordance with the procedure set forth in Sections 6.4, 6.5 and 6.6 of the Plan.

**Item 6.  Holder Information and Signature.**

Name of Holder:  _____
                                        (Print or Type)

Name of Proxy Holder or Agent
for Holder (if applicable): _____
                                        (Print or Type)

Social Security or Federal Tax I.D. No.: _____
                                        (Optional)

Signature:                _____

Name of Signatory:    _____
                                        (Print or Type)

Title:                       _____
                                        (If applicable)

Address:                 _____

                              _____

                              _____

Telephone:            (____)_____

Date Completed:       _____

Email:                     _____


No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan.

## PLEASE SUBMIT YOUR BALLOT PROMPTLY!

*YOU MAY HAVE RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE.  PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT EITHER IN THE ENVELOPE PROVIDED OR IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR VOTING INSTRUCTIONS TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.   THE MASTER BALLOT MUST BE*



**ACTUALLY RECEIVED BY THE BALLOTING AGENT ON OR BEFORE THE VOTING DEADLINE, WHICH IS 5:00 P.M. (PREVAILING EASTERN TIME) ON OCTOBER 10, 2014.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE BALLOTING AGENT EITHER (I) BY WRITING ALSACIA BALLOT PROCESSING, C/O PRIME CLERK LLC, 830 THIRD AVENUE, 9TH FLOOR, NEW YORK, NY 10022; (II) BY CALLING U.S. TOLL FREE: 844-276-3029 OR INTERNATIONAL TOLL: +1 917-258-4616; OR (III) BY EMAILING ALSACIABALLOTING@PRIMECLERK.COM.**



Senior Secured Notes due 2018
CUSIP 05572U AA8

## EXHIBIT B-2

**Form of Master Ballot**

Master Ballot

**IMPORTANT: CHAPTER 11 CASES HAVE NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS MASTER BALLOT. THIS MASTER BALLOT IS BEING DISTRIBUTED PRE-PETITION FOR THE TRANSMITTAL OF VOTES OF BENEFICIAL OWNERS OF SENIOR SECURED NOTES ON A PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL. THE VOTING DEADLINE IS OCTOBER 10, 2014 AT 5:00 P.M. (PREVAILING EASTERN TIME).**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| *In re*: | ) | Chapter 11 |
| | ) | |
| INVERSIONES ALSACIA S.A., *et al.*,[1] | ) | Case No. 14-[___] ([___]) |
| | ) | |
| | ) | |
| Debtors. | ) | Joint Administration to be Requested |
| | ) | |

**MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT PREPACKAGED CHAPTER 11 PLAN OF INVERSIONES ALSACIA S.A., *ET AL.***

**MASTER BALLOT FOR CLAIMS IN CLASSES 1A-4A: SENIOR SECURED NOTES CLAIMS**

**CUSIP NOS. 05572UAA8 AND P1911CAA0**

---

**IMPORTANT**

- **THIS MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY 5:00 P.M. (PREVAILING EASTERN TIME) ON OCTOBER 10, 2014 (THE "<u>VOTING DEADLINE</u>").**

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND HOLDERS OF CLAIMS OR INTERESTS REGARDLESS OF WHETHER YOU HAVE TRANSMITTED THEIR VOTE.

- IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE DEBTORS' BALLOTING AGENT, PRIME CLERK LLC ("<u>PRIME CLERK</u>" OR THE "<u>BALLOTING AGENT</u>") EITHER (I) BY WRITING ALSACIA BALLOT PROCESSING, C/O PRIME CLERK LLC, 830 THIRD AVENUE, 9TH FLOOR, NEW YORK, NY 10022; (II) BY CALLING U.S. TOLL FREE: 844-276-3029 OR INTERNATIONAL TOLL: +1 917-258-4616; OR (III) BY EMAILING ALSACIABALLOTING@PRIMECLERK.COM.

