UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INVERSIONES ALSACIA S.A., *et al.*, | ) | Case No. 14-[____] ([____]) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

---

## DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN

---

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Proposed Counsel to the Debtors and Debtors in Possession*

Dated: October 16, 2014

**TABLE OF CONTENTS**

**Page**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
    GOVERNING LAW, AND OTHER REFERENCES .................................................................. 1

    1.1    Defined Terms ....................................................................................................... 1
    1.2    Rules of Interpretation ....................................................................................... 11
    1.3    Computation of Time ........................................................................................ 11
    1.4    Governing Law .................................................................................................. 11
    1.5    Reference to Monetary Figures .......................................................................... 11
    1.6    Reference to the Debtors or the Reorganized Debtors ...................................... 11

ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS ........................................................ 12

    2.1    Administrative Claims ....................................................................................... 12
    2.2    Professional Claims ........................................................................................... 12
    2.3    Priority Tax Claims ........................................................................................... 12
    2.4    Costs and Expenses of Collateral Trustees, Trustee, Paying Agent and Ad Hoc Group
           Advisors ............................................................................................................ 13

ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS ................. 13

    3.1    The Debtors ....................................................................................................... 13
    3.2    Classification of Claims and Interests .............................................................. 14
    3.3    Treatment of Classes of Claims and Interests .................................................. 14
    3.4    Special Provision Governing Unimpaired Claims ............................................ 17

ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN ......................................... 17

    4.1    General Settlement of Claims ............................................................................ 17
    4.2    Subordination .................................................................................................... 17
    4.3    Sources of Cash for Plan Distributions ............................................................ 17
    4.4    Issuance of the New Notes ................................................................................ 17
    4.5    Vesting of Assets in the Reorganized Debtors .................................................. 18
    4.6    Discharge from Notes, Instruments, Certificates, and Other Documents .......... 18
    4.7    Execution of Plan Documents ........................................................................... 19
    4.8    Corporate Action ............................................................................................... 19
    4.9    New Corporate Governance Documents ........................................................... 19
    4.10   Effectuating Documents; Further Transactions ................................................ 19
    4.11   Section 1146(a) Exemption ............................................................................... 20
    4.12   Managers, Directors and Officers ..................................................................... 20
    4.13   Incentive Plans and Employee and Retiree Benefits ........................................ 20
    4.14   Preservation of Rights of Action ...................................................................... 20

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 21

    5.1    Assumption of Executory Contracts and Unexpired Leases ............................. 21
    5.2    Cure of Defaults and Objections to Cure and Assumption ............................... 21
    5.3    Pre-existing Payment and Other Obligations ................................................... 22
    5.4    Rejection Damages Claims and Objections to Rejections ................................ 22
    5.5    Contracts and Leases Entered Into After the Petition Date ............................... 22
    5.6    Reservation of Rights ........................................................................................ 23

# TABLE OF CONTENTS
(continued)

Page

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ............................................................ 23

6.1    Distributions on Account of Claims Allowed as of the Effective Date ........................ 23
6.2    Special Rules for Distributions to Holders of Disputed Claims ................................ 23
6.3    Disbursing Agent .................................................................................................. 23
6.4    Distributions on Account of Senior Secured Notes Claims ...................................... 24
6.5    Book Entry Transfer: ATOP .................................................................................. 26
6.6    Letter of Transmittal ............................................................................................. 26
6.7    Delivery of Distributions and Undeliverable or Unclaimed Distributions .................... 26
6.8    Claims Paid or Payable by Third Parties ................................................................ 28
6.9    Setoffs ................................................................................................................. 29
6.10   Allocation Between Principal and Accrued Interest ................................................. 29

ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS ........................................ 29

7.1    Disputed Claims .................................................................................................... 29
7.2    Resolution of Disputed Claims ............................................................................... 30
7.3    Estimation of Claims ............................................................................................. 30
7.4    No Interest ........................................................................................................... 30
7.5    No Distributions Pending Allowance ...................................................................... 30
7.6    Disallowance of Claims and Interests .................................................................... 31

ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN ...................................................... 31

8.1    Compromise and Settlement of Claims, Interests, and Controversies ...................... 31
8.2    Discharge of Claims and Termination of Interests ................................................... 31
8.3    Releases by the Debtors ....................................................................................... 31
8.4    Releases by Releasing Parties .............................................................................. 32
8.5    Exculpation .......................................................................................................... 33
8.6    Injunction ............................................................................................................. 33
8.7    Protection Against Discriminatory Treatment ......................................................... 33
8.8    Indemnification ..................................................................................................... 34
8.9    Recoupment ......................................................................................................... 34
8.10   Release of Liens ................................................................................................... 34
8.11   Reimbursement or Contribution ............................................................................. 34

ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ......................................... 35

9.1    Conditions Precedent to the Effective Date. ........................................................... 35
9.2    Waiver of Conditions Precedent ............................................................................ 35
9.3    Effect of Non-Occurrence of Conditions to Consummation ...................................... 35

ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ....................... 36

10.1   Modification of Plan .............................................................................................. 36
10.2   Revocation or Withdrawal of Plan .......................................................................... 36

ARTICLE XI RETENTION OF JURISDICTION ........................................................................... 36

11.1   Jurisdiction ........................................................................................................... 36
11.2   Certain Documents; Governing Law ....................................................................... 38

-ii-

## TABLE OF CONTENTS
(continued)

**Page**

ARTICLE XII MISCELLANEOUS PROVISIONS ........................................................................................ 38

    12.1    Additional Documents ........................................................................................ 38
    12.2    Payment of Statutory Fees ................................................................................ 38
    12.3    Reservation of Rights ........................................................................................ 38
    12.4    Elimination of Vacant Classes ......................................................................... 38
    12.5    Successors and Assigns ..................................................................................... 38
    12.6    Service of Documents ....................................................................................... 38
    12.7    Term of Injunctions or Stays ............................................................................ 39
    12.8    Entire Agreement .............................................................................................. 39
    12.9    Plan Supplement Exhibits ................................................................................. 39
    12.10    Non-Severability .............................................................................................. 40

<u>LIST OF EXHIBITS</u>

Exhibit A        Allowance of Senior Secured Notes Claim

INTRODUCTION

Inversiones Alsacia S.A. and its Debtor affiliates in the above-captioned chapter 11 cases jointly propose this Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding claims against and interests in each Debtor pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of claims and interests set forth in <u>ARTICLE III</u> shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan contemplates no substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, properties and operations, projections, risk factors, a summary and analysis of this Plan and certain related matters.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

1.1    **Defined Terms**

1.    *"Ad Hoc Group"* means the informal group of Consenting Senior Secured Noteholders represented by the Ad Hoc Group Advisors.

2.    *"Ad Hoc Group Advisors"* means, collectively, the professional advisors to the Ad Hoc Group, including Akin Gump Strauss Hauer & Feld LLP, Blackstone Advisory Partners L.P., Carey y Cia. Ltda. and Pablo Rodriguez.

3.    *"Ad Hoc Group Advisor Engagement Agreements"* means, collectively, those certain fee payment agreements between the Debtors and each of the Ad Hoc Group Advisors.

4.    *"Administrative Claim"* means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

5.    *"Affiliate"* means affiliate as such term is defined in section 101(2) of the Bankruptcy Code.

6.    *"Alsacia"* means Inversiones Alsacia S.A.

7.    *"Alsacia Shareholders"* means, collectively, Carlos Mario Ríos Velilla, Francisco Javier Ríos Velilla and GPS.

8.    *"Allowed"* means, with reference to any Claim, or any portion thereof, that is (a) specifically allowed under this Plan, (b) allowed under the Bankruptcy Code, or (c) allowed by a Final Order.

9.    *"ATOP"* means DTC's Automated Tender Offer Program.

10.    *"Avoidance Actions"* means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code.

11. "*Ballot*" means the form or forms distributed to certain Holders of Claims that are entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan.

12. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended from time to time.

13. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Chapter 11 Cases.

14. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court.

15. "*Business Day*" means any day, other than (a) a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)), or (b) any other day on which banks are legally permitted to be closed in New York, Chile or Bermuda.

16. "*Bus Terminal Loan*" means the Contrato de Apertura de Línea de Crédito (Loan Agreement) dated as of February 11, 2011 by and among Banco Internacional, BRT Escrow Corporation SpA as initial borrower, Inversiones Alsacia S.A. as successor borrower, Panamerican Investments Ltd., Chile Branch as guarantor and Inversiones Lorena SpA as guarantor.

17. "*Camden*" means Camden Servicios SpA.

18. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

19. "*Cash Collateral Order*" means, collectively, the interim order and, if applicable, the Final Order entered by the Bankruptcy Court authorizing the Debtors to use the Collateral Trustees' collateral (including cash collateral) and granting adequate protection to the Collateral Trustees, the Trustee and the Senior Secured Noteholders, which orders shall be in form and substance satisfactory to the Debtors, the Collateral Trustees and the Requisite Consenting Senior Secured Noteholders.

20. "*Causes of Action*" means any and all claims, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and any avoidance, recovery, subordination, or other actions against Insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of any of the Debtors, the debtors in possession, and/or the Estates, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced by the Reorganized Debtors after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

21. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

22. "*Chile*" means the Republic of Chile.

23. "*Chilean Collateral Trustee*" means Banco Santander Chile.

24. "*Chilean Debt Acknowledgment Deed*" means the *Escritura Pública de Reconocimiento de Deuda* (Debt Acknowledgment Deed) governed by the laws of the Republic of Chile, which shall be signed by (a) the legal

2

representatives of Alsacia, who, on such entity's behalf, shall acknowledge the existence of a debt in favor of the holders of the New Notes on terms identical to those in the New Notes Indenture (*e.g.*, principal amount, interest rate and principal and interest payment dates), and shall include an acceleration clause triggered solely upon a payment default, and (b) the legal representatives of each Guarantor and Camden, who, on such entity's behalf, shall guarantee the payment of principal and interest on the New Notes in accordance with the terms reflected in the Chilean Debt Acknowledgment Deed.   The Chilean Debt Acknowledgment Deed shall be executed by the Guarantors and Camden in a public deed, before a Chilean notary public, and a certified copy (*copia autorizada*) of such public deed shall be delivered to the Chilean Collateral Trustee.  Payment of any part of the principal or interest of the New Notes shall, to the extent that such payment discharges the Debtors' and Camden's obligations in respect of the payment of the principal or interest evidenced by the New Notes, discharge such obligation in the Chilean Debt Acknowledgment to the same extent.