---

[1] The Debtors, together with each of the Debtor's Chilean federal tax identification number, are: Inversiones Alsacia S.A. [99.577.400-3]; Express de Santiago Uno S.A. [99.577.390-2]; Inversiones Eco Uno S.A. [76.195.710-4]; and Panamerican Investments Ltd. [59.164.900-0]. The location of the corporate headquarters and the service address for Inversiones Alsacia S.A. and Panamerican Investments Ltd. is: Avenida Santa Clara 555, Huechuraba, Santiago, Chile. The location of the corporate headquarters and the service address for Express de Santiago Uno S.A. and Inversiones Eco Uno S.A. is: Camino El Roble 200, Pudahuel, Santiago, Chile.

# MB-A

Master Ballot

> • NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT.

Inversiones Alsacia S.A. and certain of its affiliates (collectively, the "Debtors") are soliciting votes with respect to the *Debtors' Joint Prepackaged Chapter 11 Plan* (including all exhibits annexed thereto and the Plan Supplement, as it may be modified, amended, or supplemented from time to time, the "Plan") through their Disclosure Statement for the *Joint Prepackaged Plan of Reorganization of Inversiones Alsacia S.A. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated September 15, 2014 (including all exhibits and supplements, the "Disclosure Statement"). Capitalized terms used in this master ballot (the "Master Ballot") or the attached instructions that are not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

This Master Ballot is being sent to you because our records indicate that you are a broker, dealer, commercial bank, trust company, or other nominee or agent (each such entity, a "Nominee") of a Beneficial Owner[2] of Classes 1A-4A Senior Secured Notes Claims under the Plan as of September 5, 2014 (the "Voting Record Date"). Nominees should use this Master Ballot to transmit the votes cast by their Beneficial Owners to accept or reject the Plan. This Master Ballot may not be used for any purpose other than for transmitting votes to accept or reject the Plan and making certain certifications with respect thereto.

***The Disclosure Statement, the Plan and certain other materials are included in the packet you are receiving to distribute to your Beneficial Owners with this Master Ballot (collectively, the "Solicitation Package"). To have the votes of your Beneficial Owners count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Balloting Agent actually receives it on or before the Voting Deadline. You should carefully and thoroughly review the Disclosure Statement and the Plan before you transmit any vote.***

If you have any questions regarding this Master Ballot, the enclosed voting instructions or the procedures for voting, or if you need to obtain additional copies of the Solicitation Package or Ballots, or believe you have received this Master Ballot in error, please contact Prime Clerk either (i) by writing Alsacia Ballot Processing, c/o Prime Clerk LLC, 830 Third Avenue, 9th Floor, New York, NY 10022; (ii) by calling U.S. Toll Free: 844-276-3029 or International Toll: +1 917-258-4616; or (iii) by emailing alsaciaballoting@primeclerk.com.

**THIS MASTER BALLOT IS ACCOMPANIED BY A POSTAGE PRE-PAID RETURN ENVELOPE THAT IS ADDRESSED TO THE DEBTORS' BALLOTING AGENT. PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. COMPLETE, SIGN AND DATE THIS MASTER BALLOT, AND RETURN IT TO THE BALLOTING AGENT SO THAT IT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT ON OR BEFORE THE VOTING DEADLINE OF 5:00 P.M. (PREVAILING EASTERN TIME) ON OCTOBER 10, 2014. IF THIS MASTER BALLOT IS NOT COMPLETED, SIGNED AND TIMELY RECEIVED, THE VOTES TRANSMITTED BY THIS MASTER BALLOT WILL NOT BE COUNTED.**

---

[2]    A "Beneficial Owner" is a beneficial owner of Senior Secured Notes whose Senior Secured Notes Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by Nominees holding through the Depository Trust Company ("DTC") or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

# MB-A

Senior Secured Notes due 2018
CUSIP 05572U AA8

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a Nominee for the Beneficial Owners of the aggregate amount of Senior Secured Notes Claims (Classes 1A-4A) listed in Item 2 below, and is the registered Holder of such Senior Secured Notes Claims;

☐ is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by a Nominee that is the registered Holder of the aggregate amount of Senior Secured Notes Claims (Classes 1A-4A) listed in Item 2 below; or

☐ has been granted a proxy (an original of which is annexed hereto) from a Nominee that is the registered Holder of the aggregate amount of the Senior Secured Notes Claims (Classes 1A-4A) listed in Item 2 below and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Senior Secured Notes Claims described in Item 2 below.