25.      "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

26.      "*Claims and Solicitation Agent*" means the claims, noticing, and/or solicitation agent the Debtors may retain in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court.

27.      "*Claims Register*" means the official register of Claims against or Interests in the Debtors maintained by the Claims and Solicitation Agent.

28.      "*Class*" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

29.      "*Collateral Documents*" means the (i) the collateral documents that secure the Senior Secured Notes if and to the extent that such collateral documents purport to secure obligations incurred as a substitution, replacement, refunding or refinancing of the Senior Secured Notes, including: (a) the pledge agreements regarding Express and Alsacia's rights under the concession agreements with the Ministry of Transportation and Telecommunications and other operating agreements; (b) the pledge over the sums that the AFT (Administrador Financiero de Transantiago) must pay to Alsacia and Express, under the Collection Mandate Agreements, the AFT Agreement and the Ministerio de Transporte y Telecomunicaciones instructions related thereto, in accordance with the concession agreements entered into by Alsacia and Express with the Ministerio de Transporte y Telecomunicaciones; (c) the Shareholder Pledge Agreements; (d) the mortgages on certain properties owned by the Debtors; (e) the Intercompany Debt Pledge Agreements; and (f) the pledge over fuel supply rights in the fuel supply agreement with Copec by Express; and (ii) collateral documents to be executed in connection with the issuance of the New Notes and the execution of the New Notes Indenture, including: (a) the pledge without conveyance agreements regarding buses currently owned and to be owned in the future by the Debtors; (b) the pledge without conveyance agreements regarding existing and future assets other than the buses, with a value individually or, with respect to a group of related assets, in the aggregate of $1,000,000 or more, owned by the Debtors and other Guarantors; (c) the pledge agreements regarding each agreement or contract that has, or any group of related agreements or contracts that have, a "Fair Market Value" (as defined in the Description of the New Notes) equal to or greater than $1,000,000 and that would constitute an "Additional Agreement" (as defined in the Description of the New Notes) if the gross value thereof, determined as provided in such definition, were equal to or greater than $3.0 million per annum; (d) the pledge agreement regarding the shares of Camden; (e) the pledge and security agreements regarding accounts for the benefit of the holders of the New Notes and other secured parties in New York and Chile and the funds on deposit from time to time therein; (f) the pledge agreements regarding insurance proceeds not otherwise deposited in such accounts; (g) the powers of attorney granted by the Debtors in favor of the Chilean Collateral Trustee and each other document as may be executed in furtherance of the appointment of the respective collateral trustees and the granting of the security interest in the collateral; and (h) the Chilean Debt Acknowledgement Deed.  The Collateral Documents shall be subject to other qualifications and exceptions as set forth in the Description of the New Notes.

30.      "*Collateral Trust Agreement*" means that certain Collateral Trust Agreement, dated as of February 28, 2011, by and among, Alsacia, the Guarantors, The Bank of New York Mellon, as trustee under the Senior Secured Notes Indenture, Merrill Lynch Capital Services, Inc., as a notes hedge counterparty, Credit Suisse International, as a notes hedge counterparty, Banco Santander Chile, as Chilean Collateral Trustee and The Bank of New York Mellon, as U.S. Collateral Trustee.

31.    "*Collateral Trustees*" means the U.S. Collateral Trustee and the Chilean Collateral Trustee.

32.    "*Concession Agreements*" means, collectively, the Concession Agreement, approved by the Ministerio de Transporte y Telecomunicaciones on December 22, 2011, between Alsacia and the Ministerio de Transporte y Telecomunicaciones, as amended from time to time, and the Concession Agreement, approved by the Ministerio de Transporte y Telecomunicaciones on December 22, 2011, between Express and the Ministerio de Transporte y Telecomunicaciones, as amended from time to time.

33.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

34.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

35.    "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

36.    "*Confirmation Order*" means the order of the Bankruptcy Court, in form and substance satisfactory to the Requisite Consenting Senior Secured Noteholders, confirming the Plan under section 1129 of the Bankruptcy Code and approving the Disclosure Statement.

37.    "*Consenting Senior Secured Noteholders*" means the Holders of Senior Secured Notes Claims that are party to the RPSA.

38.    "*Consummation*" means the occurrence of the Effective Date.

39.    "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

40.    "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default which is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

41.    "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases, (b) Cures to be paid in connection therewith, and (c) procedures for resolution of any related disputes.

42.    "*Debtors*" means, collectively, each of the following: Alsacia; Express; Eco Uno; and Panamerican.

43.    "*Description of the New Notes*" means the Description of the New Notes and Finance Agreements attached as <u>Exhibit E</u> to the Disclosure Statement.

44.    "*Disbursing Agent*" means the Reorganized Debtors or any Entity selected by the Debtors or Reorganized Debtors and identified in the Plan Supplement, as applicable, with the consent of the Requisite Consenting Senior Secured Noteholders, to make or facilitate distributions contemplated under the Plan.

45.    "*Disclosure Statement*" means the disclosure statement for the Plan as may be amended, supplemented, or modified from time to time, in form and substance reasonably satisfactory to the Requisite Consenting Senior Secured Noteholders, including all exhibits and schedules thereto, to be approved by the Bankruptcy Court.

46.    "*Disputed*" means a Claim, or any portion thereof, that (a) is not Allowed; (b) is not disallowed under the Plan, the Bankruptcy Code, as applicable, or a Final Order; (c) is the subject of an objection or request for

estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn or overruled by a Final Order of the Bankruptcy Court, or (d) is otherwise disputed by the Debtors or the Reorganized Debtors in accordance with applicable law, which dispute has not been withdrawn, resolved or overruled by Final Order.

47.    "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors, on or after the Effective Date, upon which the Debtors or their duly appointed disbursing agent shall make distributions to Holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

48.    "*Distribution Election Deadline*" means the date that is four (4) Business Days after the scheduled date for the commencement of the Confirmation Hearing, which date shall be set forth in the Letter of Transmittal and be subject to extension with the consent of the Debtors and the Requisite Consenting Senior Secured Noteholders.

49.    "*Distribution Record Date*" means the date that the Confirmation Order is entered by the Bankruptcy Court.

50.    "*DTC*" means the Depository Trust Company.

51.    "*Eco Uno*" means Inversiones Eco Uno S.A.

52.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 have been satisfied or waived in accordance with Section 9.2.

53.    "*Eligible Institution*" means a member firm of a registered national securities exchange in the United States, a member of the National Association of Securities Dealers, Inc., or by a commercial bank or trust company having an office or a correspondent in the United States.

54.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

55.    "*Estate*" means the bankruptcy estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

56.    "*Exculpated Claim*" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in-court or out-of-court efforts to negotiate, enter into or implement the RPSA, the Chapter 11 Cases, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the RPSA, the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan.

57.    "*Exculpated Party*" means each of the following in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Ad Hoc Group and its members, the Consenting Senior Secured Noteholders; (d) the Alsacia Shareholders; (e) the Collateral Trustees; (f) the Trustee; and (g) with respect to each of the foregoing Entities in clauses (a) through (f) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.  For the avoidance of doubt, the Ad Hoc Group Advisors shall be Exculpated Parties.

58.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

59.    "*Express*" means Express de Santiago Uno S.A.

60.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

61.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction entered on the docket of such court that has not been reversed, vacated, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, seek to review or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or review or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari or review, reargue or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or the Reorganized Debtors and the Requisite Consenting Senior Secured Noteholders, or, in the event that an appeal, writ of certiorari or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari or review, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or review or move for reargument or rehearing shall have expired; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

62.    "*Finance Agreements*" has the meaning set forth in section 1.02 of the Senior Secured Notes Indenture.

63.    "*General Unsecured Claim*" means any Claim against any of the Debtors other than an Administrative Claim, a Professional Claim, a Senior Secured Notes Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, an Intercompany Claim or a Subordinated Claim.

64.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

65.    "*GPS*" means Global Public Services S.A.

66.    "*Guarantors*" means Express, Eco Uno and Panamerican.

67.    "*Holder*" means an entity holding a Claim or Interest.

68.    "*Impaired*" means a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69.    "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

70.    "*Intercompany Claim*" means any account reflecting intercompany book entries or a Claim by a Debtor against another Debtor, including any Claim arising from the Intercompany Debt Pledge Agreements.

71.    "*Intercompany Debt Pledge Agreements*" mean the intercompany notes payable to Alsacia from Panamerican and Express pursuant to one or more pledge agreements.

72.    "*Interest*" means any membership, stock or other equity ownership interest in a Debtor and all dividends and distributions with respect to such membership, stock or other equity ownership interest and all rights, options, warrants (regardless of when exercised), other rights to acquire any membership, stock or other equity ownership interest in a Debtor existing immediately prior to the Effective Date.

73.    "*Issue Date*" means the date on which the New Notes are issued.

74.    "*Letter of Transmittal*" means a letter to be delivered by the beneficial Holder of Senior Secured Notes Claims to the Reorganized Debtors in which such Holder of Senior Secured Notes Claims: (a) certifies that it is either a Qualified Holder or a Non-Qualified Holder; (b) agrees to deliver its Senior Secured Notes through ATOP or as otherwise contemplated in <u>Section 6.4</u> hereof; and (c) provides any additional certifications and representations as are consistent with the Plan.  The form of the Letter of Transmittal shall be included in the Plan Supplement.

75.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

76.    "*New Boards*" mean, collectively, the initial board of directors or members, as the case may be, of each of the Reorganized Debtors.

77.    "*New Corporate Governance Documents*" means the form of the amended or restated articles of incorporation and bylaws, or other similar organizational and constituent documents, for each of the Reorganized Debtors, and which forms shall be included in the Plan Supplement, and which shall be in form and substance reasonably satisfactory to the Requisite Consenting Senior Secured Noteholders.

78.    "*New Notes*" means the new notes due December 31, 2018 (as may be extended as set forth in the Description of the New Notes) that Reorganized Alsacia will issue in satisfaction of the Senior Secured Notes Claim on the terms set forth in the Description of the New Notes up to a maximum aggregate principal amount of $347,300,000 plus the amount of accrued and unpaid interest under the Senior Secured Notes through and including September 30, 2014, in an amount equal to $17,133,466.67, for a total principal amount of $364,433,466.67, as will be reduced Pro Rata to reflect any Non-Qualified Holder Distributions made to Non-Qualified Holders in lieu of delivering New Notes.