**Item 2.  Senior Secured Notes Claims (Classes 1A-4A) Votes on Plan.**

The undersigned transmits the following votes of Beneficial Owners of Senior Secured Notes Claims Classes (1A-4A), and certifies that the following Beneficial Owners of Senior Secured Notes Claims, as identified by their respective customer account numbers set forth below, are Beneficial Owners of such securities as of the Voting Record Date and have delivered to the undersigned, as Nominee, Ballots casting such votes or have communicated instructions for such votes by other means, such as email, facsimile, internet or telephone, according to customary practices.

Indicate in the appropriate column below the aggregate principal amount voted for each account as provided in Item 2 of the Beneficial Owner Ballot, or attach such information to this Master Ballot in the form of the following table. Please note that each Beneficial Owner must vote all of its Senior Secured Notes Claims to accept or reject the Plan and may not split such vote.  Any Ballot executed by a Beneficial Owner that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

In addition, please indicate in the appropriate column whether each Beneficial Owner returned a completed Beneficial Owner Ballot indicating the choice to OPT OUT of the Releases contained in Section 8.4 of the Plan as indicated under Item 3 of the Beneficial Owner Ballot.



Master Ballot

| ITEMS 2 & 3 OF BENEFICIAL OWNER BALLOT | | | | |
|---|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Owner of Voting Senior Secured Notes Claims** | **Item 2.  Vote on Plan** | | | **Item 3.  Releases (Optional)** |
| | **Principal Amount of Senior Secured Notes Claims Voted to ACCEPT the Plan** | **OR** | **Principal Amount of Senior Secured Notes Claims Voted to REJECT the Plan** | **Check if the Beneficial Owner Checked the "Opt-Out" box in Item 3 of the Beneficial Owner's Ballot** |
| 1. | $ | OR | $ | ☐ |
| 2. | $ | OR | $ | ☐ |
| 3. | $ | OR | $ | ☐ |
| 4. | $ | OR | $ | ☐ |
| 5. | $ | OR | $ | ☐ |
| 6. | $ | OR | $ | ☐ |
| 7. | $ | OR | $ | ☐ |
| 8. | $ | OR | $ | ☐ |
| 9. | $ | OR | $ | ☐ |
| 10. | $ | OR | $ | ☐ |
| **Totals:** | $ | | $ | |

**THE VOTES CAST ABOVE WILL BE APPLIED IN THE SAME MANNER AND IN THE SAME AMOUNT IN EACH OF CLASSES 1A-4A (SENIOR SECURED NOTES CLAIMS).**

**MB-A**

4

Senior Secured Notes due 2018
CUSIP 05572U AA8

Master Ballot

**Item 3.  Certification as to Transcription of Information from Item 4 of the Ballots as to Senior Secured Notes Claims (Classes 1A-4A) Voted Through Other Ballots.**

The undersigned certifies that it has transcribed below the information, if any, provided by Beneficial Owners in Item 4 of each of the Beneficial Owner's original Ballots, identifying any Senior Secured Notes Claims (Classes 1A-4A) for which such Beneficial Owners have submitted other Ballots other than to the undersigned:

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 4 of the Ballots | TRANSCRIBE FROM ITEM 4 OF THE BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number with Other Nominee | Name of Other Nominee | CUSIP of Other Senior Secured Notes Votes | Principal Amount of Other Senior Secured Notes Claims Voted |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |

**Item 4.  Certifications and Acknowledgments.**

Upon execution of this Master Ballot, the undersigned certifies that:

1.      it has received a copy of the Disclosure Statement, the Plan, the Ballots, and the remainder of the Solicitation Package, and has delivered the same to the Beneficial Owners listed on the Ballots;