79.    "*New Notes Indenture*" means the indenture governing the New Notes, which shall be consistent with the Description of the New Notes in form and substance acceptable to the Debtors or the Reorganized Debtors, as applicable, and the Requisite Consenting Senior Secured Noteholders.

80.    "*New Notes Indenture Deed*" means an *escritura pública* (public deed) governed by the laws of the Republic of Chile, which shall be signed by the legal representatives of the Chilean Collateral Trustee and Alsacia.  The New Notes Indenture Deed will consist of a translated copy of the relevant indenture, as applicable, and an acknowledgement that the New Notes Indenture and the New Notes replace in their entirety the Senior Secured Notes Indenture and the Senior Secured Notes.

81.    "*Non-Compete Agreement*" means a non-compete agreement, in form and substance satisfactory to the Requisite Consenting Senior Secured Noteholders, to be executed and delivered by Carlos Mario Ríos Velilla, Francisco Javier Ríos Velilla and each of their respective spouses for the benefit of Alsacia, Express and the trustee under the New Notes Indenture (on behalf of the holders of the New Notes) that provides that, during a period from the date of such agreement until the Termination Date, none of Restricted Parties will, directly or indirectly: (i) engage in or assist others in engaging in any Restricted Business, (ii) have an interest in any entity that engages directly or indirectly in the Restricted Business in any capacity, including as a partner, shareholder, member, employee, principal, agent, trustee or consultant, or (iii) knowingly interfere in any material respect with the business relationships (whenever formed) between any of the Reorganized Debtors and customers or suppliers of the Reorganized Debtors; provided that, subject to compliance with its obligations under the New Notes Indenture, no Restricted Party shall be prohibited from bidding and/or negotiating for additional bus related concessions to be operated solely by Alsacia, Express or a wholly-owned subsidiary of Alsacia or Express and, if successful in such bid(s) and/or negotiation(s), operating such concessions solely through Alsacia, Express or a wholly-owned subsidiary of either Alsacia or Express (which subsidiary shall be a Guarantor of the New Notes and a Restricted Subsidiary under the New Notes Indenture).

82.    "*Non-Qualified Holder*" means a Senior Secured Noteholder that:  (a) certifies that it is not (i) a "Qualified Institutional Buyer" as such term is defined in 230 CFR 144A(a), (ii) an "Accredited Investor" as such term is defined in Rule 501(a) under the Securities Act, or (iii) a Person other than "U.S. Persons", as such term is defined in Rule 901(k) under the Securities Act, that is not located in the United States of America; and (b) holds Senior Secured Notes in a principal amount that is less than $150,000.

83.    "*Non-Qualified Holder Distribution*" means an amount in U.S. dollars equal to the product of (a) the principal amount of the New Notes that the relevant Non-Qualified Holder would have received based on its holding of Senior Secured Notes if it were a Qualified Holder multiplied by (b) the volume-weighted average price of the New Notes.  In each case, the volume-weighted average price of the New Notes will be based on the volume-weighted average price listed on Bloomberg, and will be expressed as a percentage, as follows:  (i) at the close of business during the ten (10) Business Days following the Effective Date for those Non-Qualified Holders who

7

complete the procedures specified in Section 6.4(b)(1); (ii) at the close of business during the ten (10) Business Days immediately prior to the First Follow-on Distribution Date for those Non-Qualified Holders who complete the procedures specified in Section 6.4(b)(2) to receive a Non-Qualified Holder Distribution on the First Follow-on Distribution Date; and (iii) at the close of business during the ten (10) Business Days immediately prior to the Final Follow-on Distribution Date for those Non-Qualified Holders who complete the procedures specified in Section 6.4(b)(2) to receive a Non-Qualified Holder Distribution on the Final Follow-on Distribution Date.

84.     "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

85.     "*Other Secured Claim*" means any Secured Claim against any of the Debtors, including any and all Claims arising under or in connection with the Bus Terminal Loan, other than a Secured Tax Claim or a Senior Secured Notes Claim.

86.     "*Panamerican*" means Panamerican Investments Ltd.

87.     "*Paying Agent*" means The Bank of New York Mellon in its capacity as principal paying agent under the Senior Secured Notes Indenture.

88.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

89.     "*Petition Date*" means the date on which each of the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

90.     "*Plan*" means this chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time in accordance with the RPSA, including the Plan Supplement and all exhibits, supplements, appendices, and schedules, which documents shall, in all cases, be in form and substance satisfactory to the Requisite Consenting Senior Secured Noteholders.

91.     "*Plan Supplement*" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be filed by the Debtors no later than five (5) Business Days prior to the date first scheduled for the Confirmation Hearing, or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement, and which shall, in all cases, be in form and substance satisfactory to the Requisite Consenting Senior Secured Noteholders.

92.     "*Priority Tax Claim*" means any Claim of a Governmental Unit against any of the Debtors of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code, including a Secured Tax Claim.

93.     "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

94.     "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of costs, expenses or other charges incurred under sections 330, 331, or 503(b) of the Bankruptcy Code after the Petition Date and prior to and including the Effective Date.

95.     "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

96.     "*Pro Rata*" means the proportion of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class.

97.    "*Qualified Holder*" means a Senior Secured Noteholder that certifies that it is:  (a) a "Qualified Institutional Buyer" as such term is defined in 230 CFR 144A(a); (b) an "Accredited Investor" as defined in Rule 501(a) under the Securities Act; or (c) a person other than a "U.S. Person", as such term is defined in Rule 901(k) under the Securities Act, that is not located in the United States of America.

98.    "*Qualifying Concession Extension*" means an extension of both Concession Agreements through at least April 22, 2021.

99.    "*Reinstated*" means, with respect to Claims and Interests, treated in accordance with section 1124 of the Bankruptcy Code.

100.    "*Rejection Schedule*" means the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, as may be amended from time to time, setting forth certain Executory Contracts and Unexpired Leases for rejection as of the Effective Date under section 365 of the Bankruptcy Code.

101.    "*Released Party*" means each of the following: (a) the Debtors; (b) the Alsacia Shareholders; (c) the Collateral Trustees; (d) the Trustee; (e) the Ad Hoc Group and its members, the Consenting Senior Secured Noteholders; and (f) with respect to each of the foregoing Entities in clauses (a) and (e), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.  For the avoidance of doubt, the Ad Hoc Group Advisors shall be Released Parties.

102.    "*Releasing Party*" means each of the following:  (a) the Consenting Senior Secured Noteholders; (b) other than the Consenting Senior Secured Noteholders, the Holders of Impaired Claims or Interests that (i) affirmatively vote to accept the Plan or (ii) either (x) abstain from voting or (y) reject the Plan and, in the case of either (x) or (y), does not elect (as permitted on the Ballots) to opt out of the releases contained in Section 8.4 of the Plan; (c) to the fullest extent permissible under applicable law, the Holders of Unimpaired Claims or Interests; (d) the Collateral Trustees; (e) the Trustee; and (f) the Alsacia Shareholders; and with respect to each of the foregoing Entities in clauses (a) through (f), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

103.    "*Reorganized*" means, as to any Debtor or the Debtors, the Debtor or Debtors and any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

104.    "*Requisite Consenting Senior Secured Noteholders*" has the meaning assigned to such term in the RPSA.

105.    "*Restricted Business*" means any business activity relating to the bus routes in the Santiago, Chile metropolitan area, including operating any such bus routes.

106.    "*Restricted Party*" means any of Carlos Mario Ríos Velilla, the spouse of Carlos Mario Ríos Velilla, Francisco Javier Ríos Velilla, the spouse of Francisco Javier Ríos Velilla, any member of their respective families (e.g.,  their children, parents, brothers, uncles, aunts and cousins) or any Affiliate of any of the foregoing.

107.    "*RPSA*" means that certain Restructuring and Plan Support Agreement, dated August 31, 2014, by and among the Debtors, the Alsacia Shareholders and the Consenting Senior Secured Noteholders, as amended from time to time.

108.    "*RPSA Effective Date*" means August 31, 2014.

109.    "*Secured Claim*" means a Claim against any of the Debtors: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

110.    "*Secured Tax Claim*" means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

111.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state or local law.

112.    "*Senior Secured Noteholder*" means a Holder of any of the Senior Secured Notes.

113.    "*Senior Secured Notes*" means those certain 8% Senior Secured Notes due 2018, issued pursuant to the Senior Secured Notes Indenture.

114.    "*Senior Secured Notes Claim*" means any and all Claims of a Senior Secured Noteholder against each Debtor arising under or in connection with the Finance Agreements, including with respect to the Senior Secured Notes Indenture, the Senior Secured Notes, the Collateral Trust Agreement and all other financing, security and related documents executed in furtherance of the issuance of the Senior Secured Notes.

115.    "*Senior Secured Notes Indenture*" means that certain Indenture, dated February 18, 2011, by and among BRT Escrow Corporation SpA, as initial temporary issuer, The Bank of New York Mellon, in its capacity as trustee, principal paying agent, transfer agent, registrar and U.S. Collateral Trustee and Banco Santander Chile, as Chilean Collateral Trustee, as supplemented by (i) the First Supplemental Indenture dated as of February 28, 2011, and (ii) the Second Supplemental Indenture dated as of December 16, 2011, and as modified by the Amended and Restated Consent Solicitation Statement dated September 25, 2013 (as supplemented on October 3, October 10 and October 14, 2013).

116.    "*Shareholder Pledge Agreements*" means (a) the Alzamiento de Prenda Comercial de Acciones (Pledge Agreement) dated as of February 28, 2011 by and among HSBC Bank Chile, Alsacia, Banco Santander Chile, Carlos Mario Ríos Velilla, GPS, Nadija Rodic González and Gabriel Nicola Seves and (b) the Alzamiento de Prenda Comercial de Acciones (Pledge Agreement) dated as of February 28, 2011 by and among HSBC Bank Chile, Carlos Mario Ríos Velilla, Eco Uno, Express, Banco Santander Chile, Fabio Leonel Junca Hernandez and Gibrán Hacha Sarrás.

117.    "*Sponsor Support Agreement*" means the Amended and Restated Sponsor Support Agreement dated as of October 10, 2013 between GPS and Alsacia.