2.      it has received a completed and signed Ballot or voting instruction from each Beneficial Owner listed in Item 2 of this Master Ballot and confirms that each such Beneficial Owner is eligible to vote on the Plan;

3.      it is the Nominee for the Beneficial Owners of the securities being voted;

4.      it has been authorized by each such Beneficial Owner to vote on the Plan;

5.      it has properly disclosed:  (i) the number of Beneficial Owners who completed Ballots or provided voting instructions; (ii) the respective amounts of the Classes 1A-4A Senior Secured Notes Claim(s) owned, as the case may be, by each Beneficial Owner who voted; (iii) each such Beneficial Owner's respective vote concerning the Plan in Item 2 of the Beneficial Owner's Ballot; (iv) whether each such Beneficial Owner has checked the "Opt-Out" box in Item 3 of the Beneficial Owner's Ballot; (v) each such Beneficial Owner's certification as to other Senior Secured Notes Claims voted; and (vi) the customer account or other identification number for each such Beneficial Owner; and

6.      it will maintain Ballots and evidence of voting instructions returned by Beneficial Owners (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Bankruptcy Court, if so ordered, or to the Debtors, upon written request.



Senior Secured Notes due 2018
CUSIP 05572U AA8

5

Master Ballot

**Item 5.  Nominee Information and Signature.**

Name of Nominee: _____
(Print or Type)

DTC Participant Number: _____

Name of Proxy Holder or Agent
for Nominee (if applicable): _____
(Print or Type)

Social Security or Federal Tax I.D. No.: _____
(If applicable)

Signature: _____

Name of Signatory: _____
(Print or Type)

Title: _____
(If applicable)

Address: _____

_____

_____

Telephone: (___)_____

Date Completed: _____

Email: _____

**PLEASE COMPLETE, SIGN, AND DATE THE MASTER BALLOT AND RETURN IT TO THE
BALLOTING AGENT BY ONLY ONE OF THE FOLLOWING METHODS:**

| IF BY ELECTRONIC MAIL: | IF BY FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY: |
|---|---|
| **alsaciaballoting@primeclerk.com**<br><br>**If you return this Master Ballot via electronic mail, you should NOT return the original hard copy as well.** | **Alsacia Ballot Processing<br>c/o Prime Clerk LLC<br>830 Third Avenue, 9th Floor<br>New York, NY 10022** |

**YOUR MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH
IS 5:00 P.M. (PREVAILING EASTERN TIME) ON OCTOBER 10, 2014.**

# MB-A

6

Senior Secured Notes due 2018
CUSIP 05572U AA8

Master Ballot

## VOTING INSTRUCTIONS

1.  As a Nominee, you <u>must</u> immediately distribute the Ballots and the Solicitation Packages to all Beneficial Owners of Senior Secured Notes Claims and take any action required to enable each such Beneficial Owner timely to vote the Senior Secured Notes Claims that it holds.  **Any Ballot returned to you by a Beneficial Owner of a Senior Secured Notes Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Balloting Agent, a Master Ballot that reflects the vote of such Beneficial Owners by 5:00 p.m. (Prevailing Eastern Time) on October 10, 2014, or otherwise validate the Ballot in a manner acceptable to the Balloting Agent.**

2.  With regard to any Ballots or voting instructions returned to you by a Beneficial Owner, you must: (i) compile and validate the votes and other relevant information of each such Beneficial Owner on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Owner; (ii) check the appropriate box in Item 1 of the Master Ballot; (iii) in Item 2 of the Master Ballot, indicate the votes to accept or reject the Plan and whether a Beneficial Owner has elected to opt-out of the releases provided for in Section 8.4 of the Plan, as transmitted to you by the Beneficial Owners of Senior Secured Notes Claims; (iv) transcribe the information provided by each of the Beneficial Owners regarding any Senior Secured Notes Claims for which such Beneficial Owners have submitted other Ballots to another nominee in Item 3 of this Master Ballot; (v) review the certifications and acknowledgments in Item 4 of this Master Ballot; (vi) sign the Master Ballot, providing all information requested at the end of the Master Ballot; (vii) transmit such Master Ballot to the Balloting Agent by the Voting Deadline; and (viii) retain such Ballots or other evidence of voting instructions in your files for a period of one year after the Effective Date of the Plan.  You may be requested to produce the Ballots or voting instructions to the Debtors or the Bankruptcy Court.