118.    "*Subordinated Claim*" means any Claim against any of the Debtors that is subordinated in priority of payment pursuant to section 510(b) or section 510(c) of the Bankruptcy Code as determined by a Final Order of the Bankruptcy Court.

119.    "*Termination Date*" means the earlier to occur of (a) three years following the termination date of the Concession Agreement that terminates last (including after giving effect to any Qualifying Concession Extension) and (b) the repayment in full in cash of all principal and interest on, and all other obligations under, the New Notes and the New Notes Indenture.

120.    "*Trustee*" means The Bank of New York Mellon in its capacity as trustee under the Senior Secured Notes Indenture.

121.    "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

122.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

123.    "*Unimpaired*" means, with respect to a Claim, Interest or Class of Claims or Interests, a Claim, Interest or Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

124.    "*U.S. Collateral Trustee*" means The Bank of New York Mellon.

## 1.2    Rules of Interpretation

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; and (i) the Debtors shall be authorized to and may rely upon any written statement (including by email) from Akin Gump Strauss Hauer & Feld LLP that confirms or declines a consent, waiver or other form of approval by the Requisite Consenting Senior Secured Noteholders.

## 1.3    Computation of Time

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

## 1.4    Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict of laws principles.

## 1.5    Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## 1.6    Reference to the Debtors or the Reorganized Debtors

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

# ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, Professional Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in <u>ARTICLE III</u>.

2.1    **Administrative Claims**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or Reorganized Debtors, as applicable (which agreement shall be subject to the consent of the Requisite Consenting Senior Secured Noteholders), each Holder of an Allowed Administrative Claim (other than Holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either:  (a) on the Effective Date, or as soon as reasonably practicable thereafter; (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims without any further action by the Holders of such Allowed Administrative Claims.

2.2    **Professional Claims**

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than 45 days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code.  The Reorganized Debtors shall pay Professional Claims in Cash in the amount the Bankruptcy Court Allows.  From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

2.3    **Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Priority Tax Claim:  (a) the treatment provided by section 1129(a)(9)(C) of the Bankruptcy Code; (b) a Cash payment on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, equal to the amount of such Allowed Priority Tax Claim; or (c) such other less favorable treatment as may be agreed upon between the Holder of such Allowed Priority Tax Claim and the applicable Debtor, with the consent of the Requisite Consenting Senior Secured Noteholders, which consent shall not be unreasonably withheld.  If payment is made in accordance with section 1129(a)(9)(C), installment payments shall be made quarterly and interest shall accrue in accordance with 26 U.S.C. § 6621.  On the Effective Date, Liens securing such Allowed Secured Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim may be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

2.4     **Costs and Expenses of Collateral Trustees, Trustee, Paying Agent and Ad Hoc Group Advisors**

On the Effective Date, the Reorganized Debtors shall pay all reasonable and documented costs and expenses (including reasonable and documented fees and expenses of counsel) incurred by the Collateral Trustees, the Trustee and the Paying Agent through and including the Effective Date to the extent required under Section 7.9 of the Collateral Trust Agreement and Section 8.06 of the Senior Secured Notes Indenture, as applicable.  For the avoidance of doubt, any such claims of the Collateral Trustees, the Trustee and the Paying Agent shall not be treated under this Plan as General Unsecured Claims, and shall not be subject to avoidance, objection, challenge, deduction, subordination, recharacterization or offset.  The Collateral Trustees, the Trustee and the Paying Agent shall not be required to file any application under section 330 or 331 of the Bankruptcy Code or otherwise with regard to the allowance of their respective fees and expenses.

On the Effective Date, the Reorganized Debtors shall pay all invoiced fees and expenses incurred by the Ad Hoc Group Advisors in accordance with the terms of the Ad Hoc Group Advisor Engagement Agreements, whether incurred before or after the Petition Date.  For the avoidance of doubt, any such claims of the Ad Hoc Group Advisors shall not be treated under this Plan as General Unsecured Claims, and shall not be subject to avoidance, objection, challenge, deduction, subordination, recharacterization or offset.  To the extent not previously assumed, the Ad Hoc Group Advisor Engagement Agreements shall each be deemed assumed by the Debtors in accordance with section 365 of the Bankruptcy Code as of the Effective Date.  The Ad Hoc Group Advisors shall not be required to file any application under section 330 or 331 of the Bankruptcy Code or otherwise seek approval or allowance of their respective fees and expenses.

## ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in ARTICLE II, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

3.1     **The Debtors**

There are a total of four (4) Debtors.  Each Debtor has been assigned a number below for the purposes of classifying and treating Claims against and Interests in each Debtor.  The Claims against and Interests in each Debtor, in turn, have been assigned to separate lettered Classes with respect to each Debtor based on the type of Claim or Interest involved.  Accordingly, the classification of any particular Claim or Interest in any of the Debtors depends on the particular Debtor against which such Claim is asserted or in which such Interest is held and the type of Claim or Interest in question.  The numbers applicable to the various Debtors are as follows:

| Number | Debtor Name |
| --- | --- |
| 1 | Alsacia |
| 2 | Express |
| 3 | Panamerican |
| 4 | Eco Uno |

13

3.2    **Classification of Claims and Interests**

Claims against and Interests in each of the Debtors are divided into the following lettered Classes:

| Letter | Class |
|--------|-------|
| Class A | Class A consists of the Senior Secured Notes Claims. |
| Class B | Class B consists of all Other Secured Claims. |
| Class C | Class C consists of all Other Priority Claims. |
| Class D | Class D consists of all General Unsecured Claims. |
| Class E | Class E consists of all Intercompany Claims. |
| Class F | Class F consists of all Subordinated Claims. |
| Class G | Class G consists of all Interests. |

3.3    **Treatment of Classes of Claims and Interests**

The following chart designates the Class of Claims against and Interests in each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (c) deemed to accept or reject the Plan. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 12.4 of the Plan.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1A – 4A | Senior Secured Notes Claims | Impaired | Entitled To Vote |
| 1B – 4B | Other Secured Claims | Unimpaired | Deemed To Accept; Not Entitled To Vote |
| 1C – 4C | Other Priority Claims | Unimpaired | Deemed To Accept; Not Entitled To Vote |
| 1D – 4D | General Unsecured Claims | Unimpaired | Deemed To Accept; Not Entitled To Vote |
| 1E – 4E | Intercompany Claims | Unimpaired | Deemed To Accept; Not Entitled to Vote |
| 1F – 4F | Subordinated Claims | Unimpaired | Deemed To Accept; Not Entitled To Vote |
| 1G – 4G | Interests | Unimpaired | Deemed To Accept; Not Entitled To Vote |

Except to the extent that a Holder of an Allowed Claim against or Interest in any of the Debtors, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Interest.  Unless otherwise indicated, the Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the Effective Date, or as soon as reasonably practicable thereafter:

(a)    **Classes 1A Through 4A (Senior Secured Notes Claims)**

(1)    *Classification*:  Classes 1A through 4A consist of the Senior Secured Notes Claims against the applicable Debtor.

(2)    *Allowance:*  On the Effective Date, the Senior Secured Notes Claims shall be Allowed in the amounts set forth in Exhibit A to the Plan, and shall not be subject to avoidance,

14

subordination, setoff, offset, deduction, objection, challenge, recharacterization, surcharge under section 506(c) of the Bankruptcy Code or any other claim or defense.

(3)     *Treatment*:  In full and final satisfaction, settlement, release, and discharge of and exchange for each Allowed Senior Secured Notes Claim, (i) each Qualified Holder of an Allowed Senior Secured Notes Claim shall receive its Pro Rata share of the New Notes, (ii) each Non-Qualified Holder of an Allowed Senior Secured Notes Claim shall receive the Non-Qualified Holder Distribution and (iii) each Holder of an Allowed Senior Secured Notes Claim shall receive Cash in the amount equal to interest accrued on the principal amount of the Senior Secured Notes from (and including) October 1, 2014 through (and excluding) the Issue Date (based upon a principal amount of $364,433,466.67), at the rate of eight (8) percent *per annum* on (A) the Issue Date if such Holder completes the procedures specified in Sections 6.4(a)(1) or 6.4(b)(1) of the Plan or (B) the First Follow-on Distribution Date or the Final Follow-on Distribution Date if such Holder completes the procedures specified in Sections 6.4(a)(2) or 6.4(b)(2) of the Plan, as applicable.

(4)     *Voting*:  Classes 1A through 4A are Impaired.  Holders of Senior Secured Claims are entitled to vote to accept or reject the Plan.

(b)     **Classes 1B Through 4B (Other Secured Claims)**

(1)     *Classification*:  Classes 1B through 4B consist of all Allowed Other Secured Claims against the applicable Debtor.

(2)     *Treatment*:  Each Holder of an Allowed Other Secured Claim shall, at the election of the Reorganized Debtors, (i) have the legal, equitable and contractual rights of such Holder Reinstated, or (ii) receive, at the option of the Debtors, subject to the consent of the Requisite Consenting Senior Secured Noteholders, which consent shall not be unreasonably withheld, (A) Cash in an amount equal to such Allowed Other Secured Claim, (B) the property of the Debtors that constitutes collateral securing such Allowed Other Secured Claim, or (C) other treatment that renders its Allowed Other Secured Claim Unimpaired.

(3)     *Voting*:  Classes 1B through 4B are Unimpaired.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

(c)     **Classes 1C Through 4C (Other Priority Claims)**

(1)     *Classification*:  Classes 1C through 4C consist of all Allowed Other Priority Claims against the applicable Debtor.

(2)     *Treatment*:  On the Effective Date, each Holder of an Allowed Other Priority Claim shall receive (A) Cash in an amount equal to such Allowed Other Priority Claim or (B) other treatment, subject to the consent of the Requisite Consenting Senior Secured Noteholders, which consent shall not be unreasonably withheld, rendering its Allowed Other Priority Claim Unimpaired.

(3)     *Voting*:  Classes 1C through 4C are Unimpaired.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

15

(d)      **Classes 1D Through 4D (General Unsecured Claims)**

      (1)      *Classification*:  Classes 1D through 4D consist of all Allowed General Unsecured Claims against the applicable Debtor.

      (2)      *Treatment*:  Holders of Allowed General Unsecured Claims shall receive Cash in an amount equal to such Allowed General Unsecured Claim on the later of the Effective Date or in the ordinary course of business in accordance with the terms of the particular transaction giving rise to such Allowed General Unsecured Claim.