3.  If a Master Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. The method of delivery of Master Ballots to the Balloting Agent is at the election and risk of each Entity.  No Master Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Balloting Agent), any indenture trustee, or the Debtors' financial or legal advisors.

4.  If multiple Master Ballots are received from the same Nominee with respect to the same Ballot belonging to a Beneficial Owner of a Claim prior to the Voting Deadline, the votes on the last properly completed Master Ballot timely received will supersede and revoke any previously received Master Ballot; *provided*, *however*, that Holders who cast a Ballot prior to the Petition Date shall not be entitled to change their vote or cast new Ballots after the Chapter 11 Cases are commenced, without the Debtors' prior consent.

5.  This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and make certifications with respect to the Ballots. Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and you should not accept delivery of any such certificates or instruments surrendered together with a Ballot.

6.  This Master Ballot does not constitute, and shall not be deemed to be:  (I) a Proof of Claim or Interest; or (ii) an assertion or admission with respect to any Claim or Interest.

7.  Please be sure to sign and date your Master Ballot.  If you are acting under power of attorney or agency agreement with a Nominee, or if you are acting as a proxy of a Nominee, please indicate your authority to sign this Master Ballot on behalf of the Nominee.  If required or requested by the Balloting Agent, the Debtors, or the Bankruptcy Court, you must submit proper evidence to the requesting party of your authority so to act on behalf of such Nominee.  In addition, please provide your name and mailing address.

8.  If you are both the Nominee and the Beneficial Owner of any of the Classes 1A-4A Senior Secured Notes Claims and you wish to vote such Senior Secured Notes Claims, you may return either a Ballot or Master Ballot for such Senior Secured Notes Claims.  You must vote your entire Senior Secured Notes Claim either to accept or reject the Plan and may not split your vote.

# MB-A

Senior Secured Notes due 2018
CUSIP 05572U AA8

Master Ballot

9.      Any Ballot or Master Ballot that is properly completed, executed and timely returned that fails to indicate acceptance or rejection of the Plan or that indicates both acceptance and rejection of the Plan will not be counted.

10.     The following Ballots and Master Ballots will not be counted in determining the acceptance or rejection of the Plan:  (i) any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (ii) any Ballot or Master Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (iii) any unsigned Ballot or Master Ballot; (iv) any Ballot or Master Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan; (v) any Ballot or Master Ballot received after the Voting Deadline, unless the Debtors determine otherwise; and (vi) any Ballot or Master Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

11.     If you believe that you have received this Master Ballot in error, please contact the Balloting Agent immediately.

Please note that no fees or commissions or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan.  The Debtors will, however, reimburse you for reasonable, documented, actual costs and expenses incurred by you in forwarding the Beneficial Owner Ballots and other enclosed materials to the Beneficial Owners of the Senior Secured Notes held by you as a Nominee or in a fiduciary capacity and in tabulating the votes reflected on their Beneficial Owner Ballots.

**Nothing contained herein or in the enclosed documents shall render you or any other person the agent of the Debtors or of the Balloting Agent, or authorize you or any other person to use any document or make any statement on behalf of any of them with respect to the Plan, except for the statements contained herein and in the enclosed documents.**

**<u>PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE BALLOTING AGENT EITHER (I) BY WRITING ALSACIA BALLOT PROCESSING, C/O PRIME CLERK LLC,  830 THIRD AVENUE, 9TH FLOOR, NEW YORK, NY 10022; (II) BY CALLING U.S. TOLL FREE: 844-276-3029 OR INTERNATIONAL TOLL: +1 917-258-4616; OR (III) BY EMAILING ALSACIABALLOTING@PRIMECLERK.COM.**


**MB-A**

Senior Secured Notes due 2018
CUSIP 05572U AA8