      (3)      *Voting*:  Classes 1D through 4D are Unimpaired.  Holders of Allowed General Unsecured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject the Plan.

(e)      **Classes 1E Through 4E (Intercompany Claims)**

      (1)      *Classification*:  Classes 1E through 4E consist of all Allowed Intercompany Claims against the applicable Debtor.

      (2)      *Treatment*:  Each Allowed Intercompany Claim will be, at the election of the Reorganized Debtors, subject to the prior written consent of the Requisite Consenting Senior Secured Noteholders, which consent shall not be unreasonably withheld, either (i) released, waived, and discharged as of the Effective Date; (ii) contributed to the capital of the obligor Entity; (iii) dividended; or (iv) remain Unimpaired, as may be agreed to by the applicable Reorganized Debtor and the Holder of such Intercompany Claim, subject to the requirements of and restrictions contained in the New Notes Indenture, if any.

      (3)      Voting:  Classes 1E through 4E are Unimpaired.  Holders of Allowed Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

(f)      **Classes 1F Through 4F (Subordinated Claims)**

      (1)      *Classification*:  Classes 1F through 4F consist of all Allowed Subordinated Claims against the applicable Debtor.

      (2)      *Allowance*:  Notwithstanding anything in the Plan to the contrary, a Subordinated Claim, if existing, may only become Allowed by Final Order of the Bankruptcy Court. The Debtors are not aware of any asserted Subordinated Claim and believe that no Subordinated Claim exists.

      (3)      *Treatment*:  Holders of Allowed Subordinated Claims shall receive Cash in an amount equal to such Allowed Subordinated Claim on the later of the Effective Date, the date on which such Subordinated Claim is Allowed, or in the ordinary course of business in accordance with the terms of the particular transaction giving rise to such Allowed Subordinated Claim.

      (4)      *Voting*:  Classes 1F through 4F are Unimpaired.  Holders of Allowed Subordinated Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Subordinated Claims are not entitled to vote to accept or reject the Plan.

(g)    **Classes 1G Through 4G (Interests)**

(1)    *Classification*:  Classes 1G through 4G consist of all Allowed Interests in the applicable Debtor.

(2)    *Treatment*:   On the Effective Date, the Allowed Interests in the Debtors shall be Reinstated.

(3)    *Voting*:  Classes 1G through 4G are Unimpaired.  Holders of Allowed Interests in the Debtors are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Interests are not entitled to vote to accept or reject the Plan.

3.4    **Special Provision Governing Unimpaired Claims**

Nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**ARTICLE IV**

**PROVISIONS FOR IMPLEMENTATION OF THE PLAN**

4.1    **General Settlement of Claims**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests.

4.2    **Subordination**

The allowance, classification, and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and the Plan shall recognize and implement any such rights.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.  For the avoidance of doubt, no Claim in Classes 1A-4A shall be subject to subordination.

4.3    **Sources of Cash for Plan Distributions**

All Cash consideration necessary for the Reorganized Debtors to make payments or distributions pursuant to this Plan shall be obtained from Cash from the Debtors, including Cash from business operations.  Further, the Debtors and the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan or the New Notes Indenture.

4.4    **Issuance of the New Notes**

On the Effective Date, the Reorganized Debtors are authorized and directed to issue, execute, deliver or otherwise bring into effect, as the case may be, to or for the benefit of the Qualified Holders of Allowed Senior Secured Notes Claims, the New Notes, the New Notes Indenture, the New Notes Indenture Deed, the Collateral Documents and any other instruments, certificates, and other documents or agreements required to be issued, executed or delivered pursuant to the Plan, and take any other necessary actions in connection with the foregoing, in

each case without need for further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity. The issuance of the New Notes shall be exempt from registration under applicable securities laws pursuant to Section 4(a)(2) of the Securities Act and Regulation S under the Securities Act, and the New Notes Indenture shall be exempt from qualification under the Trust Indenture Act of 1939 pursuant to Section 304(b) thereof. All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of this Plan, including the New Notes Indenture and any other agreement or document related thereto or entered into in connection therewith, including the Collateral Documents, shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity (other than as expressly required by such applicable agreement). On the Effective Date, the guarantees, pledges, liens and other security interests granted pursuant to the New Notes Indenture and the Collateral Documents (whether prior to or on the Effective Date) shall be deemed to have been granted in good faith as an inducement to the Qualified Holders of Allowed Senior Secured Notes Claims to agree to the treatment contemplated by the Plan and (a) shall be deemed to be approved, (b) shall be legal, binding, and creating or continuing enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Notes Indenture and the Collateral Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Notes Indenture and the Collateral Documents, as the case may be, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non bankruptcy law, including any applicable law of the Republic of Chile. The Reorganized Debtors and the persons and entities granted such Liens and security interests are authorized and directed to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and no such filings, recordings, approvals, and consents shall be necessary), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

4.5    **Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided herein, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate and all Causes of Action, shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan or in the New Notes Indenture, or any other agreement or document related thereto or entered into in connection therewith, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4.6    **Discharge from Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except as otherwise provided in this Plan, including Section 8.10 below, or the Confirmation Order: (1) the Finance Agreements, the Sponsor Support Agreement and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of or ownership interest in the Debtors that are specifically Reinstated or otherwise not Impaired under the Plan) shall be deemed cancelled, discharged, and extinguished (a) with respect to all rights of and obligations owed by any Debtor under any such indentures, instruments or similar agreements, and the Reorganized Debtors shall not have any continuing obligations thereunder, (b) with respect to the rights and obligations of the Alsacia Shareholders under the Sponsor Support Agreement and (c) except as provided below in this Section 4.6, with respect to the rights and obligations of the Collateral Trustees and the Trustee under the Finance Agreements or similar agreements against (or to) any other Person except (i) the Debtors, (ii) the Reorganized Debtors, or (iii) with respect to (i) and (ii), any of their respective Affiliates; and (2) the obligations of the Debtors pursuant, relating, or

pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of or ownership interests in the Debtors that are specifically Reinstated or otherwise not Impaired under the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan as provided herein; provided further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under this Plan. Solely for the purpose of clause (1)(c) in the immediately preceding sentence, the following rights of the Collateral Trustees and the Trustee shall remain in effect after the Effective Date: (1) rights as the Collateral Trustees and the Trustee and rights in connection with any other role under the Finance Agreements, including rights to payment of fees, expenses and indemnification obligations, including from property distributed hereunder to the Collateral Trustees and/or the Trustee, whether pursuant to the exercise of a charging lien or otherwise, (2) rights relating to distributions made to Holders of Allowed Senior Secured Notes Claims by the Collateral Trustees and/or the Trustee from any source, including distributions hereunder, (3) rights relating to representation of the interests of the Holders of Senior Secured Notes Claims by the Collateral Trustees and the Trustee in the Chapter 11 Cases to the extent not discharged or released hereunder or any order of the Bankruptcy Court, and (4) rights relating to participation by the Collateral Trustees and the Trustee in any proceedings or appeals related to the Plan. On and after the Effective Date, all duties and responsibilities of the Collateral Trustees and the Trustee shall be discharged unless otherwise specifically set forth in or provided for under the Plan. Notwithstanding anything in this Plan to the contrary, this Section 4.6 shall not be amended, supplemented, or modified without the prior written consent of the Collateral Trustees, the Trustee and the Requisite Consenting Senior Secured Noteholders.

### 4.7     Execution of Plan Documents

Except as otherwise provided herein, and subject to the consent rights afforded the Requisite Consenting Senior Secured Noteholders under this Plan, on the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors shall execute all instruments and other documents required to be executed under the Plan.

### 4.8     Corporate Action

The Debtors or the Reorganized Debtors, as applicable, are authorized to take all further corporate actions necessary to effectuate the Plan and authorize each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Reorganized Debtors, whether taken prior to or as of the Effective Date, including the issuance of the New Notes.

### 4.9     New Corporate Governance Documents

To the extent required by applicable law, on or immediately before the Effective Date, the Reorganized Debtors will file their respective New Corporate Governance Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation.  The New Corporate Governance Documents will be consistent with the provisions of the Plan and the Bankruptcy Code and shall be in form and substance reasonably satisfactory to the Requisite Consenting Senior Secured Noteholders.  After the Effective Date, each Reorganized Debtor may amend and restate its New Corporate Governance Documents as permitted by the laws of its respective jurisdiction of formation and its respective New Corporate Governance Documents.

### 4.10     Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate

to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

4.11    **Section 1146(a) Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

4.12    **Managers, Directors and Officers**

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, and except as may otherwise be disclosed in the Disclosure Statement, on the Effective Date, the directors and officers who are identified in the Plan Supplement shall serve as the initial board of directors and officers of the Reorganized Debtors that are corporations. Pursuant to section 1129(a)(5), the Debtors will disclose in the Plan Supplement, on or prior to the Confirmation Date, the identity and affiliations of any Person proposed to serve on a Reorganized Debtor's board of directors and, to the extent such Person is an Insider, the nature of any compensation for such Person. After the Effective Date, the corporate governance and management of the Reorganized Debtors shall be determined by the applicable board of managers or board of directors in accordance with the laws of the applicable state or country of organization.

4.13    **Incentive Plans and Employee and Retiree Benefits**

Except as otherwise provided herein, on and after the Effective Date, subject to any Final Order, the Reorganized Debtors shall:  (a) adopt, assume and/or honor in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plan, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time, and other employee benefits arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid.

4.14    **Preservation of Rights of Action**

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, judicial, equitable, or otherwise, or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 5.1  Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided herein or pursuant to the Confirmation Order, Executory Contracts and Unexpired Leases shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (a) is listed on the Rejection Schedule; (b) has been previously assumed or rejected by the Debtors by Final Order or has been assumed or rejected by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) previously expired or terminated pursuant to its own terms; or (d) is the subject of a motion to assume or reject pending as of the Effective Date.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, assignments, and rejections.

Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 5.2  Cure of Defaults and Objections to Cure and Assumption

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors, as applicable, of the Cure; provided, however, that nothing herein shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure so long as payment of such Cure does not violate the terms of the New Notes Indenture.

At least fourteen (14) calendar days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed Cure Notices of proposed assumption and proposed amounts of Cures to the applicable third parties.  In the event of a dispute regarding (i) the amount of any Cure, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the payments required by section 365(b)(1) of the Bankruptcy Code in respect of Cures shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption (and, if applicable, assignment).  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure must be filed with the Bankruptcy Court and served on the Debtors and

21

counsel to the Ad Hoc Group within no later than four (4) calendar days before the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or Cure of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or Cure. The Debtors or Reorganized Debtors, as applicable, on notice to counsel to the Ad Hoc Group, also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.  The Debtors or Reorganized Debtors, as applicable, reserve the right either to reject or nullify the assumption of any Executory Contract or Unexpired Lease within 45 days after a Final Order resolving an objection to assumption or determining the Cure or any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease, is entered.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

5.3    **Pre-existing Payment and Other Obligations**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors or Reorganized Debtors, as applicable, under such contract or lease.  In particular, notwithstanding any applicable non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide: (a) payment to the contracting Debtors or Reorganized Debtors, as applicable, of outstanding and future amounts owing thereto under or in connection with rejected Executory Contracts or Unexpired Leases or (b) warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected Executory Contracts.

5.4    **Rejection Damages Claims and Objections to Rejections**

Pursuant to section 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases.  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Confirmation Date or the effective date of rejection. Any such Proofs of Claim that are not timely filed shall be disallowed without the need for any further notice to or action, order, or approval of the Bankruptcy Court.  Such Proofs of Claim shall be forever barred, estopped, and enjoined from assertion.  Moreover, such Proofs of Claim shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged notwithstanding anything in a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Class D—General Unsecured Claims against the applicable Debtor counterparty thereto.

5.5    **Contracts and Leases Entered Into After the Petition Date**

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

5.6    **Reservation of Rights**

      Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan or the Cure Notice shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

ARTICLE VI

**PROVISIONS GOVERNING DISTRIBUTIONS**

6.1    **Distributions on Account of Claims Allowed as of the Effective Date**

      Except as otherwise provided in the Plan, a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors (as the case may be) and the Holder of the applicable Allowed Claim, on the Distribution Date, the Reorganized Debtors shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the Debtors' and Reorganized Debtors' right to object to Claims; provided, however, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (2) Allowed Priority Tax Claims shall be paid in accordance with Section 2.3. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim may be paid in full in Cash in accordance with the terms of any agreement between the Debtors or the Reorganized Debtors (as the case may be) and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

6.2    **Special Rules for Distributions to Holders of Disputed Claims**

      Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (1) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (2) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claim has been Allowed or expunged. Any dividends or other distributions arising from property distributed to Holders of Allowed Claims in a Class and paid to such Holders under the Plan shall be paid also, in the applicable amounts, to any Holder of a Disputed Claim, as applicable, in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims in such Class.

6.3    **Disbursing Agent**

      Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent on or as soon as practicable after the Effective Date. To the extent the Disbursing Agent is one or more of the Reorganized Debtors, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

      The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

      Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable

23

compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent may be paid in Cash by the Reorganized Debtors.

6.4    **Distributions on Account of Senior Secured Notes Claims**

(a)    As a condition to participation under the Plan, each Holder of a Senior Secured Notes Claim that is a Qualified Holder is required to review the Letter of Transmittal and take the following action as applicable to tender its Senior Secured Notes:

(1)    on or before the Distribution Election Deadline, surrender its Senior Secured Notes by completing the Book-Entry Confirmation procedure (more fully described below) for Qualified Holders; or

(2)    after the Distribution Election Deadline, complete and return a duly completed Letter of Transmittal to the Disbursing Agent together with any documents required in connection therewith.

(b)    As a condition to participation under the Plan, each Holder of a Senior Secured Notes Claim that is a Non-Qualified Holder is required to review the Letter of Transmittal and take the following action as applicable to tender its Senior Secured Notes:

(1)    on or before the Distribution Election Deadline, surrender its Senior Secured Notes by completing the Book-Entry Confirmation procedure (more fully described below) for Non-Qualified Holders; or

(2)    after the Distribution Election Deadline, complete and return a duly completed Letter of Transmittal to the Disbursing Agent together with any documents required in connection therewith.

(c)    On or promptly after the Effective Date, the Debtors will request that DTC impose a "chill order" on any Senior Secured Notes that have not been validly tendered prior to the Distribution Election Deadline.

(d)    On the Effective Date, or as soon as reasonably practicable thereafter, the Disbursing Agent will distribute, through ATOP, the New Notes corresponding to each Qualified Holder that has completed the procedures specified in clause (a)(1) above; provided, however, that if the Effective Date has not occurred by ten (10) calendar days after the Distribution Election Deadline, the Disbursing Agent shall immediately reverse the book-entry delivery of Senior Secured Notes made using DTC's ATOP system by the Distribution Election Deadline, provided, further, that the foregoing requirement may be extended to a later date mutually agreed by the Debtors and the Requisite Consenting Senior Secured Noteholders in a written notice provided to the Disbursing Agent.

(e)    The Disbursing Agent will (i) on the date that is ten (10) Business Days following the Effective Date calculate the amount of the Non-Qualified Holder Distribution payable to Non-Qualified Holders per U.S.$1,000 principal amount of Senior Secured Notes and (ii) on the date that is two (2) Business Days following such calculation, distribute, through ATOP, the Non-Qualified Holder Distribution corresponding to each Non-Qualified Holder that has completed the procedures specified in clause (b)(1) above.

(f)    On the date that is sixty (60) days following the Effective Date (the "First Follow-on Distribution Date"), the Disbursing Agent will:

(1)    Deliver to each Qualified Holder that has completed the procedures specified in clause (a)(2) above on or prior to the date that is fifteen (15) days immediately prior to the First Follow-on Distribution Date the New Notes corresponding to such Qualified Holder, which New Notes will be delivered by crediting the DTC account specified by such Qualified Holder in their Letter of Transmittal (via Deposit/Withdrawal at Custodian ("DWAC") procedures in cooperation with and at the direction of the indenture trustee

24

for the New Notes).  Qualified Holders will be compensated for any interest payments, pre-payments, repayments, redemptions or other distributions made from the Effective Date through and including such First Follow-on Distribution Date, as if such Holder had received its New Notes on the Effective Date; and

(2)    Deliver to each Non-Qualified Holder that has completed the procedures specified in clause (b)(2) above on or prior to the date that is fifteen (15) days  immediately prior to the First Follow-on Distribution Date the Non-Qualified Holder Distribution corresponding to such Non-Qualified Holder, which Non-Qualified Holder Distribution will be delivered by crediting the bank account specified by such Non-Qualified Holder in the Letter of Transmittal.  Non-Qualified Holders receiving a Non-Qualified Holder Distribution on the First Follow-on Distribution Date will be entitled to interest that accrues on such Non-Qualified Holder Distribution with respect to the period from the Effective Date to the First Follow-on Distribution Date at the applicable rate provided to the New Notes.

(g)    On the date that is one hundred and ninety-five (195) days following the Effective Date (the "Final Follow-on Distribution Date"), the Disbursing Agent will:

(1)    Deliver to each Qualified Holder that has completed the procedures specified in clause (a)(2) above on or prior to the date that is fifteen (15) days immediately prior to the Final Follow-on Distribution Date the New Notes corresponding to such Qualified Holder, which New Notes will be delivered by crediting the DTC account specified by such Qualified Holder in their Letter of Transmittal (via DWAC deposit procedures in cooperation with and at the direction of the indenture trustee for the New Notes).  Qualified Holders will be compensated for any interest payments, pre-payments, repayments, redemptions or other distributions made from the Effective Date through and including such Final Follow-on Distribution Date, as if such Holder had received its New Notes on the Effective Date; and

(2)    Deliver to each Non-Qualified Holder that has completed the procedures specified in clause (b)(2) above on or prior to the date that is fifteen (15) days  immediately prior to such Final Follow-on Distribution Date the Non-Qualified Holder Distribution corresponding to such Non-Qualified Holder, which Non-Qualified Holder Distribution will be delivered by crediting the bank account specified by such Non-Qualified Holder in the Letter of Transmittal.  Non-Qualified Holders receiving a Non-Qualified Holder Distribution on the Final Follow-on Distribution Date will be entitled to interest that accrues on such Non-Qualified Holder Distribution with respect to the period from the Effective Date to the Final Follow-on Distribution Date at the applicable rate provided to the New Notes.

(h)    The Disbursing Agent and/or any applicable broker or agent shall use reasonable best efforts to obtain the surrender of all certificates or instruments relating to the Senior Secured Notes to the Debtors, the Reorganized Debtors or the Disbursing Agent and shall execute such other documents as might be necessary to effectuate the Plan.  Any Holder of Senior Secured Notes who fails to surrender the applicable Senior Secured Notes required to be tendered under the Plan within one hundred and eighty (180) days after the Effective Date shall have its Claim and its distribution pursuant to the Plan on account of such Senior Secured Notes Claim discharged and forfeited and shall not participate in any distribution under the Plan.  Any property in respect of such forfeited Senior Secured Notes Claims would revert to the Reorganized Debtors.

6.5     **Book Entry Transfer: ATOP**

The Disbursing Agent will work with DTC to establish this distribution event relating to the Senior Secured Notes on DTC's ATOP system.[1]  A beneficial owner of Senior Secured Notes that are held by or registered in the name of a broker, dealer, commercial bank, trust company or other nominee or custodian (each, a "Nominee") is urged to contact such Nominee promptly if such beneficial owner wishes to participate.  Only Nominees that are participants in DTC's ATOP system can effectuate a book-entry delivery of the Senior Secured Notes on a Holder's behalf.  Beneficial holders of the Senior Secured Notes must allow sufficient time for its Nominee to effectuate the book-entry delivery of its Senior Secured Notes via ATOP on or before the Distribution Election Deadline.

At the Holder's instruction, the tendering Nominee participant in DTC's ATOP system must make a book entry delivery of the Senior Secured Notes by causing DTC to transfer such Senior Secured Notes into the appropriate contra-CUSIP[2] in accordance with ATOP procedures for transfers on or before the Distribution Election Deadline.  Once DTC receives the Nominee's instruction to initiate a book entry delivery of a Holder's Senior Secured Notes, DTC will verify such instruction, execute a book-entry transfer of the tendered Senior Secured Notes into the appropriate contra-CUSIP and then send to the Disbursing Agent confirmation of such book-entry transfer, including an agent's message confirming that DTC has received an express acknowledgment from such holder that such holder has received and agrees to be bound by the Letter of Transmittal and that the company may enforce the Letter of Transmittal against such holder (a "Book-Entry Confirmation").

ALL QUESTIONS AS TO THE VALIDITY, FORM, ELIGIBILITY (INCLUDING TIME OF RECEIPT), AND ACCEPTANCE OF LETTERS OF TRANSMITTAL AND TENDERED SENIOR SECURED NOTES WILL BE RESOLVED BY THE REORGANIZED DEBTORS, WHOSE DETERMINATION WILL BE FINAL AND BINDING, SUBJECT ONLY TO REVIEW BY THE BANKRUPTCY COURT UPON APPLICATION WITH DUE NOTICE TO ANY AFFECTED PARTIES IN INTEREST. THE DEBTOR RESERVES THE RIGHT TO REJECT ANY AND ALL LETTERS OF TRANSMITTAL AND TENDERED SENIOR SECURED NOTES NOT IN PROPER FORM, OR LETTERS OF TRANSMITTAL AND TENDERED SENIOR SECURED NOTES, THE DEBTOR'S ACCEPTANCE OF WHICH WOULD, IN THE OPINION OF THE DEBTOR OR ITS COUNSEL, BE UNLAWFUL.

6.6     **Letter of Transmittal**

To the extent a Holder is required to deliver a Letter of Transmittal to the Disbursing Agent, signatures on such Letter of Transmittal must be guaranteed by an Eligible Institution.  If Senior Secured Notes are registered in the name of a person other than the person signing the Letter of Transmittal, in order to be validly tendered, the Senior Secured Notes must be endorsed or accompanied by a properly completed power of authority, with signature guaranteed by an Eligible Institution.

6.7     **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

(a)      Delivery of Distributions

Except as otherwise provided in the Plan (including in Section 6.4 above), distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Reorganized Debtors or the Disbursing Agent, as appropriate: (a) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is filed or if the Debtors have not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the applicable Disbursing Agent, as appropriate, after the date of any related Proof of Claim; or (c) on any counsel that has appeared in the Chapter 11

---

[1]      In the event DTC is unwilling or unable to utilize the ATOP system to surrender the Senior Secured Notes, a Nominee will be required to withdraw a Holder's Senior Secured Notes from DTC via Deposit/Withdrawal at Custodian ("DWAC") procedures.

[2]      A contra-CUSIP is the CUSIP used to segregate a Holder's position for a voluntary distribution event at the instruction of the Holder.

Cases on the Holder's behalf.  The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date; provided, however, that distributions on account of the Senior Secured Notes Claims shall be made in accordance with Section 6.4 above.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Reorganized Debtors, and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

(b)    Minimum; De Minimis Distributions.

Notwithstanding anything to the contrary contained in the Plan, the Disbursing Agent shall not be required to distribute Cash or other property to the Holder of any Allowed Claim or Allowed Interest if the amount of Cash or other property to be distributed on account of such Allowed Claim or Allowed Interest is less than $50.  Any Holder of an Allowed Claim or Allowed Interest on account of which the amount of Cash or other property to be distributed is less than such amount shall have such Claim or Interest, as applicable, discharged and shall be forever barred from asserting such Claim or Interest against the Debtors, the Reorganized Debtors, or their respective property. Any Cash or other property not distributed pursuant to this provision shall be the property of the Reorganized Debtors.

(c)    Compliance Matters

In connection with the Plan, to the extent applicable, the Reorganized Debtors or the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors or the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.  All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Notwithstanding any other provision of this Plan to the contrary, (a) each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtors for the payment and satisfaction of such tax obligations.

(d)    Section 4(a)(2) and Regulation S Exemptions

Section 4(a)(2) of the Securities Act provides that the registration requirements of the Securities Act will not apply to "transactions by an issuer not involving any public offering."  15 U.S.C. § 77d(a)(2).  In addition, 230 CFR 901 provides that for the purposes of the registration requirements of the Securities Act (15 U.S.C. § 77(e)), "the terms offer, offer to sell, sell, sale, and offer to buy shall be deemed to include offers and sales that occur within the United States and shall be deemed not to include offers and sales that occur outside the United States."

New Notes are being issued only to Qualified Holders that certify that they are:

(1)    "Qualified Institutional Buyers" as such term is defined in 230 CFR 144A(a);

(2)    "Accredited Investors" as defined in Rule 501(a) under the Securities Act; or

(3)    Persons other than a "U.S. Person", as such term is defined in Rule 901(k) under the Securities Act, who are not located in the United States.

Consequently, the Debtors believe that the solicitation of votes from Qualified Holders to accept or reject the Plan is not a public offering (and is therefore exempt from the registration requirements of Section 5 of the Securities Act pursuant to Section 4(a)(2) of the Securities Act) or is an offering of securities outside the United States (and therefore is not subject to the registration requirements of Section 5 as set forth in Regulation S, 230 CFR 900 et seq).

The Debtors believe that the solicitation of votes from Non-Qualified Holders constitutes a cash tender offer for the Senior Secured Notes that complies with Regulation 14E under the Securities Exchange Act of 1934, 240 CFR 14e-1 et seq.

(e)    Cash Payments

Except as otherwise set forth in this <u>Section 6.7(e)</u>, distributions of Cash under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor (or Debtors) in U.S. dollars.  At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.  Cash payments to creditors outside of the United States of America may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(f)    Undeliverable and Unclaimed Distributions

(1)    *Undeliverable Distributions.*  If any distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtors or the Disbursing Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Reorganized Debtors or the Disbursing Agent are notified in writing of such Holder's then-current address or other necessary information for delivery.  Subject to the succeeding sentence, the Reorganized Debtors or their duly appointed disbursing agent shall retain undeliverable distributions until such time as a distribution becomes deliverable.  Each Holder of an Allowed Claim whose distribution remains (i) undeliverable for one hundred and eighty (180) days after the distribution is returned as undeliverable or (ii) otherwise has not been deposited, endorsed or negotiated within one hundred and eighty (180) days of the date of issuance shall have no claim to or interest in such distribution and shall be forever barred from receiving any distribution under the Plan.  Nothing contained in this Plan shall require the Debtors, the Reorganized Debtors or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

(2)    *Reversion.*  Any distribution under the Plan that is an Unclaimed Distribution for a period of one hundred and eighty (180) days after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the applicable Reorganized Debtor.  Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

6.8    <u>**Claims Paid or Payable by Third Parties**</u>

(a)    Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall repay, return or deliver any distribution held by or transferred to the Holder to the applicable Reorganized

Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

        (b)        Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

        (c)        Applicability of Insurance Policies

Except as otherwise expressly provided herein, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

6.9    **Setoffs**

Except as otherwise expressly provided herein, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise. For the avoidance of doubt, no Claim in Classes 1A to 4A shall be subject to setoff.

6.10   **Allocation Between Principal and Accrued Interest**

Except as otherwise provided in the Plan and to the extent permitted by applicable law, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan for income tax purposes as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest accrued through and including the Effective Date.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

7.1    **Disputed Claims**

Except as otherwise provided herein, if a party files a Proof of Claim and the Debtors or Reorganized Debtors, as applicable, do not determine, which determination shall be subject to the consent of the Requisite Consenting Senior Secured Noteholders, which consent shall not be unreasonably withheld, and without the need for notice to or action, order or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is

Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this ARTICLE VII.  Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be expunged without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.  On and after the Effective Date, the Reorganized Debtors may settle any Claims for which a Proof of Claim has been filed or for which a Proof of Claim has not been filed, without further notice to or approval of the Bankruptcy Court, the Claims and Solicitation Agent, or any other party.

7.2    **Resolution of Disputed Claims**

Except insofar as a Claim is Allowed under the Plan, the Debtors or the Reorganized Debtors, as applicable, shall be entitled to object to the Claim.  Any objections to Claims shall be served and filed on or before the 120th day after the Effective Date or by such later date as ordered by the Bankruptcy Court.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder thereof if service is effected in any of the following manners:  (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; or (b) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Cases.  The Debtors and the Reorganized Debtors shall be authorized to, and shall resolve all Disputed Claims or Interests by withdrawing or settling such objections thereto, with the consent of the Requisite Consenting Senior Secured Noteholders, which consent shall not be unreasonably withheld, or by litigating to Final Order in the Bankruptcy Court the validity, nature and/or amount thereof.  All Claims not objected to by the end of such 120-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to Section 4.14.

7.3    **Estimation of Claims**

The Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated in accordance with section 502(c) of the Bankruptcy Code for any reason, regardless of whether any Entity previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, the estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

7.4    **No Interest**

Unless otherwise expressly provided in the Plan or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

7.5    **No Distributions Pending Allowance**

Notwithstanding any other provision of this Plan to the contrary, no payments or distributions of any kind or nature shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order and the Disputed Claim has become an Allowed Claim.  Distributions on account of Disputed Claims that become Allowed Claims shall be made pursuant to Section 6.2.

7.6    **Disallowance of Claims and Interests**

All Claims of any Entity from which property is sought by the Debtors under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE VIII

## EFFECT OF CONFIRMATION OF THE PLAN

8.1    **Compromise and Settlement of Claims, Interests, and Controversies**

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

8.2    **Discharge of Claims and Termination of Interests**

**Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.**

8.3    **Releases by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or the Estates, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any**

Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Finance Agreements (including the Senior Secured Notes, the Senior Secured Notes Indenture and the Collateral Trust Agreement), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, solicitation, or preparation of the RPSA, the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this <u>Section 8.3</u> shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this <u>Section 8.3</u> shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes Indenture and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this <u>Section 8.3</u>, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this <u>Section 8.3</u>; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors asserting any Claim or Cause of Action released by this <u>Section 8.3</u>.

8.4     <u>Releases by Releasing Parties</u>

As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Reorganized Debtors, the Estates, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Finance Agreements (including the Senior Secured Notes, the Senior Secured Notes Indenture and the Collateral Trust Agreement), the Sponsor Support Agreement, the Shareholder Pledge Agreements (solely to the extent that such Shareholder Pledge Agreements secure the Senior Secured Notes), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, solicitation, or preparation of the RPSA, the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; <u>provided</u>, <u>however</u>, that the foregoing provisions of this <u>Section 8.4</u> shall have no effect on the liability of any of the Released Parties for gross negligence, willful

misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; **provided** **further** that nothing in this **Section 8.4** shall release any post-Effective Date obligations (except Cure Claims that have not been timely filed) of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this **Section 8.4**, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtors, the Reorganized Debtors, the Estates and the Released Parties; (b) a good faith settlement and compromise of the Claims released by this **Section 8.4**; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity granting a release under this **Section 8.4** from asserting any Claim or Cause of Action released by this **Section 8.4**.

8.5    **Exculpation**

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; **provided**, **however**, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; **provided**, **further**, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan.  The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

8.6    **Injunction**

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to **Section 8.3** or **Section 8.4**, discharged pursuant to **Section 8.2**, or are subject to exculpation pursuant to **Section 8.5** are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

8.7    **Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the

Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

8.8    **Indemnification**

On and from the Effective Date, and except as prohibited by applicable law, the Reorganized Debtors shall assume or reinstate, as applicable, all indemnification obligations in place as of the Effective Date (whether in by-laws, certificates of incorporation, board resolutions, contracts, or otherwise) for the current and former directors, members, officers, managers, employees, attorneys, other professionals and agents of the Debtors; provided, however, such indemnification obligations shall not apply with respect to any act or omission constituting gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction, except to the extent of available insurance.

8.9    **Recoupment**

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

8.10    **Release of Liens**

Except (a) with respect to the Liens securing Other Secured Claims or Secured Tax Claims (depending on the treatment of such Claims), (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, or (c) with respect to mortgages, deeds of trust, Liens, pledges, and other security interests related to the Senior Secured Notes if and to the extent that the governing documents of such security interests purport that such security documents will secure obligations incurred as a substitution, replacement, refunding or refinancing of the Senior Secured Notes (including the documents or security interests provided in clauses (i) (a)-(f) of the definition of Collateral Document, the "Refinancing Documents"), on the Effective Date and subject to the registration of the Liens created pursuant to the Collateral Documents with the corresponding Chilean registries, as applicable, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall vest and revert to the applicable Reorganized Debtor and its successors and assigns. In addition, other than with respect to Refinancing Documents, the Collateral Trustees shall execute and deliver all documents to evidence the release of mortgages, deeds of trust, Liens, pledges, and other security interests related to the Senior Secured Notes and shall authorize the Reorganized Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

8.11    **Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent or (b) the relevant Holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE IX

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

9.1    **Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 9.2 of the Plan:

(a)    the Confirmation Order shall have been entered and become a Final Order, and such Final Order shall not have been stayed, modified, or vacated on appeal;

(b)    all respective conditions precedent to the transactions contemplated under the RPSA shall have been waived or satisfied in accordance with the terms thereof;

(c)    the principal amount of Senior Secured Notes tendered by Non-Qualified Holders prior to the Distribution Election Deadline is less than $1,800,000;

(d)    all fees and expenses invoiced at least five (5) Business Days prior to such date by the Ad Hoc Group Advisors shall have been indefeasibly paid in full in Cash in in accordance with the terms of the applicable Ad Hoc Group Advisor Engagement Agreement;

(e)    Class F is vacant and eliminated under Section 12.4;

(f)    the Non-Compete Agreements shall have become effective;

(g)    the RPSA has not been terminated under Section 5 thereof and there is no pending uncured breach or default that, with the passage of time or the giving of notice (or both), could result in such termination or would provide any party or parties with the right to terminate under Section 5 thereof; and

(h)    this Plan and all documents and agreements necessary to implement the Plan, including the New Notes Indenture, the Collateral Documents, the New Corporate Governance Documents and any other agreement or document related to the foregoing or entered into in connection therewith (including documents effectuating affiliate guaranties or asset pledges), shall have: (i) all conditions precedent to such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements; (ii) been tendered for delivery to the required parties and, to the extent required, filed with and approved by any applicable Governmental Units in accordance with applicable laws; (iii) been effected or executed; and (iv) been in form and substance satisfactory to the Requisite Consenting Senior Secured Noteholders.

9.2    **Waiver of Conditions Precedent**

The Debtors may, subject to the terms of the RPSA and with the prior written consent of the Requisite Consenting Senior Secured Noteholders, amend, modify, supplement or waive any of the conditions to the Effective Date set forth in Section 9.1 at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan.

9.3    **Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE X

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

10.1    **Modification of Plan**

Effective as of the date hereof: (a) the Debtors, subject to the conditions and limitations set forth in the herein and in the RPSA and with the prior written consent of the Requisite Consenting Senior Secured Noteholders, in accordance with the Bankruptcy Code and the Bankruptcy Rules, may amend or modify the Plan before the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, subject to the limitations set forth herein and the RPSA.

10.2    **Revocation or Withdrawal of Plan**

Subject to the conditions and limitations set forth in the RPSA, the Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any allowance of a Claim or any other settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    **Jurisdiction**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under and/or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by applicable law, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors' amendment, modification, or supplement, after the Effective Date, pursuant to ARTICLE V, of the list of Executory Contracts and Unexpired Leases to be rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan or the Confirmation Order, including contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement or the Disclosure Statement, including, for the avoidance of doubt, the New Notes Indenture, and any other agreement or document related thereto or entered into in connection therewith;

7.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Section 6.8(a); (b) with respect to the releases, injunctions, and other provisions contained in ARTICLE VIII, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan or the Confirmation Order, or any Entity's rights arising from or obligations incurred in connection with the Plan or the Confirmation Order, including those arising under agreements, documents, or instruments executed in connection with the Plan; (d) related to section 1141 of the Bankruptcy Code; or (e) with respect to any Claims arising under or in connection with the Senior Secured Notes asserted by any current or former Holder of Senior Secured Notes against the Reorganized Debtors;

11.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, or the Confirmation Order;

14.     hear and determine matters concerning U.S. state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

15.     enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

18.     enforce all orders previously entered by the Bankruptcy Court; and

19.      hear any other matter not inconsistent with the Bankruptcy Code.

**11.2**    **Certain Documents; Governing Law**

Notwithstanding anything in this Article XI to the contrary, after the Effective Date, any disputes arising under the New Notes Indenture or the Collateral Documents will be governed by the jurisdictional and other provisions therein.

**ARTICLE XII**

**MISCELLANEOUS PROVISIONS**

**12.1**    **Additional Documents**

On or before the Effective Date, the Debtors, may file with the Bankruptcy Court such agreements and other documents, in form and substance reasonably acceptable to the Requisite Consenting Senior Noteholders, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan, subject to the consent rights afforded the Requisite Consenting Senior Secured Noteholders under this Plan.

**12.2**    **Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

**12.3**    **Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**12.4**    **Elimination of Vacant Classes**

Any Class of Claims or Interests that (a) does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing or (b) is entitled to vote on the Plan but with respect to which no Ballots are cast or no Ballots are deemed to be cast, shall be deemed eliminated from the Plan for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**12.5**    **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**12.6**    **Service of Documents**

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| | |
|---|---|
| **Reorganized Debtors** | **Inversiones Alsacia S.A.**<br>Avenida Santa Clara 555<br>Huechuraba, Santiago, Chile 8580000<br>Attn:    Jose Ferrer Fernandez<br><br>With a copy to: Counsel to the Debtors |
| **Counsel to Debtors** | **Cleary Gottlieb Steen & Hamilton LLP**<br>One Liberty Plaza<br>New York, New York 10006<br>Attn:    Lisa M. Schweitzer, Esq.<br>           Richard J. Cooper, Esq. |
| **Counsel to the Ad Hoc Group** | **Akin Gump Strauss Hauer & Feld LLP**<br>One Bryant Park<br>Bank of America Tower<br>New York, New York 10036<br>Attn:    Daniel H. Golden, Esq. |
| **The U.S. Collateral Trustee and the Trustee** | **The Bank of New York Mellon**<br>101 Barclay Street – 8 West<br>New York, New York 10286<br>Attn:    David Kerr |
| **Counsel to the U.S. Collateral Trustee and the Trustee** | **Emmet, Marvin & Martin, LLP**<br>120 Broadway 32nd Floor<br>New York, New York 10271<br>Attn:    Thomas A. Pitta, Esq. |
| **The Chilean Collateral Trustee** | **Banco Santander Chile**<br>Bandera 140, piso 4<br>Santiago de Chile<br>Attn:    Edward García |

## 12.7    Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## 12.8    Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## 12.9    Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such

exhibits and documents from the Bankruptcy Court's website at www.nysb.uscourts.gov.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

12.10    **<u>Non-Severability</u>**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Reorganized Debtors; and (c) nonseverable and mutually dependent.

*[The remainder of this page is intentionally left blank.]*

Dated:  October 16, 2014

Respectfully Submitted,

**INVERSIONES ALSACIA S.A.**

_____
Name:    Jose Ferrer Fernandez
Title:    Chief Executive Officer

**EXPRESS DE SANTIAGO UNO S.A.**

_____
Name:    Jose Ferrer Fernandez
Title:    Chief Executive Officer

**INVERSIONES ECO UNO S.A.**

_____
Name:    Jose Ferrer Fernandez
Title:    Proxy

**PANAMERICAN INVESTMENTS LTD.**

_____
Name:    Jose Ferrer Fernandez
Title:    Proxy

# EXHIBIT A

## Allowance of Senior Secured Notes Claims[1]

The Senior Secured Notes Claims shall be Allowed in an amount equal to:

A.  the outstanding principal amount under the Senior Secured Notes of U.S. $347,300,000;

B.  the amount of unpaid interest accrued under the Senior Secured Notes up to, and including, the Effective Date, at the applicable non-default contractual rate under the Senior Secured Notes Indenture, in an aggregate amount of $22,150,022.22, as of the Effective Date (as increased to the extent that the Effective Date occurs after December 5, 2014 and decreased to the extent that the Effective Date occurs before December 5, 2014, in each case, on a per diem basis);  and

C.  all fees and other amounts due to the Senior Secured Noteholders (not including any amounts owing to the Trustee or the Collateral Trustees, which shall be afforded the treatment set forth in Section 2.4 of the Plan), accounted for under the Senior Secured Notes and the Senior Secured Notes Indenture, if any.

---

[1]  Unless otherwise noted, capitalized terms not defined herein have the meanings ascribed to them in the *Debtors' Joint Prepackaged Chapter 11 Plan* to which this document is attached as an exhibit.