CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Lisa M. Schweitzer

*Counsel for the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X
                                                         :
*In re*                                                  :    Chapter 11
                                                         :
Inversiones Alsacia S.A., *et al.*,[1]                   :    Case No. 14-12896 (MG)
                                                         :
                              Debtors.                   :    Jointly Administered
                                                         :
------------------------------------------------------- X

**NOTICE OF FILING OF FIRST SUPPLEMENT TO THE PLAN**
**SUPPLEMENT FOR THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

PLEASE TAKE NOTICE that in support of confirmation of the *Debtors' Joint*

*Prepackaged Chapter 11 Plan* [D.I. 16] (as may be amended, supplemented, or modified from

time to time, the "Plan"), on November 14, 2014, the above-captioned debtors and debtors-in-

possession (collectively, the "Debtors"), filed the *Plan Supplement for the Debtors' Joint*

*Prepackaged Chapter 11 Plan* [D.I. 78] (as may be amended, supplemented, or modified, the

"Plan Supplement") with the United States Bankruptcy Court for the Southern District of New

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtor's Chilean and/or Bermudan tax identification number, as applicable, are:  Inversiones Alsacia S.A. [400-3]; Express de Santiago Uno S.A. [390-2]; Inversiones Eco Uno S.A. [710-4]; and Panamerican Investments Ltd. [3471].  The location of the corporate headquarters and the service address for Inversiones Alsacia S.A. and Panamerican Investments Ltd. is:  Avenida Santa Clara 555, Huechuraba, Santiago, Chile. The location of the corporate headquarters and the service address for Express de Santiago Uno S.A. and Inversiones Eco Uno S.A. is:  Camino El Roble 200, Pudahuel, Santiago, Chile.

York (the "<u>Bankruptcy Court</u>").  Capitalized terms used but not defined herein have the meanings set forth in the Plan.

PLEASE TAKE FURTHER NOTICE that in further support of confirmation of the Plan, on November 20, 2014, the Debtors filed the *First Supplement to the Plan Supplement for the Debtors' Joint Prepackaged Chapter 11 Plan* with the Bankruptcy Court, a copy of which is attached hereto and is comprised of the following documents, each of which may be altered, modified or supplemented as set forth below:

| | |
|---|---|
| <u>Exhibit H</u> | Form of New Corporate Governance Documents for Alsacia, Express and Eco Uno |
| <u>Exhibit I</u> | Form of New Corporate Governance Documents for Alsacia, Express and Eco Uno (Translated) |
| <u>Exhibit J</u> | Form of New Corporate Governance Documents for Panamerican |
| <u>Exhibit K</u> | Directors and Officers of the Reorganized Debtors |
| <u>Exhibit L</u> | Chilean Debt Acknowledgment Deed |
| <u>Exhibit M</u> | Additional Collateral Documents |

PLEASE TAKE FURTHER NOTICE that the Debtors expressly reserve the right, subject to the terms and conditions set forth in the Plan and the RPSA, to alter, amend, modify, or supplement any document in the Plan Supplement and to file additional documents to be included in the Plan Supplement.  Certain of the documents in the Plan Supplement remain subject to ongoing negotiation between the Debtors and other parties to those documents, and the Debtors and all such parties reserve their rights with regard to those documents.  To the extent any document in the Plan Supplement is altered, amended, modified, or supplemented in any material respect, in accordance with the terms of the Plan and the RPSA, prior to the

Confirmation Hearing, the Debtors will file a blackline of such document with the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that the Confirmation Hearing will be held before the Honorable Martin Glenn, United States Bankruptcy Judge, **on December 4, 2014 at 11:00 a.m. (prevailing Eastern Time)**, in Court Room 501 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004.  Please be advised that the Confirmation Hearing may be continued from time to time by the Bankruptcy Court without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

PLEASE TAKE FURTHER NOTICE that electronic copies of the Plan and the Plan Supplement may be obtained for free from the Debtors' claims and noticing agent, Prime Clerk, LLC, at http://cases.primeclerk.com/alsacia or for a fee via PACER at http://www.nysb.uscourts.gov/.

Dated:  November 20, 2014       CLEARY GOTTLIEB STEEN & HAMILTON LLP
      New York, New York

      */s/ Lisa M. Schweitzer*
      Lisa M. Schweitzer
      One Liberty Plaza
      New York, New York 10006
      Telephone:  (212) 225-2000
      Facsimile:  (212) 225-3999

      *Counsel for the Debtors*
      *and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- X
                                                            :
*In re*                                                     :    Chapter 11
                                                            :
Inversiones Alsacia S.A., *et al.*,[1]                      :    Case No. 14-12896 (MG)
                                                            :
                          Debtors.                          :    Jointly Administered
                                                            :
----------------------------------------------------------- X

**FIRST SUPPLEMENT TO THE PLAN SUPPLEMENT FOR**
**THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

**TABLE OF CONTENTS**[2]

| Exhibit | Description |
|---------|-------------|
| H | Form of New Corporate Governance Documents for Alsacia, Express and Eco Uno |
| I | Form of New Corporate Governance Documents for Alsacia, Express and Eco Uno (Translated) |
| J | Form of New Corporate Governance Documents for Panamerican |
| K | Directors and Officers of the Reorganized Debtors |
| L | Chilean Debt Acknowledgment Deed |
| M | Additional Collateral Documents |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtor's Chilean and/or Bermudan tax identification number, as applicable, are:  Inversiones Alsacia S.A. [400-3]; Express de Santiago Uno S.A. [390-2]; Inversiones Eco Uno S.A. [710-4]; and Panamerican Investments Ltd. [3471].  The location of the corporate headquarters and the service address for Inversiones Alsacia S.A. and Panamerican Investments Ltd. is:  Avenida Santa Clara 555, Huechuraba, Santiago, Chile. The location of the corporate headquarters and the service address for Express de Santiago Uno S.A. and Inversiones Eco Uno S.A. is:  Camino El Roble 200, Pudahuel, Santiago, Chile.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Debtors' Joint Prepackaged Chapter 11 Plan* [D.I. 16] (as may be amended, supplemented, or modified from time to time, the "Plan").

## **<u>EXHIBIT H</u>**

**FORM OF NEW CORPORATE GOVERNANCE
DOCUMENTS FOR ALSACIA, EXPRESS AND ECO UNO**

**LISTA DE ASISTENCIA**

**JUNTA EXTRAORDINARIA DE ACCIONISTAS**



Celebrada en Santiago, República de Chile, el [⁂] de [⁂] del año 2014.

**1.-** [⁂], por [⁂] acciones.                                    _____

                                                                 _____

**2.-** [⁂], por [⁂] acciones.                                    _____

                                                                 _____

**TOTAL ACCIONES:**            [⁂] **acciones**

## ACTA

## JUNTA EXTRAORDINARIA DE ACCIONISTAS
### [Razón Social]

En Santiago de Chile, a [*] de [*] de 2014, a las 11.00 horas, en [domicilio social], se celebra una junta extraordinaria de accionistas (la **"Junta"**) de [insertar razón social] (la **"Sociedad"**). Presidió la Junta Extraordinaria don [*] y actuó como secretario don [*].

En cumplimiento con lo dispuesto en el artículo 57 inciso segundo de la Ley N° 18.046, se encuentra presente el señor Notario don [*], titular de la [*]° Notaria de Santiago quien certifica la celebración de la presente Junta y el cumplimiento de las formalidades establecidas en la Ley N° 18.046 sobre Sociedades Anónimas y su Reglamento (la "**LSA**" y el "**Reglamento**", respectivamente); y que la presente acta es expresión fiel de lo ocurrido y acordado en la reunión. .

## I.    ASISTENCIA Y PODERES

El Presidente informa que el día y hora antes indicado, se encuentran presentes los accionistas que representan las acciones que se señalan según consta en el Registro de Accionistas, quienes firman la correspondiente hoja de asistencia, documento que se acuerda archivar con el legajo de papeles de la Sociedad y según a continuación se indica:

1.1    [*], por [*] acciones.
1.2    [*], por [*] acciones.

En virtud de lo anteriormente expuesto, se encuentran presentes y debidamente representados accionistas que reúnen [*] acciones, las que representan el 100% de las acciones emitidas con derecho a voto de la Sociedad, y que se encuentran íntegramente suscritas, según consta en el Registro de Accionistas de la Sociedad.

El Presidente deja constancia que los poderes otorgados por los accionistas a los apoderados asistentes han sido revisados y cumplen con las disposiciones legales y reglamentarias vigentes. Los poderes son aprobados sin objeción por la unanimidad de la Junta, calificándolos de suficientes por encontrarse otorgados y extendidos en conformidad a la LSA.

## II.    SISTEMA DE VOTACIÓN

En conformidad a lo dispuesto en el artículo 62 de la Ley, la Junta acordó por unanimidad, emplear el sistema de votación por aclamación, por ser el más adecuado a la realidad de la Sociedad.

## III.    FORMALIDADES PREVIAS

**1)**    La Junta fue autoconvocada conforme a lo establecido en el artículo 60 de la Ley ya que la asistencia del 100% de los accionistas, personalmente o representados, estaba asegurada, circunstancia que en los hechos se ha verificado;

**2)**    Participan en la Junta los titulares de acciones debidamente registradas a su nombre al

momento de iniciarse ésta;

**3)**      Que los accionistas concurrentes han firmado la Hoja de Asistencia.

**IV.      CONSTITUCIÓN DE LA JUNTA Y APERTURA DE LA SESIÓN**

        El Presidente manifiesta que se encuentran debidamente representadas en la Junta [•] acciones, que representan el 100% de las acciones emitidas por la Sociedad, lo que constituye quórum suficiente para la válida celebración de la misma y para la adopción de acuerdos. En consecuencia, el Presidente declara legalmente constituida e instalada la Junta.

        Asimismo, como primera medida y a proposición del Presidente, se resuelve que todos los asistentes a la presente asamblea suscriban el acta de la misma, la que se entenderá aprobada para todos los efectos legales y sociales pertinentes, por la sola firma de aquéllos, sin trámite posterior alguno, pudiendo llevarse a efecto de inmediato los acuerdos y resoluciones que en ésta se adopten.

**V.      OBJETO DE LA JUNTA**

Modificación del artículo [*] del pacto social

El Presidente informa que la presente Junta tiene por objeto someter a la consideración de los accionistas presentes la modificación del pacto social, con el objeto de incorporar una mención a los estatutos de la Sociedad, en el sentido de indicar que no será posible la existencia de acciones sin derecho a voto en la medida que ello se encuentre prohibido por la sección 1123 (a) (6) del Código de Quiebras de Estados Unidos.

De esta manera, expresa el Presidente, al artículo [*], se propone agregar el siguiente inciso final:

"*La Sociedad no tendrá series de acciones sin derecho a voto, en la medida que ello esté prohibido por la sección 1123 (a) (6) de Código de Quiebras de los Estados Unidos de América, y mientras ello aplique a la Sociedad.*"

Acuerdo: Luego de un breve debate, la Junta acuerda por la unanimidad de los accionistas presentes, modificar  el pacto social en los términos antes indicados.

El Presidente señala y la Junta aprueba, que no existen otras materias de interés social y/o de competencia de la Junta que tratar en la presente asamblea.

**VI.      CUMPLIMIENTO DE ACUERDOS.**

        La Junta determina que los acuerdos tomados en la presente Junta podrán ser llevados a efecto de inmediato, bastando para ello que el acta de la misma se encuentre firmada por el presidente y el secretario de actas.

**VII.      REDUCCION A ESCRITURA PÚBLICA y LEGALIZACION**

        Por último, se acuerda facultar a don Jorge García Garay, doña María de la Luz Navarro Ortúzar, don Rodrigo Saffirio López y don Francisco Palma Ulloa, para que, actuando individualmente uno cualquiera de ellos, en representación de todos los accionistas asistentes a la

presente Junta, reduzcan a escritura pública la presente acta, en todo o parte, sirviéndoles la misma de suficiente personería.

Por último se acordó facultar al portador de copia autorizada de la escritura pública a que sea reducida la presente acta, o de un extracto de ella, para requerir las inscripciones, subinscripciones, anotaciones y publicaciones en el Diario Oficial que sean procedentes conforme a derecho.

No habiendo otro asunto que tratar, se pone término a la presente Junta a las [*] horas.

**PRESIDENTE**                                     **SECRETARIO**

**pp. [•]**

**pp. [•]**

## <u>EXHIBIT I</u>

**FORM OF NEW CORPORATE GOVERNANCE
DOCUMENTS FOR ALSACIA, EXPRESS AND ECO UNO (TRANSLATED)**

**ATTENDANCE LIST**
**SHAREHOLDERS' EXTRAORDINARY MEETING**
[*]

Held in Santiago, República de Chile, on [*] [*], 2014.


**1.-** [*], per [*] shares.                              _____

                                                         _____




**2.-** [*], per [*] shares.                              _____

                                                         _____



**TOTAL SHARES:**              [*] **shares**

<u>MINUTE</u>

**SHAREHOLDERS' EXTRAORDINARY MEETING**
**[CORPORATE NAME]**

In Santiago, Chile, on [*] [*], 2014, at 11.00am, at [corporate domicile], a shareholders' extraordinary meeting of [corporate name] (the **"Company"**) is held (the **"Meeting"**). Mr. [*] acted as Chaiman of the Meeting and Mr. [*] acted as Secretary of the Meeting.

In compliance with the provisions of article 57 second item of the Law N° 18,046, are present Mr. Notary [*], licensee of [*]° Notary Registry of Santiago who certifies the execution of the present Meeting in compliance with the formalities set forth by Law N° 18.046 about Corporations and their Regulations (the "**LSA**" and the "**Regulations**", respectively); and that the minute hereby is the accurate description of what occurred and was agreed in the Meeting.

## I.    <u>ATTENDANCE AND POWERS</u>

The Chairman informs that on the date and time above mentioned,  all shareholders representing the shares that integrate the Shareholders Registry are present and they signed the correspondent attendance sheet, and they agree to file this document with the other company's records as indicated below:

1.1     [*], per [*] shares.
1.2     [*], per [*] shares.

By virtue of the aforesaid, the present and dully represented shareholders sum [*] shares, representing 100% of the voting shares issued by the Company, which are paid off according to the Shareholders Registry of the Company.

The Chairman leaves a record that the powers granted by the shareholders to the assignees were revised and are in accordance with the legal and regulatory provisions in place. The powers were approved without any objection and by the unanimity of the shareholders, qualifying them as sufficient by being granted and extended according with the LSA.

## II.    <u>VOTING SYSTEM</u>

In accordance with the provisions of Article 62 of the Law, the Board unanimously agreed to employ the voting by acclamation system, because it is the most appropriate according to the Company's reality.

## III.    <u>PREVIOUS FORMALITIES</u>

**1)**     The Board was self-summoned as provided in Article 60 of the Law, because the attendance of 100% of the shareholders, in person or by proxy, was assured, which in fact has been verified;

**2)**     The  shareholders that participate in the Board are holders of duly registered shares in their name when the meeting started;

**3)**     The attending shareholders have signed the attendance sheet.

IV.    **CONSTITUTION OF THE BOARD AND OPENING OF THE SESSION**

The Chairman said that there are duly represented in the Board [• ] shares, representing 100 % of the shares issued by the Company, which constitutes a sufficient quorum to validly held the meeting and adopt resolutions. Accordingly, the Chairman declared legally constituted and installed the meeting.

Also, as a first step and proposal of the Chairman, it is agreed that all the attendees to the present meeting sign the minute, which shall be considered approved for all relevant legal and social effects, only by the signature of the attendees without any pending formality and the Company may immediately implement the agreements and resolutions adopted herein .

V.    **PURPOSE OF THE MEETING**

Amendment of Article [* ] of the by-laws.

The Chairman informed that the present meeting aims to submit for consideration of the present shareholders the amendment of the by-laws, in order to reflect that it will not be possible to issue shares that do not have voting rights because it is prohibited under section 1123 (a) (6) of the Bankruptcy Code of the United States.

Thus, the Chairman proposed to include the following sentence at the end of Article [*] :
*"The Company will not have series of shares without voting rights, to the extent that it is prohibited by section 1123 (a) (6) of the Bankruptcy Code of the United States of America, as long as it applies to the Company."*

Agreement: After a brief discussion, the Board by the unanimous vote of the present shareholders, agreed to modify the by-laws in the above mentioned terms.

The Chairman indicated and the Board approves there are no other matters of interest and/or competence of the Board to discuss in the meeting.

VI.    **COMPLIANCE OF AGREEMENTS.**

The Board determined that the decisions taken in this meeting may be implemented immediately, being sufficient that the minute of the meeting is signed by the chairman and the secretary.

VII.    **PUBLIC DEED EXECUTION**

Finally, it is resolved to authorize Mr. Jorge Garcia Garay, Ms. Maria de la Luz Navarro Ortúzar, Mr. Rodrigo Saffirio López and Mr. Francisco Palma Ulloa to execute, individually or jointly, in representation of all the present shareholders of the meeting, a public deed of the present minute which includes all or an extract of this minute, having sufficient legal capacity.

Finally it was agreed to authorize the carrier of the authorized copy of the deed that included all or an extract of the present minute, to require the registrations, sub registrations, annotations and publications in the Official Journal  that are applicable according to the law.

There are no other matters to discuss, and the meeting ends at  [*] pm.

3

**CHAIRMAN**                                              **SECRETARY**

**pp. [•]**

**pp. [•]**

## EXHIBIT J

**FORM OF NEW CORPORATE
GOVERNANCE DOCUMENTS FOR PANAMERICAN**

# BYE-LAWS

## of

## Panamerican Investments Ltd.

I HEREBY CERTIFY that the attached Bye-Laws are a true copy of the Bye-Laws of **Panamerican Investments Ltd.** (the "Company") adopted by the Shareholder of the Company on [DATE] 2014 in place of those adopted on **13 March 2012** and those originally adopted on 17 August 2009.

Appleby Services (Bermuda) Ltd.
Secretary



# B Y E - L A W S

## of

## Panamerican Investments Ltd.

## I N D E X

| BYE-LAW | SUBJECT | PAGE |
|---------|---------|------|
| 1 | Definitions and Interpretation | 1 |
| 2 | Registered Office | 2 |
| 3 | Share Rights | 3 |
| 4 | Modification of Rights | 3 |
| 5 | Shares | 4 |
| 6 | Certificates | 4 |
| 7 | Lien | 5 |
| 8 | Calls on Shares | 6 |
| 9 | Forfeiture of Shares | 6 |
| 10 | Register of Shareholders | 7 |
| 11 | Register of Directors and Officers | 8 |
| 12 | Transfer of Shares | 8 |
| 13 | Transmission of Shares | 9 |
| 14 | Increase of Capital | 10 |
| 15 | Alteration of Capital | 10 |
| 16 | Reduction of Capital | 11 |
| 17 | General Meetings and Resolutions in Writing | 11 |
| 18 | Notice of General Meetings | 12 |
| 19 | Proceedings at General Meetings | 13 |
| 20 | Voting | 14 |
| 21 | Proxies and Corporate Representatives | 16 |
| 22 | Appointment and Removal of Directors | 18 |
| 23 | Resignation and Disqualification of Directors | 18 |
| 24 | Alternate Directors | 19 |
| 25 | Directors' Fees and Additional Remuneration and Expenses | 20 |

| 26 | Directors' Interests | 20 |
| 27 | Powers and Duties of the Board | 21 |
| 28 | Delegation of the Board's Powers | 22 |
| 29 | Proceedings of the Board | 22 |
| 30 | Officers | 24 |
| 31 | Minutes | 24 |
| 32 | Secretary and Resident Representative | 25 |
| 33 | The Seal | 25 |
| 34 | Dividends and Other Payments | 26 |
| 35 | Reserves | 27 |
| 36 | Capitalisation of Profits | 28 |
| 37 | Record Dates | 28 |
| 38 | Accounting Records | 28 |
| 39 | Audit | 29 |
| 40 | Service of Notices and Other Documents | 29 |
| 41 | Winding Up | 31 |
| 42 | Indemnity | 31 |
| 43 | Amalgamation | 32 |
| 44 | Continuation | 32 |
| 45 | Alteration of Bye-Laws | 33 |

# B Y E - L A W S

## of

## Panamerican Investments Ltd.

## INTERPRETATION

1    Definitions and Interpretation

    1.1    In these Bye-Laws, unless the context otherwise requires:

        "**Alternate Director**" means an alternate Director appointed to the Board as provided for in these Bye-Laws;

        "**Auditor**" means the person or firm for the time being appointed as auditor of the Company;

        "**Bermuda**" means the Islands of Bermuda;

        "**Board**" means the Directors of the Company appointed or elected pursuant to these Bye-Laws and acting by resolution as provided for in the Act and in these Bye-Laws or the Directors present at a meeting of Directors at which there is a quorum;

        "**Companies Acts**" means every Bermuda statute from time to time in force concerning companies insofar as the same applies to the Company;

        "**Company**" means the company incorporated in Bermuda under the name of **Panamerican Investments Ltd.** on **13 August 2009**;

        "**Director**" means such person or persons appointed or elected to the Board from time to time pursuant to these Bye-Laws and includes an Alternate Director;

        "**Indemnified Person**" means any Director, Officer, Resident Representative, member of a committee duly constituted under these Bye-Laws and any liquidator, manager or trustee for the time being acting in relation to the affairs of the Company, and his heirs, executors and administrators;

        "**Officer**" means a person appointed by the Board pursuant to these Bye-Laws but shall not include the Auditor;

        "**paid up**" means paid up or credited as paid up;

        "**Register**" means the Register of Shareholders of the Company maintained by the Company in Bermuda;

        "**Registered Office**" means the registered office of the Company which shall be at such place in Bermuda as the Board shall from time to time determine;

        "**Resident Representative**" means (if any) the individual or the company appointed to perform the duties of resident representative set out in the Companies Acts and includes any assistant or deputy Resident Representative

appointed by the Board to perform any of the duties of the Resident Representative;

**"Resolution"** means a resolution of the Shareholders passed in a general meeting or, where required, of a separate class or separate classes of shareholders passed in a separate general meeting or in either case adopted by resolution in writing, in accordance with the provisions of these Bye-Laws;

**"Seal"** means the common seal of the Company and includes any authorised duplicate thereof;

**"Secretary"** means the individual or the company appointed by the Board to perform any of the duties of the Secretary and includes a temporary or assistant or deputy Secretary;

**"share"** means share in the capital of the Company and includes a fraction of a share;

**"Shareholder"** means a shareholder or member of the Company provided that for the purposes of Bye-Law 42 it shall also include any holder of notes, debentures or bonds issued by the Company;

**"these Bye-Laws"** means these Bye-Laws in their present form.

1.2    For the purposes of these Bye-Laws, a corporation which is a shareholder shall be deemed to be present in person at a general meeting if, in accordance with the Companies Acts, its authorised representative is present.

1.3    Words importing only the singular number include the plural number and vice versa.

1.4    Words importing only the masculine gender include the feminine and neuter genders respectively.

1.5    Words importing persons include companies, associations, bodies of persons, whether corporate or not.

1.6    A reference to writing shall include typewriting, printing, lithography, photography and electronic record.

1.7    Any words or expressions defined in the Companies Acts in force at the date when these Bye-Laws or any part thereof are adopted shall bear the same meaning in these Bye-Laws or such part (as the case may be).

## REGISTERED OFFICE

2    Registered Office

The Registered Office shall be at such place in Bermuda as the Board shall from time to time appoint.

## SHARES AND SHARE RIGHTS

3   Share Rights

3.1   Subject to any special rights conferred on the holders of any share or class of shares, any share in the Company may be issued with or have attached thereto such preferred, deferred, qualified or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise, as the Company may by Resolution determine or, if there has not been any such determination or so far as the same shall not make specific provision, as the Board may determine.

3.2   Notwithstanding Bye-Law 3.1 above and Bye-Law 15.1.4 below, the Company shall not issue non-voting equity securities to the extent prohibited by Section 1123(a)(6) of the United States Bankruptcy Code, as and to the extent such Section is applicable to the Company.

3.3   Subject to the Companies Acts, any preference shares may, with the sanction of a resolution of the Board, be issued on terms:

3.3.1   that they are to be redeemed on the happening of a specified event or on a given date; and/or,

3.3.2   that they are liable to be redeemed at the option of the Company; and/or,

3.3.3   if authorised by the memorandum of association of the Company, that they are liable to be redeemed at the option of the holder.

The terms and manner of redemption shall be provided for in such resolution of the Board and shall be attached to but shall not form part of these Bye-Laws.

3.4   The Board may, at its discretion and without the sanction of a Resolution, authorise the purchase by the Company of its own shares upon such terms as the Board may in its discretion determine, provided always that such purchase is effected in accordance with the provisions of the Companies Acts.

3.5   The Board may, at its discretion and without the sanction of a Resolution, authorise the acquisition by the Company of its own shares, to be held as treasury shares, upon such terms as the Board may in its discretion determine, provided always that such acquisition is effected in accordance with the provisions of the Companies Acts. The Company shall be entered in the Register as a Shareholder in respect of the shares held by the Company as treasury shares and shall be a Shareholder of the Company but subject always to the provisions of the Companies Acts and for the avoidance of doubt the Company shall not exercise any rights and shall not enjoy or participate in any of the rights attaching to those shares save as expressly provided for in the Companies Acts.

4   Modification of Rights

4.1 Subject to the Companies Acts, all or any of the special rights for the time being attached to any class of shares for the time being issued may from time to time (whether or not the Company is being wound up) be altered or abrogated with the consent in writing of the holders of not less than seventy five percent (75%) of the issued shares of that class or with the sanction of a resolution passed at a separate general meeting of the holders of such shares voting in person or by proxy.  To any such separate general meeting, all the provisions of these Bye-Laws as to general meetings of the Company shall *mutatis mutandis* apply, but so that the necessary quorum shall be one or more persons holding or representing by proxy any of the shares of the relevant class, that every holder of shares of the relevant class shall be entitled on a poll to one vote for every such share held by him and that any holder of shares of the relevant class present in person or by proxy may demand a poll.

4.2 The special rights conferred upon the holders of any shares or class of shares shall not, unless otherwise expressly provided in the rights attaching to or the terms of issue of such shares, be deemed to be altered by the creation or issue of further shares ranking pari passu therewith.

5   Shares

5.1 Subject to the provisions of these Bye-Laws, the unissued shares of the Company (whether forming part of the original capital or any increased capital) shall be at the disposal of the Board, which may offer, allot, grant options over or otherwise dispose of them to such persons, at such times and for such consideration and upon such terms and conditions as the Board may determine.

5.2 Subject to the provisions of these Bye-Laws, any shares of the Company held by the Company as treasury shares shall be at the disposal of the Board, which may hold all or any of the shares, dispose of or transfer all or any of the shares for cash or other consideration, or cancel all or any of the shares.

5.3 The Board may in connection with the issue of any shares exercise all powers of paying commission and brokerage conferred or permitted by law.

5.4 Except as ordered by a court of competent jurisdiction or as required by law, no person shall be recognised by the Company as holding any share upon trust and the Company shall not be bound by or required in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share or in any fractional part of a share or (except only as otherwise provided in these Bye-Laws or by law) any other right in respect of any share except an absolute right to the entirety thereof in the registered holder.

6   Certificates

6.1 The Company shall be under no obligation to complete and deliver a share certificate unless specifically called upon to do so by the person to whom the shares have been issued.  In the case of a share held jointly by several persons, delivery of a certificate to one of several joint holders shall be sufficient delivery to all.

6.2   If a share certificate is defaced, lost or destroyed, it may be replaced without fee but on such terms (if any) as to evidence and indemnity and to payment of the costs and out of pocket expenses of the Company in investigating such evidence and preparing such indemnity as the Board may think fit and, in case of defacement, on delivery of the old certificate to the Company.

6.3   All certificates for share or loan capital or other securities of the Company (other than letters of allotment, scrip certificates and other like documents) shall, except to the extent that the terms and conditions for the time being relating thereto otherwise provide, be issued under the Seal or signed by a Director, the Secretary or any person authorised by the Board for that purpose. The Board may by resolution determine, either generally or in any particular case, that any signatures on any such certificates need not be autographic but may be affixed to such certificates by some mechanical means or may be printed thereon or that such certificates need not be signed by any persons.

## 7   Lien

7.1   The Company shall have a first and paramount lien on every share (not being a fully paid share) for all monies, whether presently payable or not, called or payable, at a date fixed by or in accordance with the terms of issue of such share in respect of such share, and the Company shall also have a first and paramount lien on every share (other than a fully paid share) standing registered in the name of a Shareholder, whether singly or jointly with any other person, for all the debts and liabilities of such Shareholder or his estate to the Company, whether the same shall have been incurred before or after notice to the Company of any interest of any person other than such Shareholder, and whether the time for the payment or discharge of the same shall have actually arrived or not, and notwithstanding that the same are joint debts or liabilities of such Shareholder or his estate and any other person, whether a Shareholder or not. The Company's lien on a share shall extend to all dividends payable thereon. The Board may at any time, either generally or in any particular case, waive any lien that has arisen or declare any share to be wholly or in part exempt from the provisions of this Bye-Law.

7.2   The Company may sell, in such manner as the Board may think fit, any share on which the Company has a lien but no sale shall be made unless some sum in respect of which the lien exists is presently payable nor until the expiration of fourteen (14) days after a notice in writing, stating and demanding payment of the sum presently payable and giving notice of the intention to sell in default of such payment, has been served on the holder for the time being of the share.

7.3   The net proceeds of sale by the Company of any shares on which it has a lien shall be applied in or towards payment or discharge of the debt or liability in respect of which the lien exists so far as the same is presently payable, and any residue shall (subject to a like lien for debts or liabilities not presently payable as existed upon the share prior to the sale) be paid to the person who was the holder of the share immediately before such sale. For giving effect to any such sale, the Board may authorise some person to transfer the share sold to the purchaser thereof. The

purchaser shall be registered as the holder of the share and he shall not be bound to see to the application of the purchase money, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings relating to the sale.

8    Calls on Shares

8.1    The Board may from time to time make calls upon the Shareholders (for the avoidance of doubt excluding the Company in respect of any nil or partly paid shares held by the Company as treasury shares) in respect of any monies unpaid on their shares (whether on account of the par value of the shares or by way of premium) and not by the terms of issue thereof made payable at a date fixed by or in accordance with such terms of issue, and each Shareholder shall (subject to the Company serving upon him at least fourteen (14) days notice specifying the time or times and place of payment) pay to the Company at the time or times and place so specified the amount called on his shares.  A call may be revoked or postponed as the Board may determine.

8.2    A call may be made payable by instalments and shall be deemed to have been made at the time when the resolution of the Board authorising the call was passed.

8.3    The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

8.4    If a sum called in respect of the share shall not be paid before or on the day appointed for payment thereof the person from whom the sum is due shall pay interest on the sum from the day appointed for the payment thereof to the time of actual payment at such rate as the Board may determine, but the Board shall be at liberty to waive payment of such interest wholly or in part.

8.5    Any sum which, by the terms of issue of a share, becomes payable on allotment or at any date fixed by or in accordance with such terms of issue, whether on account of the nominal amount of the share or by way of premium, shall for all the purposes of these Bye-Laws be deemed to be a call duly made, notified and payable on the date on which, by the terms of issue, the same becomes payable and, in case of non-payment, all the relevant provisions of these Bye-Laws as to payment of interest, forfeiture or otherwise shall apply as if such sum had become payable by virtue of a call duly made and notified.

8.6    The Board may on the issue of shares differentiate between the allottees or holders as to the amount of calls to be paid and the times of payment.

9    Forfeiture of Shares

9.1    If a Shareholder fails to pay any call or instalment of a call on the day appointed for payment thereof, the Board may at any time thereafter during such time as any part of such call or instalment remains unpaid serve a notice on him requiring payment of so much of the call or instalment as is unpaid, together with any interest which may have accrued.

9.2    The notice shall name a further day (not being less than fourteen (14) days from the date of the notice) on or before which, and the place where, the payment required by the notice is to be made and shall state that, in the event of non-payment on or before the day and at the place appointed, the shares in respect of which such call is made or instalment is payable will be liable to be forfeited.  The Board may accept the surrender of any share liable to be forfeited hereunder and, in such case, references in these Bye-Laws to forfeiture shall include surrender.

9.3    If the requirements of any such notice as aforesaid are not complied with, any share in respect of which such notice has been given may at any time thereafter, before payment of all calls or instalments and interest due in respect thereof has been made, be forfeited by a resolution of the Board to that effect.  Such forfeiture shall include all dividends declared in respect of the forfeited shares and not actually paid before the forfeiture.

9.4    When any share has been forfeited, notice of the forfeiture shall be served upon the person who was before forfeiture the holder of the share but no forfeiture shall be in any manner invalidated by any omission or neglect to give such notice as aforesaid.

9.5    A forfeited share shall be deemed to be the property of the Company and may be sold, re-offered or otherwise disposed of either to the person who was, before forfeiture, the holder thereof or entitled thereto or to any other person upon such terms and in such manner as the Board shall think fit, and at any time before a sale, re-allotment or disposition the forfeiture may be cancelled on such terms as the Board may think fit.

9.6    A person whose shares have been forfeited shall thereupon cease to be a Shareholder in respect of the forfeited shares but shall, notwithstanding the forfeiture, remain liable to pay to the Company all monies which at the date of forfeiture were presently payable by him to the Company in respect of the shares with interest thereon at such rate as the Board may determine from the date of forfeiture until payment, and the Company may enforce payment without being under any obligation to make any allowance for the value of the shares forfeited.

9.7    An affidavit in writing that the deponent is a Director of the Company or the Secretary and that a share has been duly forfeited on the date stated in the affidavit shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share.  The Company may receive the consideration (if any) given for the share on the sale, re-allotment or disposition thereof and the Board may authorise some person to transfer the share to the person to whom the same is sold, re-allotted or disposed of, and he shall thereupon be registered as the holder of the share and shall not be bound to see to the application of the purchase money (if any) nor shall his title to the share be affected by any irregularity or invalidity in the proceedings relating to the forfeiture, sale, re-allotment or disposal of the share.

## REGISTER OF SHAREHOLDERS

10  Register of Shareholders

The Secretary shall establish and maintain the Register at the Registered Office in the manner prescribed by the Companies Acts. Unless the Board otherwise determines, the Register shall be open to inspection in the manner prescribed by the Companies Acts between 10:00 a.m. and 12:00 noon on every working day. Unless the Board so determines, no Shareholder or intending Shareholder shall be entitled to have entered in the Register any indication of any trust or any equitable, contingent, future or partial interest in any share or any fractional part of a share and if any such entry exists or is permitted by the Board it shall not be deemed to abrogate any of the provisions of Bye-Law 5.4.

## REGISTER OF DIRECTORS AND OFFICERS

11  Register of Directors and Officers

The Secretary shall establish and maintain a register of the Directors and Officers of the Company as required by the Companies Acts. The register of Directors and Officers shall be open to inspection in the manner prescribed by the Companies Acts between 10:00 a.m. and 12:00 noon on every working day.

## TRANSFER OF SHARES

12  Transfer of Shares

12.1  Subject to the Companies Acts and to such of the restrictions contained in these Bye-Laws as may be applicable, any Shareholder may transfer all or any of his shares by an instrument of transfer in the usual common form or in any other form which the Board may approve. No such instrument shall be required on the redemption of a share or on the purchase by the Company of a share.

12.2  The instrument of transfer of a share shall be signed by or on behalf of the transferor and where any share is not fully-paid, the transferee. The transferor shall be deemed to remain the holder of the share until the name of the transferee is entered in the Register in respect thereof. All instruments of transfer when registered may be retained by the Company. The Board may, in its absolute discretion and without assigning any reason therefor, decline to register any transfer of any share which is not a fully-paid share. The Board may also decline to register any transfer unless:

12.2.1  the instrument of transfer is duly stamped (if required by law) and lodged with the Company, accompanied by the certificate for the shares to which it relates, and such other evidence as the Board may reasonably require to show the right of the transferor to make the transfer,

12.2.2  the instrument of transfer is in respect of only one class of share, and

12.2.3  where applicable, the permission of the Bermuda Monetary Authority with respect thereto has been obtained.

12.3 Subject to any directions of the Board from time to time in force, the Secretary may exercise the powers and discretions of the Board under this Bye-Law.

12.4 If the Board declines to register a transfer it shall, within three (3) months after the date on which the instrument of transfer was lodged, send to the transferee notice of such refusal.

12.5 No fee shall be charged by the Company for registering any transfer, probate, letters of administration, certificate of death or marriage, power of attorney, stop notice, order of court or other instrument relating to or affecting the title to any share, or otherwise making an entry in the Register relating to any share.

## TRANSMISSION OF SHARES

13  Transmission of Shares

13.1 In the case of the death of a Shareholder, the survivor or survivors, where the deceased was a joint holder, and the estate representative, where he was sole holder, shall be the only person recognised by the Company as having any title to his shares; but nothing herein contained shall release the estate of a deceased holder (whether the sole or joint) from any liability in respect of any share held by him solely or jointly with other persons.  For the purpose of this Bye-Law, estate representative means the person to whom probate or letters of administration has or have been granted in Bermuda or, failing any such person, such other person as the Board may in its absolute discretion determine to be the person recognised by the Company for the purpose of this Bye-Law.

13.2 Any person becoming entitled to a share in consequence of the death of a Shareholder or otherwise by operation of applicable law may, subject as hereafter provided and upon such evidence being produced as may from time to time be required by the Board as to his entitlement, either be registered himself as the holder of the share or elect to have some person nominated by him registered as the transferee thereof.  If the person so becoming entitled elects to be registered himself, he shall deliver or send to the Company a notice in writing signed by him stating that he so elects.  If he shall elect to have his nominee registered, he shall signify his election by signing an instrument of transfer of such share in favour of his nominee. All the limitations, restrictions and provisions of these Bye-Laws relating to the right to transfer and the registration of transfer of shares shall be applicable to any such notice or instrument of transfer as aforesaid as if the death of the Shareholder or other event giving rise to the transmission had not occurred and the notice or instrument of transfer was an instrument of transfer signed by such Shareholder.

13.3 A person becoming entitled to a share in consequence of the death of a Shareholder or otherwise by operation of applicable law shall (upon such evidence being produced as may from time to time be required by the Board as to his entitlement) be entitled to receive and may give a discharge for any dividends or other monies payable in respect of the share, but he shall not be entitled in respect of the share to receive notices of or to attend or vote at general meetings of the Company or, save

as aforesaid, to exercise in respect of the share any of the rights or privileges of a Shareholder until he shall have become registered as the holder thereof. The Board may at any time give notice requiring such person to elect either to be registered himself or to transfer the share and, if the notice is not complied with within sixty (60) days, the Board may thereafter withhold payment of all dividends and other monies payable in respect of the shares until the requirements of the notice have been complied with.

13.4  Subject to any directions of the Board from time to time in force, the Secretary may exercise the powers and discretions of the Board under this Bye-Law.

## SHARE CAPITAL

14  Increase of Capital

14.1  The Company may from time to time increase its capital by such sum to be divided into shares of such par value as the Company by Resolution shall prescribe.

14.2  The Company may, by the Resolution increasing the capital, direct that the new shares or any of them shall be offered in the first instance either at par or at a premium or (subject to the provisions of the Companies Acts) at a discount to all the holders for the time being of shares of any class or classes in proportion to the number of such shares held by them respectively or make any other provision as to the issue of the new shares.

14.3  The new shares shall be subject to all the provisions of these Bye-Laws with reference to lien, the payment of calls, forfeiture, transfer, transmission and otherwise.

15  Alteration of Capital

15.1  The Company may from time to time by Resolution:

15.1.1  divide its shares into several classes and attach thereto respectively any preferential, deferred, qualified or special rights, privileges or conditions;

15.1.2  consolidate and divide all or any of its share capital into shares of larger par value than its existing shares;

15.1.3  sub-divide its shares or any of them into shares of smaller par value than is fixed by its memorandum, so, however, that in the sub-division the proportion between the amount paid and the amount, if any, unpaid on each reduced share shall be the same as it was in the case of the share from which the reduced share is derived;

15.1.4  make provision for the issue and allotment of shares which do not carry any voting rights;

15.1.5 cancel shares which, at the date of the passing of the Resolution in that behalf, have not been taken or agreed to be taken by any person, and diminish the amount of its share capital by the amount of the shares so cancelled; and

15.1.6 change the currency denomination of its share capital.

15.2 Where any difficulty arises in regard to any division, consolidation, or sub-division under this Bye-Law, the Board may settle the same as it thinks expedient and, in particular, may arrange for the sale of the shares representing fractions and the distribution of the net proceeds of sale in due proportion amongst the Shareholders who would have been entitled to the fractions, and for this purpose the Board may authorise some person to transfer the shares representing fractions to the purchaser thereof, who shall not be bound to see to the application of the purchase money nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings relating to the sale.

15.3 Subject to the Companies Acts and to any confirmation or consent required by law or these Bye-Laws, the Company may by Resolution from time to time convert any preference shares into redeemable preference shares.

16  Reduction of Capital

16.1 Subject to the Companies Acts, its memorandum and any confirmation or consent required by law or these Bye-Laws, the Company may from time to time by Resolution authorise the reduction of its issued share capital or any share premium account in any manner.

16.2 In relation to any such reduction, the Company may by Resolution determine the terms upon which such reduction is to be effected including, in the case of a reduction of part only of a class of shares, those shares to be affected.

## GENERAL MEETINGS AND RESOLUTIONS IN WRITING

17  General Meetings and Resolutions in Writing

17.1 The Board shall convene and the Company shall hold general meetings as Annual General Meetings in accordance with the requirements of the Companies Acts at such times and places as the Board shall appoint.  The Board may, whenever it thinks fit, and shall, when required by the Companies Acts, convene general meetings other than Annual General Meetings which shall be called Special General Meetings.

17.2 Except in the case of the removal of Auditors or Directors, anything which may be done by resolution of the Shareholders in general meeting or by resolution of any class of Shareholders in a separate general meeting may be done by resolution in writing, signed by the Shareholders (or the holders of such class of shares) who at the date of the notice of the resolution in writing represent the majority of votes

that would be required if the resolution had been voted on at a meeting of the Shareholders. Such resolution in writing may be signed by the Shareholder or its proxy, or in the case of a Shareholder that is a corporation (whether or not a company within the meaning of the Companies Acts) by its representative on behalf of such Shareholder, in as many counterparts as may be necessary.

17.3   Notice of any resolution in writing to be made under this Bye-Law shall be given to all the Shareholders who would be entitled to attend a meeting and vote on the resolution. The requirement to give notice of any resolution in writing to be made under this Bye-Law to such Shareholders shall be satisfied by giving to those Shareholders a copy of that resolution in writing in the same manner as that required for a notice of a general meeting of the Company at which the resolution could have been considered, except that the length of the period of notice shall not apply. The date of the notice shall be set out in the copy of the resolution in writing.

17.4   The accidental omission to give notice, in accordance with this Bye-Law, of a resolution in writing to, or the non-receipt of such notice by, any person entitled to receive such notice shall not invalidate the passing of the resolution in writing.

17.5   For the purposes of this Bye-Law, the date of the resolution in writing is the date when the resolution in writing is signed by, or on behalf of, the Shareholder who establishes the majority of votes required for the passing of the resolution in writing and any reference in any enactment to the date of passing of a resolution is, in relation to a resolution in writing made in accordance with this Bye-Law, a reference to such date.

17.6   A resolution in writing made in accordance with this Bye-Law is as valid as if it had been passed by the Company in general meeting or, if applicable, by a meeting of the relevant class of Shareholders of the Company, as the case may be.  A resolution in writing made in accordance with this Bye-Law shall constitute minutes for the purposes of the Companies Acts and these Bye-Laws.

18   Notice of General Meetings

18.1   An Annual General Meeting shall be called by not less than five (5) days notice in writing and a Special General Meeting shall be called by not less than five (5) days notice in writing.  The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given, and shall specify the place, day and time of the meeting, and, the nature of the business to be considered. Notice of every general meeting shall be given in any manner permitted by these Bye-Laws to all Shareholders other than such as, under the provisions of these Bye-Laws or the terms of issue of the shares they hold, are not entitled to receive such notice from the Company and every Director and to any Resident Representative who or which has delivered a written notice upon the Registered Office requiring that such notice be sent to him or it.

Notwithstanding that a meeting of the Company is called by shorter notice than that specified in this Bye-Law, it shall be deemed to have been duly called if it is so agreed:

18.1.1 in the case of a meeting called as an Annual General Meeting, by all the Shareholders entitled to attend and vote thereat;

18.1.2 in the case of any other meeting, by a majority in number of the Shareholders having the right to attend and vote at the meeting, being a majority together holding not less than ninety-five percent (95%) in nominal value of the shares giving that right.

18.2 The accidental omission to give notice of a meeting or (in cases where instruments of proxy are sent out with the notice) the accidental omission to send such instrument of proxy to, or the non-receipt of notice of a meeting or such instrument of proxy by, any person entitled to receive such notice shall not invalidate the proceedings at that meeting.

18.3 The Board may cancel or postpone a meeting of the Shareholders after it has been convened and notice of such cancellation or postponement shall be served in accordance with these Bye-Laws upon all Shareholders entitled to notice of the meeting so cancelled or postponed setting out, where the meeting is postponed to a specific date, notice of the new meeting in accordance with this Bye-Law.

19  Proceedings at General Meetings

19.1 In accordance with the Companies Acts, a general meeting may be held with only one individual present provided that the requirement for a quorum is satisfied. No business shall be transacted at any general meeting unless a quorum is present when the meeting proceeds to business, but the absence of a quorum shall not preclude the appointment, choice or election of a chairman, which shall not be treated as part of the business of the meeting.  Save as otherwise provided by these Bye-Laws, at least one Shareholder present in person or by proxy and entitled to vote shall be a quorum for all purposes.

19.2 If within five (5) minutes (or such longer time as the chairman of the meeting may determine to wait) after the time appointed for the meeting, a quorum is not present, the meeting, if convened on the requisition of Shareholders, shall be dissolved.  In any other case, it shall stand adjourned to such other day and such other time and place as the chairman of the meeting may determine and at such adjourned meeting one Shareholder present in person or by proxy and entitled to vote shall be a quorum.  The Company shall give not less than five (5) days notice of any meeting adjourned through want of a quorum and such notice shall state that the one Shareholder present in person or by proxy (whatever the number of shares held by them) and entitled to vote shall be a quorum.

19.3 A meeting of the Shareholders or any class thereof may be held by means of such telephone, electronic or other communication facilities (including, without limiting

the generality of the foregoing, by telephone, or by video conferencing) as permit all persons participating in the meeting to communicate with each other simultaneously and instantaneously, and participation in such a meeting shall constitute presence in person at such meeting.

19.4 Each Director, and upon giving the notice referred to in Bye-Law 18.1 above, the Resident Representative, if any, shall be entitled to attend and speak at any general meeting of the Company.

19.5 The Board may choose one of their number to preside as chairman at every general meeting.  If there is no such chairman, or if at any meeting the chairman is not present within five (5) minutes after the time appointed for holding the meeting, or is not willing to act as chairman, the Directors present shall choose one of their number to act or if only one Director is present he shall preside as chairman if willing to act.  If no Director is present, or if each of the Directors present declines to take the chair, the persons present and entitled to vote on a poll shall elect one of their number to be chairman.

19.6 The chairman of the meeting may, with the consent by resolution of any meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place but no business shall be transacted at any adjourned meeting except business which might lawfully have been transacted at the meeting from which the adjournment took place. When a meeting is adjourned for three (3) months or more, notice of the adjourned meeting shall be given as in the case of an original meeting.  Save as expressly provided by these Bye-Laws, it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting.

## 20 Voting

20.1 Save where a greater majority is required by the Companies Acts or these Bye-Laws, any question proposed for consideration at any general meeting shall be decided on by a simple majority of votes cast.

20.2 At any general meeting, a resolution put to the vote of the meeting shall be decided on a show of hands or by a count of electronic votes received in the form of electronic records, unless (before or on the declaration of the result of the show of hands or count of votes received as electronic records or on the withdrawal of any other demand for a poll) a poll is demanded by:

20.2.1 the chairman of the meeting; or

20.2.2 at least three (3) Shareholders present in person or represented by proxy; or

20.2.3 any Shareholder or Shareholders present in person or represented by proxy and holding between them not less than one tenth (1/10) of the

total voting rights of all the Shareholders having the right to vote at such meeting; or

20.2.4 a Shareholder or Shareholders present in person or represented by proxy holding shares conferring the right to vote at such meeting, being shares on which an aggregate sum has been paid up equal to not less than one tenth (1/10) of the total sum paid up on all such shares conferring such right.

The demand for a poll may be withdrawn by the person or any of the persons making it at any time prior to the declaration of the result.  Unless a poll is so demanded and the demand is not withdrawn, a declaration by the chairman that a resolution has, on a show of hands or count of votes received as electronic records, been carried or carried unanimously or by a particular majority or not carried by a particular majority or lost shall be final and conclusive, and an entry to that effect in the minute book of the Company shall be conclusive evidence of the fact without proof of the number or proportion of votes recorded for or against such resolution.

20.3 If a poll is duly demanded, the result of the poll shall be deemed to be the resolution of the meeting at which the poll is demanded.

20.4 A poll demanded on the election of a chairman, or on a question of adjournment, shall be taken forthwith.  A poll demanded on any other question shall be taken in such manner and either forthwith or at such time (being not later than three (3) months after the date of the demand) and place as the chairman shall direct.  It shall not be necessary (unless the chairman otherwise directs) for notice to be given of a poll.

20.5 The demand for a poll shall not prevent the continuance of a meeting for the transaction of any business other than the question on which the poll has been demanded and it may be withdrawn at any time before the close of the meeting or the taking of the poll, whichever is the earlier.

20.6 On a poll, votes may be cast either personally or by proxy.

20.7 A person entitled to more than one vote on a poll need not use all his votes or cast all the votes he uses in the same way.

20.8 In the case of an equality of votes at a general meeting, whether on a show of hands or count of votes received as electronic records or on a poll, the chairman of such meeting shall not be entitled to a second or casting vote and the resolution shall fail.

20.9 In the case of joint holders of a share, the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders, and for this purpose seniority shall be determined by the order in which the names stand in the Register in respect of the joint holding.

20.10    A Shareholder who is a patient for any purpose of any statute or applicable law relating to mental health or in respect of whom an order has been made by any Court having jurisdiction for the protection or management of the affairs of persons incapable of managing their own affairs may vote, whether on a show of hands or on a poll, by his receiver, committee, *curator bonis* or other person in the nature of a receiver, committee or *curator bonis* appointed by such Court and such receiver, committee, *curator bonis* or other person may vote on a poll by proxy, and may otherwise act and be treated as such Shareholder for the purpose of general meetings.

20.11    No Shareholder shall, unless the Board otherwise determines, be entitled to vote at any general meeting unless all calls or other sums presently payable by him in respect of shares in the Company have been paid.

20.12    If:

20.12.1   any objection shall be raised to the qualification of any voter; or,

20.12.2   any votes have been counted which ought not to have been counted or which might have been rejected; or,

20.12.3   any votes are not counted which ought to have been counted,

the objection or error shall not vitiate the decision of the meeting or adjourned meeting on any resolution unless the same is raised or pointed out at the meeting or, as the case may be, the adjourned meeting at which the vote objected to is given or tendered or at which the error occurs.  Any objection or error shall be referred to the chairman of the meeting and shall only vitiate the decision of the meeting on any resolution if the chairman decides that the same may have affected the decision of the meeting.  The decision of the chairman on such matters shall be final and conclusive.

## 21  Proxies and Corporate Representatives

21.1  The instrument appointing a proxy or corporate representative shall be in writing executed by the appointor or his attorney authorised by him in writing or, if the appointor is a corporation, either under its seal or executed by an officer, attorney or other person authorised to sign the same.

21.2  Any Shareholder may appoint a proxy or (if a corporation) representative for a specific general meeting, and adjournments thereof, or may appoint a standing proxy or (if a corporation) representative, by serving on the Company at the Registered Office, or at such place or places as the Board may otherwise specify for the purpose, a proxy or (if a corporation) an authorisation.  Any standing proxy or authorisation shall be valid for all general meetings and adjournments thereof or resolutions in writing, as the case may be, until notice of revocation is received at the Registered Office or at such place or places as the Board may otherwise specify for the purpose.  Where a standing proxy or authorisation exists, its operation shall

be deemed to have been suspended at any general meeting or adjournment thereof at which the Shareholder is present or in respect to which the Shareholder has specially appointed a proxy or representative. The Board may from time to time require such evidence as it shall deem necessary as to the due execution and continuing validity of any standing proxy or authorisation and the operation of any such standing proxy or authorisation shall be deemed to be suspended until such time as the Board determines that it has received the requested evidence or other evidence satisfactory to it.

21.3   Notwithstanding Bye-law 21.2, a Shareholder may appoint a proxy which shall be irrevocable in accordance with its terms and the holder thereof shall be the only person entitled to vote the relevant shares at any meeting of the shareholders at which such holder is present. Notice of the appointment of any such proxy shall be given to the Company at its Registered Office, and shall include the name, address, telephone number and electronic mail address of the proxy holder. The Company shall give to  the proxy holder notice of all meetings of Shareholders of the Company and shall be obliged to recognise the holder of such proxy until such time as the holder notifies the Company in writing that the proxy is no longer in force.

21.4   Subject to Bye-Law 21.2 and 21.3, the instrument appointing a proxy or corporate representative together with such other evidence as to its due execution as the Board may from time to time require, shall be delivered at the Registered Office (or at such place as may be specified in the notice convening the meeting or in any notice of any adjournment or, in either case or the case of a resolution in writing, in any document sent therewith) prior to the holding of the relevant meeting or adjourned meeting at which the person named in the instrument proposes to vote or, in the case of a poll taken subsequently to the date of a meeting or adjourned meeting, before the time appointed for the taking of the poll, or, in the case of a resolution in writing, prior to the effective date of the resolution in writing and in default the instrument of proxy or authorisation shall not be treated as valid.

21.5   Subject to Bye-Law 21.2 and 21.3, the decision of the chairman of any general meeting as to the validity of any appointments of a proxy shall be final.

21.6   Instruments of proxy or authorisation shall be in any common form or in such other form as the Board may approve and the Board may, if it thinks fit, send out with the notice of any meeting or any resolution in writing forms of instruments of proxy or authorisation for use at that meeting or in connection with that resolution in writing. The instrument of proxy shall be deemed to confer authority to demand or join in demanding a poll, to speak at the meeting and to vote on any amendment of a resolution in writing or amendment of a resolution put to the meeting for which it is given as the proxy thinks fit. The instrument of proxy or authorisation shall, unless the contrary is stated therein, be valid as well for any adjournment of the meeting as for the meeting to which it relates.

21.7   A vote given in accordance with the terms of an instrument of proxy or authorisation shall be valid notwithstanding the previous death or unsoundness of

mind of the principal, or revocation of the instrument of proxy or of the corporate authority, provided that no intimation in writing of such death, unsoundness of mind or revocation shall have been received by the Company at the Registered Office (or such other place as may be specified for the delivery of instruments of proxy or authorisation in the notice convening the meeting or other documents sent therewith) at least one hour before the commencement of the meeting or adjourned meeting, or the taking of the poll, or the day before the effective date of any resolution in writing at which the instrument of proxy or authorisation is used.

21.8  Subject to the Companies Acts, the Board may at its discretion waive any of the provisions of these Bye-Laws related to proxies or authorisations and, in particular, may accept such verbal or other assurances as it thinks fit as to the right of any person to attend, speak and vote on behalf of any Shareholder at general meetings or to sign resolutions in writing.

## BOARD OF DIRECTORS

22  Appointment and Removal of Directors

22.1  The number of Directors shall be not less than two (2) and not more than six (6) or such numbers in excess thereof as the Company by Resolution may from time to time determine and, subject to the Companies Acts and these Bye-Laws, the Directors shall be elected or appointed by the Company by Resolution and shall serve for such term as the Company by Resolution may determine, or in the absence of such determination, until the termination of the next Annual General Meeting following their appointment.  All Directors, upon election or appointment (except upon re-election at an Annual General Meeting), must provide written acceptance of their appointment, in such form as the Board may think fit, by notice in writing to the Registered Office within thirty (30) days of their appointment.

22.2  The Company may by Resolution increase the maximum number of Directors. Any one or more vacancies in the Board not filled by the Shareholders at any general meeting of the Shareholders shall be deemed casual vacancies for the purposes of these Bye-Laws.  Without prejudice to the power of the Company by Resolution in pursuance of any of the provisions of these Bye-Laws to appoint any person to be a Director, the Board, so long as a quorum of Directors remains in office, shall have power at any time and from time to time to appoint any individual to be a Director so as to fill a casual vacancy.

22.3  The Company may in a Special General Meeting called for that purpose remove a Director, provided notice of any such meeting shall be served upon the Director concerned not less than fourteen (14) days before the meeting and he shall be entitled to be heard at that meeting.  Any vacancy created by the removal of a Director at a Special General Meeting may be filled at the meeting by the election of another Director in his place or, in the absence of any such election, by the Board.

23  Resignation and Disqualification of Directors

The office of a Director shall be vacated upon the happening of any of the following events:

23.1 if he resigns his office by notice in writing delivered to the Registered Office or tendered at a meeting of the Board;

23.2 if he becomes of unsound mind or a patient for any purpose of any statute or applicable law relating to mental health and the Board resolves that his office is vacated;

23.3 if he becomes bankrupt under the laws of any country or compounds with his creditors;

23.4 if he is prohibited by law from being a Director; or

23.5 if he ceases to be a Director by virtue of the Companies Acts or is removed from office pursuant to these Bye-Laws.

## 24  Alternate Directors

24.1 A Director may appoint and remove his own Alternate Director.  Any appointment or removal of an Alternate Director by a Director shall be effected by delivery of a written notice of appointment or removal to the Secretary at the Registered Office, signed by such Director, and such notice shall be effective immediately upon receipt or on any later date specified in that notice.   Any Alternate Director may be removed by resolution of the Board.   Subject as aforesaid, the office of Alternate Director shall continue until the next annual election of Directors or, if earlier, the date on which the relevant Director ceases to be a Director.  An Alternate Director may also be a Director in his own right and may act as alternate to more than one Director.

24.2 An Alternate Director shall be entitled to receive notices of all meetings of Directors, to attend, be counted in the quorum and vote at any such meeting at which any Director to whom he is alternate is not personally present, and generally to perform all the functions of any Director to whom he is alternate in his absence.

24.3 Every person acting as an Alternate Director shall (except as regards powers to appoint an alternate and remuneration) be subject in all respects to the provisions of these Bye-Laws relating to Directors and shall alone be responsible to the Company for his acts and defaults and shall not be deemed to be the agent of or for any Director for whom he is alternate.  An Alternate Director may be paid expenses and shall be entitled to be indemnified by the Company to the same extent *mutatis mutandis* as if he were a Director.  Every person acting as an Alternate Director shall have one vote for each Director for whom he acts as alternate (in addition to his own vote if he is also a Director).  The signature of an Alternate Director to any resolution in writing of the Board or a committee of the Board shall, unless the terms of his appointment provides to the contrary, be as effective as the signature of the Director or Directors to whom he is alternate.

25  Directors' Fees and Additional Remuneration and Expenses

The amount, if any, of Directors' fees shall from time to time be determined by the Company by Resolution or in the absence of such a determination, by the Board. Unless otherwise determined to the contrary, such fees shall be deemed to accrue from day to day. Each Director may be paid his reasonable travel, hotel and incidental expenses in attending and returning from meetings of the Board or committees constituted pursuant to these Bye-Laws or general meetings and shall be paid all expenses properly and reasonably incurred by him in the conduct of the Company's business or in the discharge of his duties as a Director.  Any Director who, by request, goes or resides abroad for any purposes of the Company or who performs services which in the opinion of the Board go beyond the ordinary duties of a Director may be paid such extra remuneration (whether by way of salary, commission, participation in profits or otherwise) as the Board may determine, and such extra remuneration shall be in addition to any remuneration provided for by or pursuant to any other Bye-Law.

26  Directors' Interests

26.1  A Director may hold any other office or place of profit with the Company (except that of Auditor) in conjunction with his office of Director for such period and upon such terms as the Board may determine, and may be paid such extra remuneration therefor (whether by way of salary, commission, participation in profits or otherwise) as the Board may determine, and such extra remuneration shall be in addition to any remuneration provided for by or pursuant to any other Bye-Law.

26.2  A Director may act by himself or his firm in a professional capacity for the Company (otherwise than as Auditor) and he or his firm shall be entitled to remuneration for professional services as if he were not a Director.

26.3  Subject to the provisions of the Companies Acts, a Director may notwithstanding his office be a party to, or otherwise interested in, any transaction or arrangement with the Company or in which the Company is otherwise interested; and be a director or other officer of, or employed by, or a party to any transaction or arrangement with, or otherwise interested in, any body corporate promoted by the Company or in which the Company is interested.  The Board may also cause the voting power conferred by the shares in any other company held or owned by the Company to be exercised in such manner in all respects as it thinks fit, including the exercise thereof in favour of any resolution appointing the Directors or any of them to be directors or officers of such other company, or voting or providing for the payment of remuneration to the directors or officers of such other company.

26.4  So long as, where it is necessary, he declares the nature of his interest at the first opportunity at a meeting of the Board or by writing to the Directors as required by the Companies Acts, a Director shall not by reason of his office be accountable to the Company for any benefit which he derives from any office or employment to which these Bye-Laws allow him to be appointed or from any transaction or arrangement in which these Bye-Laws allow him to be interested, and no such

transaction or arrangement shall be liable to be avoided on the ground of any interest or benefit.

26.5 Subject to the Companies Acts and any further disclosure required thereby, a general notice to the Directors by a Director or Officer declaring that he is a director or officer or has an interest in a person and is to be regarded as interested in any transaction or arrangement made with that person, shall be a sufficient declaration of interest in relation to any transaction or arrangement so made.

## POWERS AND DUTIES OF THE BOARD

27  Powers and Duties of the Board

27.1 Subject to the provisions of the Companies Acts, these Bye-Laws and to any directions given by the Company by Resolution, the Board shall manage the business of the Company and may pay all expenses incurred in promoting and incorporating the Company and may exercise all the powers of the Company.  No alteration of these Bye-Laws and no such direction shall invalidate any prior act of the Board which would have been valid if that alteration had not been made or that direction had not been given.  The powers given by this Bye-Law shall not be limited by any special power given to the Board by these Bye-Laws and a meeting of the Board at which a quorum is present shall be competent to exercise all the powers, authorities and discretions for the time being vested in or exercisable by the Board.

27.2 The Board may exercise all the powers of the Company except those powers that are required by the Companies Acts or these Bye-Laws to be exercised by the Shareholders.

27.3 All cheques, promissory notes, drafts, bills of exchange and other instruments, whether negotiable or transferable or not, and all receipts for money paid to the Company shall be signed, drawn, accepted, endorsed or otherwise executed, as the case may be, in such manner as the Board shall from time to time by resolution determine.

27.4 The Board on behalf of the Company may provide benefits, whether by the payment of gratuities or pensions or otherwise, for any person including any Director or former Director who has held any executive office or employment with the Company or with any body corporate which is or has been a subsidiary or affiliate of the Company or a predecessor in the business of the Company or of any such subsidiary or affiliate, and to any member of his family or any person who is or was dependent on him, and may contribute to any fund and pay premiums for the purchase or provision of any such gratuity, pension or other benefit, or for the insurance of any such person.

27.5 The Board may from time to time appoint one or more of its body to be a managing director, joint managing director or an assistant managing director or to hold any other employment or executive office with the Company for such period

and upon such terms as the Board may determine and may revoke or terminate any such appointments. Any such revocation or termination as aforesaid shall be without prejudice to any claim for damages that such Director may have against the Company or the Company may have against such Director for any breach of any contract of service between him and the Company which may be involved in such revocation or termination. Any person so appointed shall receive such remuneration (if any) (whether by way of salary, commission, participation in profits or otherwise) as the Board may determine, and either in addition to or in lieu of his remuneration as a Director.

28  Delegation of the Board's Powers

28.1 The Board may by power of attorney appoint any company, firm or person or any fluctuating body of persons, whether nominated directly or indirectly by the Board, to be the attorney or attorneys of the Company for such purposes and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Board under these Bye-Laws) and for such period and subject to such conditions as it may think fit, and any such power of attorney may contain such provisions for the protection and convenience of persons dealing with any such attorney and of such attorney as the Board may think fit, and may also authorise any such attorney to sub-delegate all or any of the powers, authorities and discretions vested in him. Such attorney may, if so authorised by the power of attorney, execute any deed, instrument or other document on behalf of the Company.

28.2 The Board may entrust to and confer upon any Director, Officer or, without prejudice to the provisions of Bye-Law 28.3, other person any of the powers, authorities and discretions exercisable by it upon such terms and conditions with such restrictions as it thinks fit, and either collaterally with, or to the exclusion of, its own powers, authorities and discretions, and may from time to time revoke or vary all or any of such powers, authorities and discretions, but no person dealing in good faith and without notice of such revocation or variation shall be affected thereby.

28.3 The Board may delegate any of its powers, authorities and discretions to committees, consisting of such person or persons (whether a member or members of its body or not) as it thinks fit. Any committee so formed shall, in the exercise of the powers, authorities and discretions so delegated, and in conducting its proceedings conform to any regulations which may be imposed upon it by the Board. If no regulations are imposed by the Board the proceedings of a committee with two (2) or more members shall be, as far as is practicable, governed by the Bye-Laws regulating the proceedings of the Board.

29  Proceedings of the Board

29.1 The Board may meet for the despatch of business, adjourn and otherwise regulate its meetings as it thinks fit. Questions arising at any meeting shall be determined by a majority of votes. In the case of an equality of votes, the motion shall be deemed to

have been lost.  A Director may, and the Secretary on the requisition of a Director shall, at any time summon a meeting of the Board.

29.2  Notice of a meeting of the Board may be given to a Director by word of mouth or in any manner permitted by these Bye-Laws.  A Director may retrospectively waive the requirement for notice of any meeting by consenting in writing to the business conducted at the meeting.

29.3  The quorum necessary for the transaction of the business of the Board may be fixed by the Board and, unless so fixed at any other number, shall be two (2) individuals. Any Director who ceases to be a Director at a meeting of the Board may continue to be present and to act as a Director and be counted in the quorum until the termination of the meeting if no other Director objects and if otherwise a quorum of Directors would not be present.

29.4  A Director who to his knowledge is in any way, whether directly or indirectly, interested in a contract or proposed contract, transaction or arrangement with the Company and has complied with the provisions of the Companies Acts and these Bye-Laws with regard to disclosure of his interest shall be entitled to vote in respect of any contract, transaction or arrangement in which he is so interested and if he shall do so his vote shall be counted, and he shall be taken into account in ascertaining whether a quorum is present.

29.5  The Resident Representative shall, upon delivering written notice of an address for the purposes of receipt of notice to the Registered Office, be entitled to receive notice of, attend and be heard at, and to receive minutes of all meetings of the Board.

29.6  So long as a quorum of Directors remains in office, the continuing Directors may act notwithstanding any vacancy in the Board but, if no such quorum remains, the continuing Directors or a sole continuing Director may act only for the purpose of calling a general meeting.

29.7  The Board may choose one of their number to preside as chairman at every meeting of the Board.  If there is no such chairman, or if at any meeting the chairman is not present within five (5) minutes after the time appointed for holding the meeting, or is not willing to act as chairman, the Directors present may choose one of their number to be chairman of the meeting.

29.8  The meetings and proceedings of any committee consisting of two (2) or more members shall be governed by the provisions contained in these Bye-Laws for regulating the meetings and proceedings of the Board so far as the same are applicable and are not superseded by any regulations imposed by the Board.

29.9  A resolution in writing signed by all the Directors for the time being entitled to receive notice of a meeting of the Board (or by an Alternate Director, as provided for in these Bye-Laws) or by all the members of a committee for the time being shall be as valid and effectual as a resolution passed at a meeting of the Board or, as

the case may be, of such committee duly called and constituted. Such resolution may be contained in one document or in several documents in the like form each signed by one or more of the Directors or members of the committee concerned.

29.10    A meeting of the Board or a committee appointed by the Board may be held by means of such telephone, electronic or other communication facilities (including, without limiting the generality of the foregoing, by telephone or by video conferencing) as permit all persons participating in the meeting to communicate with each other simultaneously and instantaneously and participation in such a meeting shall constitute presence in person at such meeting. Such a meeting shall be deemed to take place where the largest group of those Directors participating in the meeting is physically assembled, or, if there is no such group, where the chairman of the meeting then is.

29.11    All acts done by the Board or by any committee or by any person acting as a Director or member of a committee or any person duly authorised by the Board or any committee shall, notwithstanding that it is afterwards discovered that there was some defect in the appointment of any member of the Board or such committee or person acting as aforesaid or that they or any of them were disqualified or had vacated their office, be as valid as if every such person had been duly appointed and was qualified and had continued to be a Director, member of such committee or person so authorised.

## OFFICERS

30  Officers

30.1 The Officers of the Company, who may or may not be Directors, may be appointed by the Board at any time. Any person appointed pursuant to this Bye-Law shall hold office for such period and upon such terms as the Board may determine and the Board may revoke or terminate any such appointment. Any such revocation or termination shall be without prejudice to any claim for damages that such Officer may have against the Company or the Company may have against such Officer for any breach of any contract of service between him and the Company which may be involved in such revocation or termination. Save as provided in the Companies Acts or these Bye-Laws, the powers and duties of the Officers of the Company shall be such (if any) as are determined from time to time by the Board.

30.2 The provisions of these Bye-Laws as to resignation and disqualification of Directors shall *mutatis mutandis* apply to the resignation and disqualification of Officers.

## MINUTES

31  Minutes

31.1 The Board shall cause minutes to be made and books kept for the purpose of recording:

31.1.1 all appointments of Officers made by the Board;

31.1.2 the names of the Directors and other persons (if any) present at each meeting of the Board and of any committee; and

31.1.3 all proceedings at meetings of the Company, of the holders of any class of shares in the Company, of the Board and of committees appointed by the Board or the Shareholders.

31.2 Shareholders shall only be entitled to see the Register of Directors and Officers, the Register, the financial information provided for in Bye-Law 38.3 and the minutes of meetings of the Shareholders of the Company.

## SECRETARY AND RESIDENT REPRESENTATIVE

32  Secretary and Resident Representative

32.1 The Secretary (including one or more deputy or assistant secretaries) and, if required, the Resident Representative, shall be appointed by the Board at such remuneration (if any) and upon such terms as it may think fit and any Secretary and Resident Representative so appointed may be removed by the Board.  The duties of the Secretary and the duties of the Resident Representative shall be those prescribed by the Companies Acts together with such other duties as shall from time to time be prescribed by the Board.

32.2 A provision of the Companies Acts or these Bye-Laws requiring or authorising a thing to be done by or to a Director and the Secretary shall not be satisfied by its being done by or to the same person acting both as Director and as, or in the place of, the Secretary.

## THE SEAL

33  The Seal

33.1 The Board may authorise the production of a common seal of the Company and one or more duplicate common seals of the Company, which shall consist of a circular device with the name of the Company around the outer margin thereof and the country and year of registration in Bermuda across the centre thereof.

33.2 Any document required to be under seal or executed as a deed on behalf of the Company may be:

33.2.1 executed under the Seal in accordance with these Bye-Laws; or

33.2.2 signed or executed by any person authorised by the Board for that purpose, without the use of the Seal.

33.3 The Board shall provide for the custody of every Seal.  A Seal shall only be used by authority of the Board or of a committee constituted by the Board.  Subject to these

Bye-Laws, any instrument to which a Seal is affixed shall be attested by the signature of:

33.3.1  a Director; or

33.3.2  the Secretary; or

33.3.3  any one person authorised by the Board for that purpose.

## DIVIDENDS AND OTHER PAYMENTS

34  Dividends and Other Payments

34.1  The Board may from time to time declare dividends or distributions out of contributed surplus to be paid to the Shareholders according to their rights and interests, including such interim dividends as appear to the Board to be justified by the position of the Company.  The Board, in its discretion, may determine that any dividend shall be paid in cash or shall be satisfied, subject to Bye-Law 36, in paying up in full shares in the Company to be issued to the Shareholders credited as fully paid or partly paid or partly in one way and partly the other.  The Board may also pay any fixed cash dividend which is payable on any shares of the Company half yearly or on such other dates, whenever the position of the Company, in the opinion of the Board, justifies such payment.

34.2  Except insofar as the rights attaching to, or the terms of issue of, any share otherwise provide:

34.2.1  all dividends or distributions out of contributed surplus may be declared and paid according to the amounts paid up on the shares in respect of which the dividend or distribution is paid, and an amount paid up on a share in advance of calls may be treated for the purpose of this Bye-Law as paid-up on the share;

34.2.2  dividends or distributions out of contributed surplus may be apportioned and paid pro rata according to the amounts paid-up on the shares during any portion or portions of the period in respect of which the dividend or distribution is paid.

34.3  The Board may deduct from any dividend, distribution or other monies payable to a Shareholder by the Company on or in respect of any shares all sums of money (if any) presently payable by him to the Company on account of calls or otherwise in respect of shares of the Company.

34.4  No dividend, distribution or other monies payable by the Company on or in respect of any share shall bear interest against the Company.

34.5  Any dividend, distribution or interest, or part thereof payable in cash,  or any other sum payable in cash to the holder of shares may be paid by cheque or warrant sent through the post or by courier addressed to the holder at his address in the Register

or, in the case of joint holders, addressed to the holder whose name stands first in the Register in respect of the shares at his registered address as appearing in the Register or addressed to such person at such address as the holder or joint holders may in writing direct. Every such cheque or warrant shall, unless the holder or joint holders otherwise direct, be made payable to the order of the holder or, in the case of joint holders, to the order of the holder whose name stands first in the Register in respect of such shares, and shall be sent at his or their risk and payment of the cheque or warrant by the bank on which it is drawn shall constitute a good discharge to the Company. Any one of two (2) or more joint holders may give effectual receipts for any dividends, distributions or other monies payable or property distributable in respect of the shares held by such joint holders.

34.6 Any dividend or distribution out of contributed surplus unclaimed for a period of six (6) years from the date of declaration of such dividend or distribution shall be forfeited and shall revert to the Company and the payment by the Board of any unclaimed dividend, distribution, interest or other sum payable on or in respect of the share into a separate account shall not constitute the Company a trustee in respect thereof.

34.7 The Board may also, in addition to its other powers, direct payment or satisfaction of any dividend or distribution out of contributed surplus wholly or in part by the distribution of specific assets, and in particular of paid-up shares or debentures of any other company, and where any difficulty arises in regard to such distribution or dividend, the Board may settle it as it thinks expedient, and in particular, may authorise any person to sell and transfer any fractions or may ignore fractions altogether, and may fix the value for distribution or dividend purposes of any such specific assets and may determine that cash payments shall be made to any Shareholders upon the footing of the values so fixed in order to secure equality of distribution and may vest any such specific assets in trustees as may seem expedient to the Board, provided that such dividend or distribution may not be satisfied by the distribution of any partly paid shares or debentures of any company without the sanction of a Resolution.

## 35  Reserves

The Board may, before declaring any dividend or distribution out of contributed surplus, set aside such sums as it thinks proper as reserves which shall, at the discretion of the Board, be applicable for any purpose of the Company and pending such application may, also at such discretion, either be employed in the business of the Company or be invested in such investments as the Board may from time to time think fit. The Board may also without placing the same to reserve carry forward any sums which it may think it prudent not to distribute.

# CAPITALISATION OF PROFITS

36  Capitalisation of Profits

36.1 The Board may from time to time resolve to capitalise all or any part of any amount for the time being standing to the credit of any reserve or fund which is available for distribution or to the credit of any share premium account and accordingly that such amount be set free for distribution amongst the Shareholders or any class of Shareholders who would be entitled thereto if distributed by way of dividend and in the same proportions, on the footing that the same be not paid in cash but be applied either in or towards paying up amounts for the time being unpaid on any shares in the Company held by such Shareholders respectively or in payment up in full of unissued shares, debentures or other obligations of the Company, to be allotted and distributed credited as fully paid amongst such Shareholders, or partly in one way and partly in the other, provided that for the purpose of this Bye-Law, a share premium account may be applied only in paying up of unissued shares to be issued to such Shareholders credited as fully paid.

36.2 Where any difficulty arises in regard to any distribution under this Bye-Law, the Board may settle the same as it thinks expedient and, in particular, may authorise any person to sell and transfer any fractions or may resolve that the distribution should be as nearly as may be practicable in the correct proportion but not exactly so or may ignore fractions altogether, and may determine that cash payments should be made to any Shareholders in order to adjust the rights of all parties, as may seem expedient to the Board. The Board may appoint any person to sign on behalf of the persons entitled to participate in the distribution any contract necessary or desirable for giving effect thereto and such appointment shall be effective and binding upon the Shareholders.

# RECORD DATES

37  Record Dates

Notwithstanding any other provisions of these Bye-Laws, the Company may by Resolution or the Board may fix any date as the record date for any dividend, distribution, allotment or issue and for the purpose of identifying the persons entitled to receive notices of any general meeting and to vote at any general meeting. Any such record date may be on or at any time before or after any date on which such dividend, distribution, allotment or issue is declared, paid or made or such notice is despatched.

# ACCOUNTING RECORDS

38  Accounting Records

38.1 The Board shall cause to be kept accounting records sufficient to give a true and fair view of the state of the Company's affairs and to show and explain its transactions, in accordance with the Companies Acts.

38.2 The records of account shall be kept at the Registered Office or at such other place or places as the Board thinks fit, and shall at all times be open to inspection by the Directors, PROVIDED that if the records of account are kept at some place outside Bermuda, there shall be kept at an office of the Company in Bermuda such records as will enable the Directors to ascertain with reasonable accuracy the financial position of the Company at the end of each three (3) month period.    No Shareholder (other than an Officer of the Company) shall have any right to inspect any accounting record or book or document of the Company except as conferred by law or authorised by the Board or by Resolution.

38.3 A copy of every balance sheet and statement of income and expenditure, including every document required by law to be annexed thereto, which is to be laid before the Company in general meeting, together with a copy of the Auditors' report, shall be sent to each person entitled thereto in accordance with the requirements of the Companies Acts.

## AUDIT

39  Audit

Save and to the extent that an audit is waived in the manner permitted by the Companies Acts, Auditors shall be appointed and their duties regulated in accordance with the Companies Acts, any other applicable law and such requirements not inconsistent with the Companies Acts as the Board may from time to time determine.

## SERVICE OF NOTICES AND OTHER DOCUMENTS

40  Service of Notices and Other Documents

40.1 Any notice or other document (including but not limited to a share certificate, any notice of a general meeting of the Company, any instrument of proxy and any document to be sent in accordance with Bye-Law 38.3) may be sent to, served on or delivered to any Shareholder by the Company

40.1.1  personally;

40.1.2  by sending it through the post (by airmail where applicable) in a pre-paid letter addressed to such Shareholder at his address as appearing in the Register;

40.1.3  by sending it by courier to or leaving it at the Shareholder's address appearing in the Register;

40.1.4  where applicable, by sending it by email or facsimile or other mode of representing or reproducing words in a legible and non-transitory form or by sending an electronic record of it by electronic means, in each case to an address or number supplied by such Shareholder for the purposes of communication in such manner; or

40.1.5   by publication of an electronic record of it on a website and notification of such publication (which shall include the address of the website, the place on the website where the document may be found, and how the document may be accessed on the website) by any of the methods set out in paragraphs 40.1.1, 40.1.2, 40.1.3 or 40.1.4 of this Bye-Law, in accordance with the Companies Acts.

In the case of joint holders of a share, service or delivery of any notice or other document on or to one of the joint holders shall for all purposes be deemed as sufficient service on or delivery to all the joint holders.

40.2   Any notice or other document shall be deemed to have been served on or delivered to any Shareholder by the Company

40.2.1   if sent by personal delivery, at the time of delivery;

40.2.2   if sent by post, forty-eight (48) hours after it was put in the post;

40.2.3   if sent by courier or facsimile, twenty-four (24) hours after sending;

40.2.4   if sent by email or other mode of representing or reproducing words in a legible and non-transitory form or as an electronic record by electronic means, twelve (12) hours after sending; or

40.2.5   if published as an electronic record on a website, at the time that the notification of such publication shall be deemed to have been delivered to such Shareholder,

and in proving such service or delivery, it shall be sufficient to prove that the notice or document was properly addressed and stamped and put in the post, published on a website in accordance with the Companies Acts and the provisions of these Bye-Laws, or sent by courier, facsimile, email or as an electronic record by electronic means, as the case may be, in accordance with these Bye-Laws.

Each Shareholder and each person becoming a Shareholder subsequent to the adoption of these Bye-laws, by virtue of its holding or its acquisition and continued holding of a share, as applicable, shall be deemed to have acknowledged and agreed that any notice or other document (excluding a share certificate) may be provided by the Company by way of accessing them on a website instead of being provided by other means.

40.3   Any notice or other document delivered, sent or given to a Shareholder in any manner permitted by these Bye-Laws shall, notwithstanding that such Shareholder is then dead or bankrupt or that any other event has occurred, and whether or not the Company has notice of the death or bankruptcy or other event, be deemed to have been duly served or delivered in respect of any share registered in the name of such Shareholder as sole or joint holder unless his name shall, at the time of the service or delivery of the notice or document, have been removed from the Register as the

holder of the share, and such service or delivery shall for all purposes be deemed as sufficient service or delivery of such notice or document on all persons interested (whether jointly with or as claiming through or under him) in the share.

40.4 Save as otherwise provided, the provisions of these Bye-Laws as to service of notices and other documents on Shareholders shall *mutatis mutandis* apply to service or delivery of notices and other documents to the Company or any Director, Alternate Director or Resident Representative pursuant to these Bye-Laws.

## WINDING UP

41  Winding Up

If the Company shall be wound up, the liquidator may, with the sanction of a Resolution of the Company and any other sanction required by the Companies Acts, divide amongst the Shareholders in specie or kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may for such purposes set such values as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the Shareholders or different classes of Shareholders.  The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trust for the benefit of the contributories as the liquidator, with the like sanction, shall think fit, but so that no Shareholder shall be compelled to accept any shares or other assets upon which there is any liability.

## INDEMNITY

42  Indemnity

42.1 Subject to the proviso below, every Indemnified Person shall be indemnified and held harmless out of the assets of the Company against all liabilities, loss, damage or expense (including but not limited to liabilities under contract, tort and statute or any applicable foreign law or regulation and all reasonable legal and other costs including defence costs incurred in defending any legal proceedings whether civil or criminal and expenses properly payable) incurred or suffered by him by or by reason of any act done, conceived in or omitted in the conduct of the Company's business or in the discharge of his duties and the indemnity contained in this Bye-Law shall extend to any Indemnified Person acting in any office or trust in the reasonable belief that he has been appointed or elected to such office or trust notwithstanding any defect in such appointment or election PROVIDED ALWAYS that the indemnity contained in this Bye-Law shall not extend to any matter which would render it void pursuant to the Companies Acts.

42.2 No Indemnified Person shall be liable to the Company for the acts, defaults or omissions of any other Indemnified Person.

42.3 To the extent that any Indemnified Person is entitled to claim an indemnity pursuant to these Bye-Laws in respect of amounts paid or discharged by him, the relevant

indemnity shall take effect as an obligation of the Company to reimburse the person making such payment or effecting such discharge.

42.4   Each Shareholder and the Company agree to waive any claim or right of action he or it may at any time have, whether individually or by or in the right of the Company, against any Indemnified Person on account of any action taken by such Indemnified Person or the failure of such Indemnified Person to take any action in the performance of his duties with or for the Company PROVIDED HOWEVER that such waiver shall not apply to any claims or rights of action arising out of the fraud of such Indemnified Person or to recover any gain, personal profit or advantage to which such Indemnified Person is not legally entitled.

42.5   The Company shall advance moneys to any Indemnified Person for the costs, charges, and expenses incurred by the Indemnified Person in defending any civil or criminal proceedings against them, on condition and receipt of an undertaking in a form satisfactory to the Company that the Indemnified Person shall repay such portion of the advance attributable to any claim of fraud or dishonesty if such a claim is proved against the Indemnified Person.

42.6   The advance of moneys would not be paid unless the advance was duly authorized upon a determination that   the indemnification of the Indemnified Person was appropriate because  the Indemnified Person had met the standard of conduct which would entitle the Indemnified Person to indemnification and further the determination referred to above must be made by a majority vote of the Board at a meeting duly constituted by a quorum of Directors not party to the proceedings in respect of which the indemnification is, or would be, claimed; or,  in the case such meeting cannot be constituted by lack of  disinterested quorum by an independent third party; or, alternatively, by a majority vote of the Shareholders.

## AMALGAMATION

43  Amalgamation

Any resolution proposed for consideration at any general meeting to approve the amalgamation of the Company with any other company, wherever incorporated, shall require the approval of a simple majority of votes cast at such meeting and the quorum for such meeting shall be that required in Bye-Law 19.1 and a poll may be demanded in respect of such resolution in accordance with the provisions of Bye-Law 20.2.

## CONTINUATION

44  Continuation

Subject to the Companies Acts, the Board may approve the discontinuation of the Company in Bermuda and the continuation of the Company in a jurisdiction outside Bermuda.   The Board, having resolved to approve the discontinuation of the Company, may further resolve not to proceed with any application to discontinue the Company in Bermuda or may vary such application as it sees fit.

## ALTERATION OF BYE-LAWS

45  Alteration of Bye-Laws

These Bye-Laws may be amended from time to time by resolution of the Board, but subject to approval by Resolution.

# EXHIBIT K

**DIRECTORS AND OFFICERS OF THE REORGANIZED DEBTORS**

## List of Proposed Directors & Officers

Pursuant to Section 4.12 of the Plan and in accordance with section 1129(a)(5) of the Bankruptcy Code, the Reorganized Debtors identify the following initial boards of directors and officers of the Reorganized Debtors that are corporations:[1]

| Entity | Directors | Officers |
|---|---|---|
| **Inversiones Alsacia S.A.** | Carlos Ríos Velilla<br>José Ferrer Fernández<br>Per Gabell | José Ferrer Fernández – Chief Executive Officer<br>Leopoldo Falconi de la Cerda – Chief Financial Officer<br>Edgar MacAllister Braydy – Operations Manager<br>Christian Gilchrist Correa – Human Resources & Development Manager |
| **Express de Santiago Uno S.A.** | Javier Ríos Velilla<br>Gibrán Harcha Sarrás<br>Enrique Bone Soto<br>Carlos Ibárcena Valdivia | José Ferrer Fernández – Chief Executive Officer<br>Leopoldo Falconi de la Cerda – Chief Financial Officer<br>Edgar MacAllister Braydy – Operations Manager<br>Christian Gilchrist Correa – Human Resources & Development Manager |
| **Inversiones Eco Uno S.A.** | Carlos Ríos Velilla<br>Javier Ríos Velilla<br>Adriana Rivera Salcedo<br>Gibrán Harcha Sarrás<br>Fabio Junca Hernández | Gibrán Harcha Sarrás – Chief Executive Officer |
| **Panamerican Investments Ltd.** | Clara Marcela Arango Lopez<br>Matthieu Albert Luis Grossin Rios<br>Carlos Ríos Velilla<br>Javier Ríos Velilla<br>Luz Helena Rios Velilla<br>Gibrán Harcha Sarrás | Clara Marcela Arango Lopez – President<br>Gibrán Harcha Sarrás – Vice President |

---

[1]   This list remains subject to change in all respects.

## __EXHIBIT L__

**CHILEAN DEBT ACKNOWLEDGMENT DEED**

**REPERTORIO**


**RECONOCIMIENTO DE DEUDA, Y FIANZA Y CODEUDA SOLIDARIA**


**INVERSIONES ALSACIA S.A. y OTRAS**


**A**


**BANCO SANTANDER-CHILE**


En Santiago de Chile, a [●] de [●] de dos mil catorce, ante mí [●], comparecen: por una parte don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula de identidad número [●], y don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula de identidad número [●], ambos en representación de **INVERSIONES ALSACIA S.A.**, sociedad anónima cerrada sujeta a las normas de las sociedades anónimas abiertas, debidamente constituida y válidamente existente bajo las leyes de la República de Chile, rol único tributario número noventa y nueve millones quinientos setenta y siete mil cuatrocientos guión tres, todos domiciliados para estos efectos en Avenida Santa Clara número quinientos cincuenta y cinco, de la comuna de Huechuraba, Santiago, Chile, en adelante también indistintamente la "**Deudora**" o la "**Concesionaria**"; los comparecientes mayores de edad, quienes acreditan su identidad con las cédulas respectivas y exponen: **PRIMERO: /a/ ANTECEDENTES**. Por instrumento privado otorgado en idioma inglés en febrero del año dos mil once, denominado "*Indenture*", BRT Escrow Corporation SpA, celebró con The Bank of New York Mellon como representante de los tenedores de bonos, entre otras calidades, un contrato de emisión de bonos bajo la regulación ciento cuarenta y cuatro A y la *Regulation S* del *Securities Act* de mil novecientos treinta y tres, y sus modificaciones, de Estados Unidos de América. En virtud de dicho contrato, se acordó una emisión de bonos denominados en Dólares de los Estados Unidos de América, en adelante "**Dólares**", por un monto total de capital de cuatrocientos sesenta y cuatro millones de Dólares, en adelante los "**Bonos Originales**". Con fecha veintiocho de febrero de dos mil once, la Deudora adquirió la totalidad de las

1

acciones de BRT Escrow Corporation SpA, asumiendo la Deudora como consecuencia todas las obligaciones y derechos emanados de los Bonos Originales y del Contrato de Emisión de Bonos Original. Con fechas treinta y uno de agosto, y quince de septiembre de dos mil catorce, la Deudora y otras entidades acordaron con sus acreedores un plan de restructuración de los Bonos Originales bajo las normas del Capítulo once del Título once del Código de Quiebras (*Bankruptcy Code*) de los Estados Unidos de América, el que conllevó el refinanciamiento de los Bonos Originales, y la emisión de Nuevos Bonos, según se define más adelante, los que reemplazaron a los Bonos Originales.- **/b/ RECONOCIMIENTO DE DEUDA.** Por el presente instrumento, la Deudora, debidamente representada según se indica en la comparecencia, reconoce irrevocablemente adeudar a los tenedores de los Nuevos Bonos emitidos para el refinanciamiento de los Bonos Originales, tenedores debidamente representados por el Banco Santander-Chile, como agente de garantías local /en adelante también, el "**Agente de Garantías Local**"/, bajo el contrato denominado *New Notes Indenture* suscrito por la Deudora con fecha [●], en la ciudad de Nueva York, con [●][1] en su calidad de Fiduciario /*Trustee*/ y Agente de Garantías Estadounidense /*U.S. Collateral Trustee*/, y cuya copia simple se adjunta como anexo a la presente escritura, y se protocoliza con esta misma fecha en esta misma Notaría Pública /en adelante también, el "**Nuevo Contrato de Emisión de Bonos**"/ el monto de trescientos sesenta y cuatro millones cuatrocientos treinta y tres mil cuatrocientos sesenta y seis **dólares de los Estados Unidos de América ("Dólares")** y sesenta y siete centavos, /en adelante el "**Monto Adeudado**"/. **SEGUNDO: PAGO DE LA DEUDA.** La Deudora pagará al Agente de Garantías Local el Monto Adeudado, conforme con el siguiente calendario de pago: **Uno/** el monto de un millón de Dólares se pagará íntegramente el día veintidós de diciembre de dos mil catorce. **Dos/** el monto de cuatro millones novecientos mil Dólares, se pagará íntegramente el día veintidós de junio de dos mil quince. **Tres/** el monto de dos millones trescientos mil Dólares se pagará íntegramente el día veintidós de diciembre de dos mil quince. **Cuatro/** el monto de nueve millones trescientos cincuenta mil Dólares se pagará íntegramente el día veintidós de junio de dos mil dieciséis. **Cinco/** el monto de nueve millones trescientos cincuenta mil Dólares se pagará íntegramente el día veintidós de diciembre de dos mil dieciséis. **Seis/** el monto de diez millones cien mil Dólares se pagará íntegramente el día veintidós de junio de dos mil diecisiete. **Siete/** el monto de diez millones cien mil Dólares se pagará íntegramente el

---

[1] Nombre de Trustee y U.S. Collateral Trustee.

día veintidós de diciembre de dos mil diecisiete. **Ocho/** el monto de dos millones cuatrocientos mil Dólares se pagará íntegramente el día veintidós de junio de dos mil dieciocho. **Nueve/** el monto de dieciséis millones novecientos mil Dólares se pagará íntegramente el día veintidós de diciembre de dos mil dieciocho. **Diez/** El saldo total de la deuda /en adelante, el "**Saldo**"/, se pagará íntegramente el día treinta uno de diciembre de dos mil dieciocho, a menos que se produzca una extensión de los Contratos de Concesión, /*Concession Extension*, según dicho término se define en el Nuevo Contrato de Emisión de Bonos, en cuyo caso, el Saldo se pagará de acuerdo al siguiente calendario de pago: **Diez.Uno/** el monto de cuatro millones setecientos mil Dólares se pagará íntegramente el veintidós de junio de dos mil diecinueve. **Diez.Dos/** el monto de nueve millones setecientos mil de Dólares se pagará íntegramente el veintidós de diciembre de dos mil diecinueve.  **Diez.Tres/** el monto de nueve millones de Dólares se pagará íntegramente el veintidós de junio de dos mil veinte. **Diez.Cuatro/** el monto de diecinueve millones de Dólares se pagará íntegramente el veintidós de diciembre de dos mil veinte. Para todos los efectos, el presente Reconocimiento de Deuda se otorga como medio para facilitar el  pago de los Nuevos Bonos emitidos con ocasión del Nuevo Contrato de Emisión de Bonos /en adelante los "**Nuevos Bonos**"/ y en consecuencia, todos los pagos que la Deudora haga a los bonistas /*Noteholders*/ a través de la Cuenta de Pagos /*Payment Account*/ a nombre de [•][2], en su calidad de Agente de Garantías Estadounidense, en cumplimiento de los Nuevos Bonos, serán considerados pagos válidamente efectuados bajo el presente instrumento. **Diez.Cinco/** El Saldo se pagará íntegramente noventa días después de la terminación o expiración del último de los Contratos de Concesión /*Concession Agreements*, según dicho término se define en el Nuevo Contrato de Emisión de Bonos/.   **TERCERO: INTERESES.** Cada una de las cuotas de deudas a que se hace referencia en la Cláusula Segunda precedente, devengará intereses en base a una tasa de interés de ocho por ciento anual. Para el evento de mora o simple retardo en el pago de todas o una de las cuotas, la Deudora se obliga a pagar hasta el día del pago efectivo intereses penales, correspondientes a un uno por ciento anual, sobre aquella parte de la cuota o cuotas cuyo pago se encuentre devengado y no pagado, de acuerdo a lo dispuesto en el Nuevo Contrato de Emisión de Bonos.  Se deja constancia que, a menos que el Nuevo Contrato de Emisión de Bonos permita lo contrario, todo pago en moneda extranjera se entenderá extinguido sólo hasta por el monto por el que los tenedores de

---

[2] U.S. Collateral Trustee

los Nuevos Bonos y las demás partes garantizadas en virtud del Nuevo Contrato de Emisión de Bonos hayan recibido dicha moneda en divisas de libre convertibilidad y disponibilidad o, si el pago se efectuare en otra moneda, sólo hasta por el monto con el que con dicha moneda, a una tasa de mercado, puedan adquirir la moneda extranjera con la que haya debido hacérsele el pago en virtud de la convención o la ley, el día hábil siguiente a aquél en que el Agente de Garantías Local reciba los dineros en cuestión. **CUARTO: AUSENCIA DE NOVACIÓN Y TÍTULO EJECUTIVO.** La Deudora declara que el presente reconocimiento de deuda se otorga sólo para facilitar el pago en Chile de las mencionadas obligaciones y por ende no produce novación de las obligaciones que la Deudora pueda tener a favor del Agente de Garantías Local bajo el Nuevo Contrato de Emisión de Bonos, o en virtud de otros instrumentos públicos o privados, especialmente bajo los Nuevos Bonos.  La Deudora asevera que, a esta fecha, el presente instrumento constituye un título ejecutivo, suficiente para iniciar todas las acciones judiciales que en derecho correspondan en relación con las cantidades que reconoce adeudar al Agente de Garantías Local, en la representación que inviste. La Deudora declara que esta escritura de reconocimiento de deuda tiene y tendrá el carácter de irrevocable, y en caso de producirse a su respecto cualquier modificación, deberá tomarse la correspondiente nota al margen de la presente escritura. **QUINTO: PAGO ANTICIPADO.** La Deudora declara que podrá pagar en forma anticipada el todo o parte de las obligaciones contenidas en el presente instrumento, siempre y cuando el pago comprenda el capital que se anticipa, más los intereses calculados hasta la fecha de pago efectivo.- **SEXTO: CLÁUSULA DE ACELERACIÓN.**  En caso de mora o simple retardo en el pago total de una cualesquiera de las cuotas señaladas en la Cláusula Segunda precedente más sus intereses, contadas desde sus respectivas fechas de vencimiento, corresponderá a la Deudora el pago inmediato, desde el día en que se produzca la mora o el retardo señalado, de la totalidad de las cuotas adeudadas y pendientes de vencimiento , como si fueran de plazo vencido, devengándose el título de pena entre la fecha del vencimiento y hasta la fecha de su pago efectivo, el interés indicado en la cláusula Tercera del presente instrumento. **SÉPTIMO: INDIVISIBILIDAD.** Declara expresamente la Deudora que todas y cada una de las obligaciones reconocidas en el presente instrumento tendrán el carácter de indivisible, de modo que su cumplimiento podrá exigirse a cualquiera de sus sucesores o continuadores legales. **OCTAVO: EXCEPCIÓN PRESUNCIÓN DE PAGO.** La Deudora renuncia expresamente a la presunción de pago establecida en el artículo mil quinientos setenta del Código

Civil, siendo a su cargo el pago de las cuotas que afirmare. **NOVENO: FIANZA Y CODEUDA SOLIDARIA.** Comparecen en este acto: **Uno/** don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula de identidad número [●], y don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula de identidad número [●], ambos en representación de **EXPRESS DE SANTIAGO UNO S.A.**, sociedad anónima cerrada, sujeta a las normas de las sociedades anónimas abiertas, debidamente constituida y válidamente existente de conformidad a las leyes de la República de Chile, Rol Único Tributario número noventa y nueve millones quinientos setenta y siete mil trescientos noventa guión dos, todos domiciliados para estos efectos en camino El Roble número doscientos, comuna de Pudahuel, Santiago, Chile /en adelante, "**Express**"/; **Dos/** don [•], cédula nacional de identidad número [•], y don [•], cédula [nacional]³ de identidad [para extranjeros]⁴ número [•], en representación, según se acreditará, de **PANAMERICAN INVESTMENTS LTD.**, sociedad debidamente constituida y válidamente existente bajo las leyes de Bermuda, rol único tributario número cincuenta y nueve millones ciento sesenta y cuatro mil doscientos setenta guión siete, todos domiciliados para estos efectos en calle [Burgos número ochenta, piso ocho, comuna de Las Condes] , Santiago, en adelante "**Panamerican**"; **Tres/** don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula de identidad número [●], y don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula de identidad número [●], ambos en representación de **INVERSIONES ECO UNO S.A.**, sociedad anónima cerrada, debidamente constituida y válidamente existente de conformidad a las leyes de la República de Chile, Rol Único Tributario número cincuenta y nueve millones ciento veintisiete mil trescientos cuarenta guión K, todos domiciliados para estos efectos en camino El Roble número doscientos, comuna de Pudahuel, Santiago, Chile /en adelante, "**Eco Uno**"/; y **Cuatro/** don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula de identidad número [●], y don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula de identidad número [●], ambos en representación de **CAMDEN SERVICIOS SpA**, sociedad por acciones, debidamente constituida y válidamente existente de conformidad a las leyes de la República de Chile, Rol Único Tributario número [●], todos domiciliados para estos efectos en [●] /en adelante, "**Camden**" y conjuntamente con Express, Panamerican y Eco Uno, las "**Fiadoras**"/. Por este acto, las Fiadoras, debidamente representadas, declaran que garantizan en forma total,

---

³ **Nota:** Insertar texto entre brackets para representante chileno.
⁴ **Nota:** Insertar texto entre brackets para representante extranjero.

solidaria e incondicional todas las obligaciones que para la Deudora emanan bajo el presente instrumento.  Lo anterior es sin perjuicio de las demás fianzas, codeudas solidarias y garantías que las Fiadoras hayan podido constituir a favor del Deudor, por instrumentos distintos, las cuales permanecen inalteradas.  **DÉCIMO: DEFINICIONES.** Con excepción de los nombres propios, los términos en mayúsculas que se utilizan en esta escritura, y que no hayan sido expresamente definidos en la misma, tendrán el significado que se atribuye a dichos términos en el Nuevo Contrato de Emisión de Bonos, y en las modificaciones que a dicho instrumento puedan acordar sus partes de tiempo en tiempo. **UNDECIMO**: **JURISDICCIÓN Y DOMICILIO**. Para todos los efectos legales de la presente escritura, la Deudora constituye domicilio en la ciudad y comuna de Santiago, y se somete a la jurisdicción de sus tribunales de justicia. **PERSONERÍA:** La personería de los señores [●] y [●], para representar a **Inversiones Alsacia S.A.**, consta de escritura pública de fecha [●] otorgada en la Notaría de [●].  En comprobante y previa lectura, así lo otorgan y firman los comparecientes con el Notario que autoriza.- La personería de los señores [●] y [●], para representar a **Express de Santiago Uno S.A.**, consta de escritura pública de fecha [●] otorgada en la Notaría de [●].  La personería de los señores [●] y [●], para representar a **Panamerican Investments Ltd. (Bermuda)**, consta de escritura pública de fecha [●] otorgada en la Notaría de [●].  La personería de los señores [●] y [●], para representar a **Inversiones Eco Uno S.A.**, consta de escritura pública de fecha [●] otorgada en la Notaría de [●].  La personería de los señores [●] y [●], para representar a **Camden Servicios SpA**, consta de escritura pública de fecha [●] otorgada en la Notaría de [●].  En comprobante y previa lectura, así lo otorgan y firman los comparecientes con el Notario que autoriza.- Se da copia. Doy fe.

## **<u>EXHIBIT M</u>**

### **ADDITIONAL COLLATERAL DOCUMENTS**

**PRENDA SIN DESPLAZAMIENTO SOBRE ACCIONES**

URSUS CORPORATION INC.

FERROALUMINIOS LIMITADA PANAMÁ S.A.

PANAMERICAN INVESTMENTS LTD. /CHILE/

EDTM KONSULTORES EU

INVERSIONES ALSACIA S.A., y

CARLOS MARIO RIOS VELILLA

A

BANCO SANTANDER-CHILE,

EN SU CALIDAD DE AGENTE DE GARANTÍAS

En Santiago, a [•] de [•] de dos mil catorce, ante mí [•], chileno, abogado, Notario Público Titular de la [•] Notaría de Santiago, con domicilio en [•], comparecen:

i) don [•], [nacionalidad], [estado civil], [profesión], cédula nacional de identidad número [•], y don [•], [nacionalidad], [estado civil], [profesión], cédula nacional de identidad número [•], ambos en representación, según se acreditará, de **BANCO SANTANDER-CHILE**, sociedad anónima bancaria, debidamente constituida y válidamente existente de conformidad a las leyes de la República de Chile, rol único tributario número noventa y siete millones treinta y seis mil guión K, todos domiciliados para estos efectos en calle Bandera número ciento cuarenta, comuna de Santiago, Santiago; en adelante el "**Agente de Garantías**", por una parte; y por la otra

ii) don [•], [nacionalidad], [estado civil], [profesión], cédula nacional de identidad número [•], y don [•], [nacionalidad], [estado civil], [profesión], cédula [nacional][1] de identidad [para extranjeros][2] número [•], en representación, según se acreditará, de **URSUS CORPORATION INC.**, sociedad debidamente constituida y válidamente existente bajo las leyes de Panamá, del giro [•], rol único tributario número cincuenta y nueve millones ciento diecinueve mil ciento noventa guión K, todos domiciliados para estos efectos en [•], comuna de [•], Santiago, en adelante "**Ursus**";

iii) don [•], [nacionalidad], [estado civil], [profesión], cédula nacional de identidad número [•], y don [•], [nacionalidad], [estado civil], [profesión], cédula [nacional][3] de identidad [para extranjeros][4] número [•],

---

[1] Insertar texto entre brackets para representante chileno
[2] Insertar texto entre brackets para representante extranjero.
[3] Insertar texto entre brackets para representante chileno

en representación, según se acreditará, de **FERROALUMINIOS LIMITADA PANAMÁ S.A.**, sociedad debidamente constituida y válidamente existente bajo las leyes de Panamá, del giro [•], rol único tributario número cincuenta y nueve millones ciento cincuenta y cinco mil quinientos guión seis , todos domiciliados para estos efectos en [•], comuna de [•], Santiago, en adelante "**Ferro**";

iv) don [•], [nacionalidad], [estado civil], [profesión], cédula [nacional][5] de identidad [para extranjeros][6] número [•], y don [•], [nacionalidad], [estado civil], [profesión], cédula [nacional][7] de identidad [para extranjeros][8] número [•], en representación, según se acreditará, de **PANAMERICAN INVESTMENTS LTD. /CHILE/**, agencia en Chile de Panamerican Investments Ltd., Rol Único Tributario número cincuenta y nueve millones ciento sesenta y cuatro mil novecientos guión cero, todos domiciliados para estos efectos en calle [Burgos número ochenta, piso ocho, comuna de Las Condes][9], Santiago, en adelante "**Panamerican Chile**";

v) don [•], [nacionalidad], [estado civil], [profesión], cédula [nacional][10] de identidad [para extranjeros][11] número [•], y don [•], [nacionalidad], [estado civil], [profesión], cédula [nacional][12] de identidad [para extranjeros][13] número [•], en representación, según se acreditará, de **EDTM KONSULTORES EU**, sociedad debidamente constituida y válidamente existente bajo las leyes de [•], Rol Único Tributario número cincuenta y nueve millones ciento diecinueve mil ciento setenta guión cinco, todos domiciliados para estos efectos en calle [Burgos número ochenta, piso ocho, comuna de Las Condes][14], Santiago, en adelante "**EDTM**";

vi) don [•], [nacionalidad], [estado civil], [profesión], cédula [nacional][15] de identidad [para extranjeros][16] número [•], y don [•], [nacionalidad], [estado civil], [profesión], cédula [nacional][17] de identidad [para extranjeros][18] número [•], en representación, según se acreditará, de **INVERSIONES ALSACIA S.A.**, sociedad anónima del giro de transporte público, rol único tributario número noventa y nueve millones quinientos setenta y siete mil cuatrocientos guión tres, todos domiciliados para estos efectos en calle Santa Clara número quinientos cincuenta y cinco, comuna de Huechuraba, Santiago, en adelante "**Alsacia**" o el "**Deudor**"; y

---

[4] Insertar texto entre brackets para representante extranjero.
[5] Insertar texto entre brackets para representante chileno
[6] Insertar texto entre brackets para representante extranjero.
[7] Insertar texto entre brackets para representante chileno
[8] Insertar texto entre brackets para representante extranjero.
[9] Confirmar que dirección sigue vigente.
[10] Insertar texto entre brackets para representante chileno
[11] Insertar texto entre brackets para representante extranjero.
[12] Insertar texto entre brackets para representante chileno
[13] Insertar texto entre brackets para representante extranjero.
[14] Confirmar que dirección sigue vigente.
[15] Insertar texto entre brackets para representante chileno
[16] Insertar texto entre brackets para representante extranjero.
[17] Insertar texto entre brackets para representante chileno
[18] Insertar texto entre brackets para representante extranjero.

vii) don **CARLOS MARIO RÍOS VELILLA**, cédula de identidad para extranjeros número veintiún millones novecientos veintidós mil seiscientos setenta y dos guión uno, domiciliado para estos efectos en [•], comuna de [•], Santiago, en adelante "**Carlos Ríos**"; y conjuntamente con Ursus, Ferro, Panamerican Chile, EDTM y Alsacia, los "**Garantes**" o los "**Accionistas**", indistintamente; y

viii) don **FABIO JUNCA HERNÁNDEZ**, colombiano, ingeniero mecánico, cédula de identidad para extranjeros número veintiún millones ochocientos sesenta y cuatro mil trescientos sesenta y siete guión uno, en representación, según se acreditará, de **INVERSIONES ECO UNO S.A.**, sociedad anónima del giro de [•], rol único tributario número cincuenta y nueve millones ciento setenta y dos mil trescientos cuarenta guión K, todos domiciliados para estos efectos en calle Camino El Roble N° 200, comuna de Pudahuel, Santiago, en adelante "**Eco Uno**" o la "**Sociedad**", indistintamente;

los comparecientes mayores de edad, quienes acreditan su identidad con las cédulas antes citadas y exponen que han acordado celebrar el presente contrato de prenda sin desplazamiento:

**PRIMERO**: Antecedentes.

**/Uno/ Antecedentes de Inversiones Eco Uno S.A.** Eco Uno una sociedad anónima originalmente constituida como sociedad de responsabilidad limitada por escritura pública de fecha veintidós de noviembre de dos mil cuatro, otorgada ante el Notario Público de Santiago don José Musalem Saffie, cuyo extracto autorizado fue publicado en el Diario Oficial del veintiséis de noviembre de dos mil cuatro e inscrito en el Registro de Comercio del Conservador de Bienes Raíces de Santiago a fojas treinta y siete mil seiscientos sesenta y dos número veintiocho mil cuatro del año dos mil cuatro. Los accionistas de Eco Uno a esta fecha son i) Ursus, con una participación del dos por ciento de las acciones emitidas con derecho a voto, correspondientes a dos mil acciones; ii) Ferro, con una participación del diez por ciento de las acciones emitidas con derecho a voto, correspondientes a diez mil  acciones; iii) Panamerican Chile, con una participación del sesenta por ciento de las acciones emitidas con derecho a voto, correspondientes a sesenta mil  acciones; iv) EDTM, con una participación del seis coma uno cero nueve por ciento de las acciones emitidas con derecho a voto, correspondientes a seis mil ciento nueve acciones; v) Alsacia, con una participación del veintiuno coma cinco nueve uno por ciento de las acciones emitidas con derecho a voto, correspondientes a veintiún mil quinientos noventa y una acciones; y vi) Carlos Ríos, con una participación del cero coma tres por ciento de las acciones emitidas con derecho a voto, correspondientes a trescientas acciones.

**/Dos/ Antecedentes del Contrato de Concesión y la Concesión.** Alsacia es titular de los derechos emanados del Contrato de Concesión de Uso de Vías de la Ciudad de Santiago para la Prestación de Servicios Urbanos de Transporte Público Remunerado de Pasajeros Mediante Buses", Unidad de Negocio Troncal Número Uno, suscrito entre Alsacia y el Ministerio de Transportes y Telecomunicaciones de Chile, en adelante "**MTT**" mediante instrumento privado de fecha veintidós de diciembre de dos mil once, en adelante, incluyendo las modificaciones existentes y las que de tiempo en tiempo experimente, el "**Contrato de Concesión Alsacia**". El Contrato de Concesión Alsacia fue suscrito en el marco de la adjudicación de la Unidad de Negocio Troncal Número Uno, en adelante la "**Concesión Alsacia**", conforme a las bases "Licitación Pública de Uso de Vías Públicas de la Ciudad de Santiago para

la Prestación de Servicios Urbanos de Transporte Público Remunerado de Pasajeros mediante Buses", en adelante las "**Bases Transantiago**".

**SEGUNDO: Obligaciones Garantizadas.**

**/Uno/ Contrato de Emisión de Bonos.** Por instrumento privado otorgado en idioma inglés denominado "*Indenture*", en adelante el "**Contrato de Emisión de Bonos Original**", BRT Escrow Corporation SpA, en adelante el "**Emisor Temporal Inicial**", celebró con The Bank of New York Mellon como representante de los tenedores de bonos, entre otras calidades, en adelante el "**Representante de los Tenedores de Bonos**", un contrato de emisión de bonos bajo la regulación ciento cuarenta y cuatro A y la *Regulation S* de la *Securities Act* de mil novecientos treinta y tres, y sus modificaciones, de Estados Unidos de América.   En virtud de dicho contrato, se acordó una emisión de bonos denominados en Dólares de los Estados Unidos de América, en adelante "**Dólares**", por un monto total de capital de cuatrocientos setenta y cuatro millones de Dólares, en adelante los "**Bonos Originales**".   Con fecha veintiocho de febrero de dos mil once, Alsacia adquirió la totalidad de las acciones de BRT Escrow Corporation SpA, asumiendo Alsacia como consecuencia todas las obligaciones y derechos emanados de los Bonos Originales y del Contrato de Emisión de Bonos Original.   Por instrumento privado otorgado en idioma inglés de fecha veintiocho de febrero de dos mil once, Alsacia, Express de Santiago Uno S.A., en adelante "**Express**", Inversiones Eco Uno S.A., en adelante "**Eco Uno**" y Panamerican Investments Ltd. /Chile/, en adelante "**Panamerican**" celebraron un contrato denominado "*First Supplemental Indenture*", en adelante el "**Contrato de Emisión de Bonos Complementario**", en virtud del cual pasaron a formar parte del Contrato de Emisión de Bonos Original, sujetándose a sus términos y condiciones.   Por instrumento privado otorgado en idioma inglés de fecha dieciséis de diciembre de dos mil once, Alsacia, Express, Eco Uno y Panamerican suscribieron un contrato denominado "*Second Supplemental Indenture*", y por instrumento privado otorgado en idioma inglés de fecha veinticinco de septiembre de dos mil trece y complementarias denominado "*Amended and Restated Consent Solicitation Statement*", por los cuales se modificaron los términos y condiciones del Contrato de Emisión de Bonos Original.   Una copia del Contrato de Emisión de Bonos Original, y del Contrato de Emisión de Bonos Complementario se protocolizó el veintiocho de febrero de dos mil once, en la Notaría de Santiago de doña María Gloria Acharán Toledo, bajo el repertorio número siete mil novecientos cincuenta y ocho, de dos mil once.

**/Dos/ Acuerdo de Reestructuración y Plan de Apoyo.** Con fecha treinta y uno de agosto de dos mil catorce, Alsacia, Express, Eco Uno y Panamerican, como garantes de los Bonos Originales, junto con GPS, don Carlos Mario Ríos Velilla, don Francisco Javier Ríos Velilla (ambos, conjuntamente con GPS, los "**Accionistas de Alsacia**") y ciertos tenedores de los Bonos, suscribieron un acuerdo denominado "*Restructuring and Plan Support Agreement*", el cual fue modificado con fecha quince de septiembre de dos mil catorce, en adelante el "**Contrato de Reestructuración**", el que contiene los términos y condiciones de un plan de restructuración financiera que se llevará a cabo como un *pre-packaged plan of reorganization* bajo las normas del Capítulo once del Título once del Código de Quiebras (*Bankruptcy Code*) de los Estados Unidos de América, en adelante el "**Plan de Restructuración**", con el objeto de reestructurar las obligaciones financieras y el endeudamiento de Alsacia, Express, Panamerican y Eco Uno bajo el Contrato de Emisión de Bonos y de los Bonos Originales.   Dicho Plan de Reestructuración está siendo implementado de acuerdo a los términos y condiciones establecidos en el Capítulo once del

Título once del Código de Quiebras (*Bankruptcy Code)* de los Estados Unidos de América, mediante la presentación de solicitudes  voluntarias ante la Corte Federal de Quiebras del Distrito Sur de Nueva York, en adelante la "**Corte de Quiebras**", el que conllevó la emisión de nuevos bonos garantizados con vencimiento al año dos mil dieciocho, emitidos por Alsacia, y garantizados por Panamerican, Express, Eco Uno y Camden, en adelante los "**Nuevos Bonos Garantizados**".  Los términos y condiciones de los Nuevos Bonos Garantizados están regidos en un contrato de emisión de bonos en idioma inglés, regido por ley de Nueva York, suscrito en esta misma fecha, denominado "*New Notes Indenture*", en adelante el "**Nuevo Contrato de Emisión de Bonos**".  En el referido Nuevo Contrato de Emisión de Bonos se describen los términos, condiciones y características de los Nuevos Bonos Garantizados, así como los demás términos y condiciones a las que quedarán sometidas Alsacia, como emisor y Express, Panamerican, Eco Uno y Camden, como garantes, en adelante los "**Garantes**".  Una copia del Plan de Reestructuración y del Nuevo Contrato de Emisión de Bonos se protocolizó con esta misma fecha, en esta misma Notaría, bajo los números de repertorio [•] y [•], respectivamente.

**/Tres/ Condiciones de los Nuevos Bonos Garantizados**.  De acuerdo al Plan de Reestructuración, tenedores calificados de los bonos recibirán nuevos bonos o *New Notes* a ser emitidos por Alsacia con fecha [_] de diciembre de dos mil catorce, por un monto de capital aproximado de trescientos sesenta y cuatro millones cuatrocientos treinta y tres mil cuatrocientos sesenta y seis coma sesenta y siete Dólares, más los intereses devengados y no pagados.  Estos nuevos bonos tendrán un vencimiento inicial al treinta y uno de diciembre de dos mil dieciocho, pudiendo ser prorrogados caso de que se obtenga una extensión, al menos hasta el día veintidós de abril del año dos mil veintiuno, del Contrato de Concesión de Alsacia y del contrato de concesión suscrito entre Express y el Ministerio de Transportes y Telecomunicaciones de Chile, mediante instrumento privado de fecha veintitrés de diciembre de dos mil once, relativo a [la Unidad de Negocio Troncal número cuatro de la ciudad de Santiago de Chile], y sus modificaciones a esta fecha, en adelante la **"Concesión Express";** o suscriban tanto Alsacia como Express, en reemplazo de la Concesión Alsacia y la Concesión Express, nuevos contratos de concesión con el Ministerio de Transporte cuya duración se extienda al menos hasta del día veintidós de abril del año dos mil veintiuno.  Los nuevos bonos devengarán intereses a una tasa de ocho por ciento anual y tendrán amortizaciones semestrales pagaderas los días veintidós de junio y veintidós de diciembre de cada año, así como amortizaciones obligatorias, en el caso de exceso de caja, los días treinta y uno de enero y treinta y uno de julio de cada año.  El pago de capital e intereses de los Nuevos Bonos Garantizados, y de las Cantidades Adicionales, según dicho término se define más adelante, si las hubiere, se efectuará en Dólares por el Deudor y/o los Garantes a través del Representante de los Tenedores de Bonos como agente pagador, o los Agentes Pagadores, en caso que el Deudor hubiese designado un Co-Agente Pagador, de acuerdo a los términos y condiciones del Nuevo Contrato de Emisión de Bonos, por cuenta del Deudor, al cierre de la jornada de negocios de Nueva York, mediante transferencia electrónica a la cuenta registrada del correspondiente Tenedor de Bonos, según dicho término se define más adelante.

**/Cuatro/ Impuestos**. El Deudor deberá efectuar todos los pagos de los Nuevos Bonos Garantizados libres de cualquier impuesto, presente o futuro, derechos, multas u otros cargos, y sin deducción o retención de ningún tipo, impuesto cobrado o retenido en Chile.  En caso que la ley requiera que el

Deudor efectúe retención o deducción de cualquier impuesto, comisiones, derechos, encajes y cargas similares, de cualquier pago que deba efectuar en relación a los Nuevos Bonos Garantizados, deberá pagar a los tenedores de los Nuevos Bonos Garantizados, en adelante los "Tenedores de Bonos", aquellas cantidades adicionales que sean necesarias para que perciban, luego de dichas deducciones o retenciones, una cantidad equivalente al monto que habrían recibido de no mediar las mencionadas deducciones o retenciones, en adelante las "**Cantidades Adicionales**", conforme a lo dispuesto en el Nuevo Contrato de Emisión de Bonos.

**/Cinco/ Causales de Incumplimiento**. Se deja constancia que el Nuevo Contrato de Emisión de Bonos contempla diversas situaciones cuyo acaecimiento constituye una Causal de Incumplimiento */Event of Default/* de las obligaciones bajo el Nuevo Contrato de Emisión de Bonos, en adelante cada una de ellas una "**Causal de Incumplimiento**".  En virtud de estipulaciones contenidas en el Nuevo Contrato de Emisión de Bonos, así como de otros instrumentos suscritos en idioma español y regidos por ley chilena, el íntegro, efectivo y oportuno cumplimiento de todas las obligaciones de los Nuevos Bonos Garantizados y del Nuevo Contrato de Emisión de Bonos se encuentra total e incondicionalmente garantizado en forma solidaria por los Garantes.

**/Seis/ Referencias**. Para los efectos de lo establecido en el presente contrato, el Representante de los Tenedores de Bonos, los Tenedores de Bonos, y el Agente de Garantías Chileno se denominarán en adelante, conjuntamente, las "**Partes Garantizadas**".  Asimismo, todas y cada una de las obligaciones del Deudor y de los Garantes a favor de los Tenedores de Bonos bajo los Nuevos Bonos Garantizados y el Nuevo Contrato de Emisión de Bonos se denominarán, en adelante, "**Obligaciones Garantizadas**", las que incluyen, pero no se limitan a, la obligación de pagar el capital de los Nuevos Bonos Garantizados, sus intereses, comisiones, como asimismo, cualquier otra suma que se adeude en virtud del Nuevo Contrato de Emisión de Bonos como asimismo, a las prórrogas, renovaciones o modificaciones que pueden ser acordadas en relación a los Nuevos Bonos Garantizados, las costas y costos de cobranza, si los hubiere, de los Nuevos Bonos Garantizados, o cualquier otro instrumento que documente las Obligaciones Garantizadas; y en general, con el fin de garantizar el íntegro, efectivo y oportuno cumplimiento de todas las Obligaciones Garantizadas, y aquellas derivadas de las mismas por disposición de la ley; y sea que dichas obligaciones sean de la esencia, de la naturaleza o meramente accidentales de los actos y contratos de que emanen, y sea que su cumplimiento sea exigible a las épocas convenidas o anticipadamente, en el evento de su aceleración, e incluyendo asimismo, el reembolso de las costas y gastos de cobranza, judiciales o extrajudiciales, incluidos honorarios razonables de abogados, si existieren, en que se incurra con ocasión de gestiones o demandas de cobro o ejecución de estas prendas; y se extiende además a toda obligación que contraiga el Deudor y/o los Garantes en instrumentos que pueda otorgar o aceptar en el futuro, en sustitución o reemplazo, o bien, en forma adicional a aquellos que hayan sido suscritos y entregados a las Partes Garantizadas, respecto de cualesquier documentos o instrumentos donde consten las Obligaciones Garantizadas, incluyendo cualquier endeudamiento adicional preferente */Senior Indebtedness/*, según dicho término se define más adelante, que pueda celebrarse en el futuro.

**/Siete/ Mandato de Agencia de Garantías.** [Completar de acuerdo a información que corresponda].

**/Ocho/ Contrato de Agencia de Garantías**. [Idem]

**/Nueve/ Acciones Prendadas**. Los Accionistas son dueños de la totalidad de las acciones [ordinarias, nominativas, de una sola serie, sin valor nominal], emitidas por Inversiones Eco Uno S.A., suscritas e íntegramente pagadas, inscritas a sus nombre en los folios número dos , tres , cuatro, cinco, seis, y siete del Registro de Accionistas de la Sociedad y que constan en los títulos de acciones número dos, tres, cuatro, cinco, seis, siete, ocho y nueve /en adelante las "**Acciones**"/.

**/Diez/ Definiciones**. Con excepción de los nombres propios, los términos en mayúsculas que se utilizan en esta escritura, y que no hayan sido expresamente definidos en la misma, tendrán el significado que se atribuye a dichos términos en el Nuevo Contrato de Emisión de Bonos y en el Contrato de Agencia de Garantías, y en las modificaciones que a dichos contratos puedan acordar sus partes de tiempo en tiempo.

**TERCERO: Prenda sin Desplazamiento**. Con el objeto de garantizar el cumplimiento íntegro, efectivo y oportuno por parte del Deudor de todas y cada una de las Obligaciones Garantizadas, los Accionistas, debidamente representados, por este acto constituyen en favor del Agente de Garantías, actuando por sí y en representación de las Partes Garantizadas **/Uno/** prenda sin desplazamiento de primer grado sobre las Acciones, de conformidad al artículo catorce de la Ley veinte mil ciento noventa /en adelante, la "**Ley de Prenda sin Desplazamiento**"/, el Reglamento del Registro de Prendas sin Desplazamiento, contenido en el Decreto Supremo número setecientos veintidós, conjunto del Ministerio de Justicia y del Ministerio de Hacienda, publicado en el Diario Oficial de veintitrés de octubre de dos mil diez /el "**Reglamento de Prenda sin Desplazamiento**"/ y a los términos y condiciones del presente instrumento, y **/Dos/** prenda sin desplazamiento de primer grado de conformidad al artículo noveno de la Ley de Prenda sin Desplazamiento, el Reglamento de Prenda sin Desplazamiento y a los términos y condiciones del presente instrumento, sobre todas las acciones que se emitan por Eco Uno y que los Accionistas suscriban o adquieran por cualquier causa en el futuro, en adelante también las "**Acciones Futuras**", y conjuntamente con las Acciones, las "**Acciones Prendadas**". Conforme a lo establecido en el artículo noveno de la Ley de Prenda sin Desplazamiento, el derecho real de prenda sobre las Acciones Futuras se adquirirá una vez que éstas sean adquiridas por cada uno de los Accionistas, y se entenderá constituido el derecho real de prenda desde la fecha de la inscripción del presente instrumento en el Registro de Prendas sin Desplazamiento.

**CUARTO: Extensión.** Las Partes acuerdan que la prenda sin desplazamiento que se constituye por el presente instrumento tiene por objeto garantizar al Agente de Garantías, actuando por sí y en representación de las Partes Garantizadas, el íntegro, efectivo y oportuno cumplimiento de todas y cada una de las Obligaciones Garantizadas, incluyendo pero no limitado a, la obligación de pagar el capital de los préstamos otorgados conforme al Nuevo Contrato de Emisión de Bonos, de los Nuevos Bonos, sus intereses, comisiones, como asimismo cualquier otra suma que se adeude en virtud de los mismos, incluyendo pero no limitado a, impuestos, tributos, contribuciones, derechos, cargas, retenciones, honorarios, remuneraciones, cargos financieros, gastos reembolsables, indemnizaciones de perjuicios, aumentos de costos, desembolsos y cualquier otra suma debida por el Deudor a las Partes Garantizadas bajo los documentos del financiamiento /*Finance Agreements*, según dicho término se define en el

Nuevo Contrato de Emisión de Bonos/ en adelante los "**Documentos del Financiamiento**", y garantiza asimismo las prórrogas y renovaciones que puedan ser acordadas en relación a las Obligaciones Garantizadas; y en general, garantizar el íntegro, efectivo y oportuno cumplimiento de todas las Obligaciones Garantizadas y aquéllas derivadas de las mismas por disposición de la ley; y sea que dichas Obligaciones Garantizadas sean de la esencia, de la naturaleza o meramente accidentales de los actos y contratos que emanen y sea que su cumplimiento sea exigible a las épocas convenidas o anticipadamente, en el evento de su aceleración. Las prenda constituida por el presente instrumento garantiza, asimismo, el reembolso de las costas y gastos razonables de cobranza, judiciales o extrajudiciales, incluidos honorarios razonables de abogados, si existieren, en que se incurra con ocasión de gestiones o demandas de cobro o ejecución de esta prenda; y se extiende además a toda obligación que contraiga el Deudor en instrumentos que pueda otorgar o aceptar en el futuro, en sustitución o reemplazo de, o bien en forma adicional a los Documentos del Financiamiento, según dicho término se define más adelante, que hayan sido suscritos entre el Deudor y el Agente de Garantías o las Partes Garantizadas o por quienes los sucedan o reemplacen.

Se deja constancia que para dar cumplimiento a lo dispuesto en el artículo Tercero numeral cuatro de la Ley de Prenda sin Desplazamiento, las Partes reconocen que la presente prenda sin desplazamiento garantiza el cumplimiento de la totalidad de las Obligaciones Garantizadas.

**QUINTO: Prohibición**. Por este acto y debidamente representados de la manera indicada en la comparecencia de este instrumento, los Accionistas, se obligan, mientras la prenda y las Obligaciones Garantizadas que dan cuenta el presente instrumento se encuentren vigentes, a no gravar, enajenar, disponer, constituir garantías reales o cualquier carga, gravamen, prohibición o derechos en favor de ninguna persona, ni impedimento o restricción alguna que pudiere afectar o embarazar el libre uso, goce o disposición de, ni celebrar acto o contrato alguno sobre las Acciones Prendadas, sin la autorización previa y escrita del Agente de Garantías, dada de conformidad con lo establecido en el Nuevo Contrato de Emisión de Bonos y los otros Documentos del Financiamiento. Con todo, los Accionistas podrán siempre transferir todo o parte de las Acciones en la medida que la referida transferencia se encuentre permitida conforme a los Documentos del Financiamiento, siempre que dichas Acciones sigan prendadas bajo este documento.

**SEXTO: Título y Valor.** Los Accionistas, a través de sus representantes ya individualizados, declaran que sus respetivas Acciones **/i/** les pertenecen como únicos y exclusivos titulares, y que han sido legalmente adquiridas y se encuentran inscritas a sus nombres respectivos en el Registro de Accionistas de Eco Uno, encontrándose todas ella debida y completamente suscritas, **/ii/** salvo por aquellos constituidos en virtud de este instrumento o constituidos o permitidos por otro Documento del Financiamiento, se encuentran libres de gravámenes, cargos, litigios, prohibiciones de gravar y enajenar u otras restricciones, embargos, medidas precautorias o prejudiciales, acciones resolutorias, derechos preferentes en favor de terceros y prendas de ningún tipo, y **/iii/** están totalmente pagadas y no están sujetas a opciones, promesas de venta, ventas condicionales o a plazo, ni a ningún otro acto o contrato destinado a transferir su dominio o darlas en garantía de otras obligaciones, y que no existe impedimento alguno que pueda afectar su libre disposición o la constitución de la prenda sin desplazamiento y prohibición de gravar y enajenar de que da cuenta esta escritura. Del mismo modo, los

Accionistas declaran que no existe impedimento alguno, tanto respecto de sus respectivas Acciones como respecto de sí mismos, para celebrar la prenda y prohibición de que da cuenta este instrumento. Declaran y garantizan de igual forma que las Acciones les confieren, como titulares y dueños de las mismas, el derecho a percibir las utilidades y cualquier otro beneficio económico a ser distribuido por Eco Uno a sus accionistas, de conformidad con los estatutos de ésta. Finalmente, los Accionistas se obligan, a menos que los demás Documentos del Financiamiento permitan lo contrario, a velar y responder por el hecho de que las Acciones Futuras estarán, a la fecha de su adquisición, libres de todo tipo de gravámenes, cargos, litigios, prohibiciones de gravar y enajenar u otras limitaciones, embargos, medidas precautorias o prejudiciales, acciones resolutorias y derechos preferentes de terceros; y estarán totalmente pagadas y no estarán sujetas a promesas de venta, opciones, ventas condicionales o a plazo, ni a ningún otro acto o contrato destinado a transferir el dominio de las Acciones Futuras o darlas en garantía de otras obligaciones, ni otros impedimentos que afecten su libre disposición o el alcance de esta prenda. Todo lo anterior, con excepción de los gravámenes o limitaciones permitidos por los demás Documentos del Financiamiento.

**SÉPTIMO: Alcance de la Prenda y Prohibición.  A/ Aumentos de valor y acciones liberadas de pago.** La prenda de las Acciones de que da cuenta este instrumento, así como la prenda que por el solo ministerio de la ley se entienda constituida sobre las Acciones Futuras, comprenderá y se extenderá a todos los aumentos que ellas reciban y a los frutos y beneficios que produzcan. En consecuencia, los aumentos de valor, beneficios y las acciones que se repartan liberadas de pago y que correspondan a las Acciones Prendadas, quedarán comprendidas en la prenda que por el presente instrumento se constituye. El Agente de Garantías, para el beneficio de las Partes Garantizadas, queda autorizado para recibir las devoluciones de capital que pudieren acordarse y para abonar estos valores a las Obligaciones Garantizadas, si estuvieren vencidas. En el caso de emisión de nuevas acciones liberadas de pago o de emisión de nuevos títulos por aumentos de valor de las Acciones Prendadas, se entenderán afectos los nuevos valores que se emitan a las prendas que en el presente instrumento se constituyen, quedando facultado el Agente de Garantías, en forma exclusiva, para retirar de Eco Uno los títulos correspondientes, sin que puedan ser entregados por Eco Uno a alguno de los Accionistas u otras personas, debiendo anotarse la prenda sobre estos nuevos títulos en el Registro de Accionistas de Eco Uno, a sola petición del Agente de Garantías o del Notario Público que lo solicite en su nombre, renunciando en consecuencia cada uno de los Accionistas a realizar dichas gestiones. En el caso de emisión de nuevos títulos por aumento de valor de las Acciones Prendadas, dichos nuevos títulos sustituirán a los anteriores, quedando el Agente de Garantías facultado para efectuar el canje correspondiente con Eco Uno.

**B/ Alcance de la prenda en caso de división o fusión de Eco Uno.** Sin perjuicio de las restricciones al efecto establecidas en los Documentos del Financiamiento, para el caso de división o fusión de Eco Uno, en su calidad de sociedad emisora de las Acciones Prendadas, queda expresamente convenido que la prenda sobre las Acciones Prendadas se extiende asimismo a todas las acciones o derechos sociales de las nuevas sociedades que se formen a virtud de la división o fusión o que subsistan luego de ella, que correspondan o corresponderían a cada uno de los Accionistas como propietarios de los derechos sociales o de las Acciones o Acciones Futuras respectivas, las cuales quedarán automáticamente

gravadas con la prenda aquí pactada. Queda autorizado el Agente de Garantías, en forma exclusiva, en todos los casos precedentes, para retirar los títulos correspondientes, de existir, quedándole prohibido a Eco Uno entregarlos a los respectivos Accionistas u otras personas. En tales casos deberá anotarse la prenda en los correspondientes Registros de Accionistas, de proceder, a sola petición del Agente de Garantías o del Notario Público que los solicite en su nombre, renunciando en consecuencia cada uno de los Accionistas a realizar dichas gestiones.

**OCTAVO: Ejercicio de los Derechos**. **/A/** En la medida que el Deudor se encuentre cumpliendo de manera íntegra, efectiva y oportuna todas y cada una de las Obligaciones Garantizadas, cada uno de los Accionistas conservará el pleno ejercicio de los derechos que como legítimo titular de las Acciones Prendadas le corresponden, incluidos el ejercicio del derecho a participar en las juntas generales de accionistas, en caso de haberlas, con derecho a voz y a voto, el derecho de cobrar y percibir dividendos, y el ejercicio de aquellos otros derechos que pudieren corresponderles. No obstante lo anterior, cualquier beneficio pagado o pagadero a los Accionistas con ocasión de su titularidad de las Acciones Prendadas, quedará comprendido en esta prenda sin desplazamiento de primer grado, sin perjuicio de las distribuciones que se puedan efectuar según los términos de los Documentos del Financiamiento. Sin perjuicio de lo expresado, será necesaria la autorización escrita del Agente de Garantías para ejercer el derecho de retiro que los artículos sesenta y nueve y siguientes de la Ley número dieciocho mil cuarenta y seis sobre Sociedades Anónimas, reconocen supletoriamente a cada uno de los Accionista.

**/B/** Sin que implique limitación de lo establecido en la letra /A/ anterior, el ejercicio de los derechos que correspondan a los Accionistas como legítimos titulares de las Acciones Prendadas se efectuará en estricto cumplimiento con lo establecido en los Documentos del Financiamiento.

**C/** Si ocurriere y se mantuviere vigente un Evento de Incumplimiento /*Event of Default* según dicho término se define en el Nuevo Contrato de Emisión de Bonos/, el Agente de Garantías, en beneficio de las Partes Garantizadas, previa notificación escrita a Eco Uno y a los respectivos Accionistas, por medio de Notario Público y a contar de la fecha de dicha notificación, con el sólo mérito de la misma y sin que deban acreditar a persona alguna el Evento de Incumplimiento de que se trate, adquirirá el pleno y exclusivo ejercicio de todos los derechos, tanto económicos como de otra índole, que legalmente cada uno de los Accionistas tendría de otra forma derecho a ejercer como legítimos titulares de las Acciones Prendadas, incluyendo, especialmente, el derecho a cobrar y percibir dividendos, debiendo los Accionistas, en este caso, abstenerse de ejercer dichos derechos así como cualquier otro derecho que le hubiese correspondido en razón de su respectiva participación accionaria. Para estos efectos, cada uno de los Accionistas faculta desde ya, sujeto a la verificación de un Evento de Incumplimiento, lo que no deberá ser acreditado por el Agente de Garantías, y en tanto el mismo Evento de Incumplimiento se mantuviere vigente, al Agente de Garantías en forma irrevocable, por cuenta de quien acepta su representante, para que ejerza el derecho a voz y voto que corresponda a las Acciones Prendadas, así como para que cobre y perciba los dividendos y ganancias y demás beneficios antes referidos a los cuales se extiende automáticamente esta prenda, incluyendo las devoluciones de capital. Los beneficios que así sean percibidos por el Agente de Garantías deberán ser aplicados al pago de las Obligaciones Garantizadas. Los Accionistas, en virtud del presente instrumento y sujeto a la verificación de un Evento de Incumplimiento, lo que no deberá ser acreditado por el Agente de Garantías,  y en tanto el mismo

Evento de Incumplimiento se mantuviere vigente, prohíben a Eco Uno pagar todo o parte de los dividendos y demás beneficios a que se refiere esta cláusula, a los que se extienden automáticamente esta prenda, en otras manos diversas del Agente de Garantías a contar de la fecha en que se le practique la notificación por un Notario Público a que se ha hecho referencia con anterioridad.

**/D/** Toda reforma a los estatutos de Eco Uno solo podrá efectuarse en la medida que se encuentre permitida de conformidad con el Nuevo Contrato de Emisión de Bonos y los demás Documentos del Financiamiento.

**NOVENO: Inscripción y Anotación**. **/A/** La prenda que por este instrumento se otorga deberá ser registrada, a costa del Deudor, en el Registro de Prendas sin Desplazamiento, de acuerdo a lo establecido en el artículo veinticuatro de la Ley de Prenda sin Desplazamiento.

**/B/** En el caso de emitirse Acciones Futuras, los Accionistas estarán obligados a llevar a cabo y suscribir, individualmente, una escritura de declaración que, como Anexo Uno, se protocoliza conjuntamente al presente instrumento, bajo el mismo número de repertorio o, en el evento de ser requerido por el Registro de Prendas sin Desplazamiento, una escritura de modificación a la presente escritura, a ser suscrita conjuntamente con el Agente de Garantías, y a requerir del Notario Público ante el cual se haya otorgado dicha escritura de declaración o modificación su inscripción en el Registro de Prendas sin Desplazamiento, y a suscribir todos aquellos actos o contratos, sea por instrumento público o privado, destinados a individualizar las Acciones Futuras que por este acto se prenden una vez que ellas lleguen a existir, dentro de los quince días siguientes a que dichas Acciones Futuras hayan sido suscritas por el respectivo Accionista.

**/C/** Por el presente acto, y para el evento en que uno cualquiera de los Accionistas no dé cumplimiento a lo establecido en el literal /B/ precedente, en adelante el "**Accionista Infractor**", los Accionistas, individualmente, confieren al Agente de Garantías un mandato especial gratuito e irrevocable, en los términos del artículo doscientos cuarenta y uno del Código de Comercio, con facultad de autocontratar, para el solo efecto de que el Agente de Garantías, actuando en nombre y representación del Accionista Infractor respectivo, y por sí y en representación de las Partes Garantizadas, pueda llevar a cabo y suscribir, siendo facultativo de su parte y sin asumir ninguna obligación al respecto, todos aquellos actos o contratos, sea por instrumento público o privado, necesarios para efectuar la declaración o modificación a que se refiere el literal /B/ precedente e individualizar las Acciones Futuras una vez que ellas sean adquiridas por el Accionista Infractor, pudiendo asimismo proporcionar dicha información a los registros competentes, según estime apropiado el Agente de Garantías.

**D/** Don Fabio Junca Hernández, ya individualizado, en representación de Eco Uno, declara que, estando debidamente autorizado para recibir notificaciones en nombre de su representada, por el presente instrumento  Eco Uno queda expresamente notificada de la prenda y prohibición aquí constituidas, comprometiéndose, en representación de Eco Uno, a dar pleno cumplimiento a sus disposiciones en todo aquello que le atañe. Sin perjuicio de lo anterior, la prenda y prohibición constituidas en virtud de esta escritura pública, serán notificadas, registradas e inscritas en el Registro de Accionistas de la Sociedad, por un Notario Público, conforme al artículo veintitrés de la Ley sobre Sociedades Anónimas.

**DÉCIMO: Derechos del Agente de Garantías.** El Agente de Garantías, actuando por sí y en representación de las Partes Garantizadas, gozará respecto del Deudor, de Eco Uno, de cada uno de los Accionistas y de terceros, de los beneficios, privilegios y preferencias que otorga la ley a los acreedores prendarios.

**UNDÉCIMO: Aceptación del Agente de Garantías**. Por el presente acto, el Agente de Garantías, actuando por sí y en nombre y representación de las Partes Garantizadas, representado en la forma señalada en la comparecencia, acepta la prenda sin desplazamiento de primer grado y las prohibiciones constituidas por los Accionistas en su favor en virtud del presente instrumento.

**DUODÉCIMO**: **Deberes Adicionales de cada uno de los Accionistas.** Mientras la presente prenda y prohibición se encuentren vigentes, cada uno de los Accionistas **/i/** defenderá sus respectivas Acciones Prendadas de cualquier reclamo o demanda de terceros, llevando a cabo a su costo exclusivo, todas las acciones judiciales y extrajudiciales que sean necesarias y razonables para mantener el dominio y la libre posesión de sus respectivas Acciones Prendadas, **/ii/** Notificará al Agente de Garantías mediante carta certificada dirigida a su domicilio señalado en la comparecencia, todo embargo o incautación, que haya sufrido cualquiera de sus Acciones Prendadas, dentro de los diez días hábiles siguientes a la ocurrencia del hecho, **/iii/** suscribirá todos aquellos instrumentos y realizará todos aquellos actos que sea necesario y razonable ejecutar con el objeto de dar cumplimiento a las obligaciones indicadas en las cláusulas séptima y octava anterior, incluyendo, sin que importe limitación, los instrumentos que sean necesarios celebrar para hacer extensivas las prendas y prohibiciones que por este acto se constituyen a nuevas acciones de pago o liberadas de pago a las que tenga derecho, y **/iv/** entregará al Agente de Garantías todos los títulos, certificados y demás documentos que den cuenta del dominio del respectivo Accionista sobre cualesquiera derechos patrimoniales sobre sus respectivas Acciones Prendadas, incluyendo, sin limitación, dividendos y ganancias, acciones liberadas de pago, derechos preferentes u opciones de cualquier naturaleza, ya sean de suscripción preferente de acciones, de bonos convertibles en acciones o de cualesquiera otros valores que confieran derechos futuros sobre Eco Uno.

**DÉCIMO TERCERO: Ejecución de la Prenda**. Por este acto, cada uno de los Accionistas, debidamente representados del modo indicado en la comparecencia de este instrumento, acepta y conviene en beneficio del Agente de Garantías, actuando por sí y en nombre y representación de las Partes Garantizadas, que la ocurrencia de cualquier Evento de Incumplimiento /*Event of Default,* según dicho término se define en el Nuevo Contrato de Emisión de Bonos/, lo que será acreditado con el solo mérito de la notificación a que se refiere la letra C/ de la cláusula octava precedente, producirá a su respecto la exigibilidad inmediata y anticipada, y como si fueran de plazo vencido, de las Obligaciones Garantizadas, y por ende, de esta prenda sobre acciones, como también de todo interés y gastos a que ella diere lugar, pudiendo seguirse en contra de los Accionistas y/o Eco Uno, todas y cada una de las acciones de cobro y/o de cualquier naturaleza derivadas de esta prenda sobre acciones, para obtener el cumplimiento de las Obligaciones Garantizadas.

**DÉCIMO CUARTO: Alzamiento**. Los Accionistas no podrá reclamar el alzamiento de la prenda y prohibición constituidas por este instrumento, en todo o parte, mientras no se haya dado íntegro y total cumplimiento por parte del Deudor a todas y cada una de las Obligaciones Garantizadas, conforme a lo

establecido en las cláusulas que preceden o bien éstas se hayan extinguido completamente por otra causa de conformidad a la ley, el Nuevo Contrato de Emisión de Bonos, o los demás Documentos del Financiamiento. En consecuencia, una vez que todas las Obligaciones Garantizadas hayan sido íntegra, efectiva y oportunamente cumplidas, y el Deudor haya dado cumplimiento a lo estipulado bajo el Nuevo Contrato de Emisión de Bonos, o los demás Documentos del Financiamiento, el Agente de Garantías se obliga, a solicitud escrita de los Accionistas, a suscribir los documentos necesarios para dar cuenta del alzamiento y cancelación de la presente prenda y prohibiciones, y concurrir asimismo a las inscripciones, alzamiento y cancelaciones ante los registros respectivos, que fueren necesarias al efecto.

**DÉCIMO QUINTO: Mandato para Notificaciones**. Sin perjuicio de cualquiera designación de mandatarios para recibir notificaciones judiciales que se haya hecho o que se haga en el futuro, adicionalmente los Accionistas confieren poder especial irrevocable a don [●] y a don [●] para que, actuando indistinta y separadamente puedan recibir, por y en representación de cada uno de los Accionistas, notificaciones y requerimientos judiciales o extrajudiciales, en cualquier gestión, procedimiento o juicio, cualquiera que fuese el procedimiento aplicable o el tribunal o autoridad que tuviere encomendado su conocimiento y que diga relación con las Obligaciones Garantizadas o los instrumentos otorgados para garantizarlas, incluyendo el presente instrumento. Consecuentemente, si cualquier notificación o requerimiento se realiza a los mandatarios anteriormente mencionados, el Accionista respectivo se considerará válidamente notificado o requerido con respecto al acto, procedimiento o demanda en cuestión. En el ejercicio del poder irrevocable que por este acto se otorga, cada mandatario estará ampliamente facultado para representar a cada uno de los Accionistas, ya sea individual o conjuntamente, en el orden judicial, incluyendo las facultades de recibir notificaciones y actuar con las atribuciones señaladas en el primer inciso del artículo séptimo del Código de Procedimiento Civil de la República de Chile. Presentes a este acto don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula nacional de identidad número [●] y don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula nacional de identidad número [●], ambos domiciliados para estos efectos en [●]; los comparecientes mayores de edad, quienes acreditan su identidad con las cédulas mencionadas y exponen, que aceptan el poder especial irrevocable que se otorga en esta cláusula y se obligan a no renunciar el mismo sin el consentimiento escrito del Agente de Garantías en cuyo beneficio ha sido otorgado, para lo cual los Accionistas deberán, en forma previa, designar nuevo mandatario judicial con las mismas facultades y en los mismos términos de esta cláusula, nuevo mandatario que deberá comparecer y aceptar el mandato otorgado en el mismo instrumento de renuncia, ser una persona natural residente permanente en Chile y ser aprobado previamente por el Agente de Garantías. Asimismo, los Accionistas se obligan a mantener en todo momento dos o más apoderados con las mismas facultades y en los mismos términos de esta cláusula en caso que el mandato irrevocable otorgado en esta cláusula terminare por fallecimiento de cualquiera de los apoderados, o en caso que cualquiera de ellos dejare de ser residente permanente en Chile. El poder otorgado por este acto por los Accionistas no revoca ningún poder otorgado con anterioridad a esta fecha y, en el evento de otorgar otro poder en el futuro, no se entenderá por ese solo hecho revocado el poder otorgado en el presente instrumento.

**DÉCIMO SEXTO: Poder Judicial**. El Agente de Garantías designa y confiere poder a don [●], don [●] y don [●] para que, actuando cualquiera de ellos indistinta y separadamente, puedan ejercer judicial o

extrajudicialmente los derechos y acciones prendarias, de cobro de dinero y demás que correspondan al Agente de Garantías en virtud de lo expresado y estipulado en la presente escritura, poder judicial que incluye las facultades de ambos incisos del artículo séptimo del Código de Procedimiento Civil, que se dan por reproducidas. Los Accionistas toman conocimiento de este poder y se obliga a reconocer y aceptar su validez y eficacia cada vez que uno cualquiera de los mandatarios lo invoque judicial o extrajudicialmente.

**DÉCIMO SÉPTIMO: Declaraciones Adicionales de los Accionistas**. Los Accionistas, a través de sus representantes, individualizados en la comparecencia de esta escritura, declaran en beneficio del Agente de Garantías, que cada uno de ellos tiene plena capacidad para hacer las declaraciones que esta escritura contiene y para otorgar el presente contrato de prenda sin desplazamiento. Asimismo, cada uno de los Accionistas declara que esta escritura ha sido debidamente suscrita por sus representantes autorizados y que de ella emanan obligaciones legales, válidas y exigibles, y que la suscripción de este instrumento y el cumplimiento de cualquiera de sus términos o estipulaciones no contraviene ninguna ley, regla, regulación, juicio, orden o decreto obligatorio para éste, ni provoca ningún incumplimiento de, ni constituye ninguna falta a sus respectivos estatutos o a cualquier contrato, garantía, préstamo u otro convenio o instrumento del que el Accionista respectivo sea parte o por el cual éstos o sus bienes puedan estar obligados. A mayor abundamiento, cada uno de los Accionistas declara que cuenta con todas las autorizaciones corporativas, gubernamentales, de terceros o de cualquier otra índole, que sean necesarias para la celebración y cumplimiento del presente contrato.

**DÉCIMO OCTAVO: Título Suficiente**. Los Accionistas declaran en favor del Agente de Garantías que reconocerán copia autorizada de esta escritura, conjuntamente con una copia simple de uno cualquiera de, el Nuevo Contrato de Emisión de Bonos, o de los otros Documentos del Financiamiento, dependiendo del documento que contenga la obligación incumplida, como buen y suficiente título para iniciar todas las acciones que en derecho correspondan en relación con las Obligaciones Garantizadas. Lo dispuesto en este instrumento no se considerará bajo ninguna circunstancia como limitación de los derechos que correspondan al Agente de Garantías actuando por sí y en nombre y representación de las Partes Garantizadas, en virtud de la ley, ni como una modificación, sustitución o limitación de los derechos otorgados al Agente de Garantías, actuando por sí y en nombre y representación de las Partes Garantizadas, en virtud del Nuevo Contrato de Emisión de Bonos, y de los otros Documentos del Financiamiento. Asimismo, se deja expresa constancia que la prenda y prohibición constituidas por esta escritura, son sin perjuicio de cualesquiera otra garantía y prohibición que, de conformidad a los Documentos del Financiamiento, se hubiere constituido o se constituya por cualquiera de los Accionistas, Eco Uno, el Deudor y/o por terceros, sea real o personal, para caucionar las Obligaciones Garantizadas.

**DÉCIMO NOVENO: Impuestos y Sucesores. Cesión. Uno/** Los Accionistas declaran que este contrato de prenda y prohibiciones y los poderes que se otorgan por este instrumento, así como el ejercicio de los derechos que puedan derivar de ellos, no se encuentran sujetos a impuestos ni a cargos de ninguna naturaleza y en consecuencia, el Agente de Garantías puede libremente ejercer sus derechos. Asimismo, las Partes acuerdan que esta prenda y prohibiciones beneficiarán a, y los derechos que otorgan podrán ser ejercidos por el Agente de Garantías o por quienes, de acuerdo al Nuevo Contrato de Emisión de

Bonos y al Contrato de Agencia de Garantías revistan o puedan revestir la calidad de sucesores o cesionarios de este, y quienes se subroguen legal o convencionalmente en sus derechos. Tales sucesores o cesionarios, y quienes se subroguen legal o convencionalmente en los derechos, tendrán en contra de los Accionistas los mismos derechos y beneficios que esta escritura otorga al Agente de Garantías, considerándose como tales para todos los efectos legales y contractuales a que haya lugar.

**Dos/** En la medida que corresponda en cumplimiento de las estipulaciones del Nuevo Contrato de Emisión de Bonos, las Partes Garantizadas quedan facultadas para ceder a terceros en todo o parte las Obligaciones Garantizadas y, especialmente, el derecho real de prenda que las cauciona. A mayor abundamiento, las Partes dejan expresa constancia que, en virtud de lo señalado en el artículo treinta y ocho de la Ley de Prenda sin Desplazamiento, la cesión de las Obligaciones Garantizadas hecha de conformidad a los términos indicados en los Documentos del Financiamiento, comprenderá la cesión de la presente prenda sin desplazamiento y de todas las acciones y derechos que emanen o puedan emanar de ella, manteniendo la presente prenda sin desplazamiento la preferencia que gozaba en virtud del crédito cedido.

**VIGÉSIMO: Extinción de Obligaciones**. Se deja constancia que, a menos que los Documentos del Financiamiento permitan lo contrario, toda Obligación Garantizada cuyo pago se haya convenido en moneda extranjera se entenderá extinguida sólo hasta por el monto por el que las demás Partes Garantizadas hayan recibido dicha moneda en divisas de libre convertibilidad y disponibilidad o, si el pago se efectuare en otra moneda, sólo hasta por el monto con el que con dicha moneda puedan adquirir la moneda extranjera con la que haya debido hacérsele el pago en virtud de la convención o la ley, el día hábil siguiente a aquél en que las demás Partes Garantizadas, reciban los dineros en cuestión.

**VIGÉSIMO PRIMERO: Nulidad e Ineficacia**. Si por cualquier causa, una o más de las estipulaciones de este instrumento fueren declaradas nulas o ineficaces, total o parcialmente, dicha declaración no afectará la validez de las demás estipulaciones de este instrumento, el Nuevo Contrato de Emisión de Bonos, y cualquier otro Documento del Financiamiento, o cualesquiera otros documentos relacionados con los mismos.

**VIGÉSIMO  SEGUNDO: Ausencia de Modificación y Novación.** Lo dispuesto en este instrumento no se considerará bajo ninguna circunstancia como modificación, o limitación de los derechos que tengan el Agente de Garantías, las Partes Garantizadas, o el Deudor en virtud de la ley, del Nuevo Contrato de Emisión de Bonos, o de cualquier otro instrumento suscrito en relación con los anteriores, ni constituye bajo ningún concepto una novación.

**VIGÉSIMO TERCERO: Domicilio y Competencia**. Para todos los efectos legales derivados del presente contrato, los Accionistas y Eco Uno fijan su domicilio en la ciudad y comuna de Santiago y se someten a la competencia de los tribunales ordinarios de justicia con asiento en dicha comuna. Este contrato de prenda y prohibición se rige por la ley chilena.

**VIGÉSIMO CUARTO: Gastos**. Los gastos, impuestos, si los hubiere, derechos notariales y de inscripciones y publicaciones, así como los desembolsos de cualquiera naturaleza para el perfeccionamiento de esta prenda, los derivados de las escrituras públicas complementarias que pueda ser necesario otorgar para

clarificar, rectificar o introducir adiciones a este instrumento; y aquellos correspondientes a las cancelaciones o alzamientos de las mismas, serán de exclusivo cargo del Deudor.

**VIGÉSIMO QUINTO: Poder de Inscripción.** Se faculta al portador de copia autorizada de esta escritura pública para llevar a cabo y requerir las inscripciones, anotaciones y subinscripciones que correspondan en los competentes registros, y para realizar todos aquellos actos que sean necesarios o convenientes para el perfeccionamiento de esta prenda y prohibiciones.

**VIGÉSIMO SEXTO: Poder de Rectificación.** Los comparecientes de esta escritura otorgan poder irrevocable a don [●], don [●] y don [●]; y a don [●], don [●] y don [●], para que, actuando uno cualquiera de los tres primeros con uno cualquiera de los tres segundos, puedan realizar las rectificaciones o aclaraciones que sean necesarias realizar al presente contrato de prenda, pudiendo suscribir las escrituras públicas o instrumentos privados que se requiera.

**VIGÉSIMO SÉPTIMO: Denominación de las Cláusulas.** Las denominaciones asignadas por las partes a las distintas estipulaciones de este contrato han sido establecidas sólo para referencia y facilidad de su lectura, sin afectar el significado o alcance que la cláusula en su integridad pueda tener distintos que dicha denominación.

PERSONERÍAS

INSERTAR ANEXOS.

**ANEXO**

**DECLARACIÓN**

**PRENDA SIN DESPLAZAMIENTO SOBRE ACCIONES**

**[ACCIONISTA]**[1]

EN SANTIAGO DE CHILE, a [●] de [●] de [●], ante mí, [**NOTARIO PÚBLICO**], comparece: **/Uno/** don [●], [nacionalidad], [estado civil], [profesión u oficio], cédula [nacional] de identidad [para extranjeros] número [●], en nombre y representación, según se acreditará, de [●] /en adelante también denominada el "**Accionista**"/, ambos domiciliados para estos efectos en [●]; el compareciente mayor de edad, quien acredita su identidad con la cédula mencionada y expone: **PRIMERA: ANTECEDENTES. Uno/ Prenda sobre acciones. A/** Según consta en el contrato de prenda sin desplazamiento sobre acciones, otorgado por escritura pública en la Notaría de Santiago de don [●], de fecha [●] de [●] de dos mil catorce, repertorio número [●] guión dos mil catorce /en adelante, el "**Contrato de Prenda**"/, el Accionista, en su calidad de accionista de Inversiones Eco Uno S.A., una sociedad anónima debidamente constituida de acuerdo a las leyes de Chile /en adelante, "**Eco Uno**"/, con el objeto de garantizar el cumplimiento íntegro, efectivo y oportuno por parte de Inversiones Alsacia S.A., en adelante el "**Deudor**", de todas y cada una de las Obligaciones Garantizadas /según este término se define en el Contrato de Prenda/, constituyó: **/i/** prenda sin desplazamiento de primer grado y prohibición de gravar y enajenar sobre todas las acciones de su propiedad emitidas por Eco Uno a la fecha del Contrato de Prenda, de conformidad al artículo catorce de la ley veinte mil ciento noventa /la "**Ley de Prenda**

---

[1] El mismo formato aplicará para cada uno de los Accionistas que deba firmar la Declaración.

1

**sin Desplazamiento**"/ y su reglamento, y **/ii/** prenda sin desplazamiento de primer grado y prohibición de gravar y enajenar sobre las Acciones Futuras /según se define en el Contrato de Prenda/, de conformidad con el artículo noveno de la Ley de Prenda sin Desplazamiento y su reglamento. **B/** La referida prenda sin desplazamiento bajo el Contrato de Prenda fue debidamente anotada en el Registro de Accionistas de Eco Uno, dejándose constancia de los derechos de prenda y la prohibición que gravan **/i/** las [●] acciones ordinarias, nominativas, de una sola serie, sin valor nominal, emitidas por Eco Uno, inscritas a nombre del Accionista en el folio número [●] del Registro de Accionistas de Eco Uno y que constan en el título de acciones número [●]; y **/ii/** las Acciones Futuras. Asimismo, el Contrato de Prenda fue debidamente inscrito en el Registro de Prendas sin Desplazamiento del Servicio de Registro Civil e Identificación con fecha [●] de [●], bajo el Repertorio número [●]. **Dos/ Adquisición de Nuevas Acciones.** Con fecha [●], el Accionista [suscribió / adquirió] [●] nuevas acciones [ordinarias, nominativas, sin valor nominal, y de una única serie] de Eco Uno /en adelante, las "**Nuevas Acciones**"/, las cuales se encuentran [íntegramente pagadas / pendientes de pago, debiendo efectuarse su pago [indicar condiciones de pago]]. <u>**SEGUNDA: Declaración.**</u> Mediante el presente acto, y en virtud de lo dispuesto en la cláusula novena, letra /B/ del Contrato de Prenda, el Accionista declara y reconoce que las Nuevas Acciones constituyen Acciones Futuras bajo el Contrato de Prenda, por lo que la prenda sin desplazamiento constituida mediante el Contrato de Prenda se hace extensiva a todas y cada una de las Nuevas Acciones, inscritas a nombre del Accionista bajo el folio [●] del Registro de Accionistas de Eco Uno, y que constan en el título de acciones número [●], debiendo dejarse constancia de aquello tanto en el Registro de Accionistas de Eco Uno como en la inscripción del Contrato de Prenda en el Registro de Prendas sin Desplazamiento del Servicio de Registro Civil e Identificación, de ser necesario. Asimismo, el Accionista reconoce que la extensión de la prenda a las Nuevas Acciones: **/i/** opera sin perjuicio del alcance que las disposiciones del Contrato de Prenda puedan tener sobre otras nuevas acciones que Eco Uno pueda emitir en el futuro y que sean suscritas o adquiridas por el Accionista, **/ii/** no perjudica en absoluto la prenda sin desplazamiento ya constituida sobre las acciones de Eco Uno de que el

Accionista ya era titular a la fecha del Contrato de Prenda, todo de acuerdo a los términos y condiciones del Contrato de Prenda y de los demás Documentos del Financiamiento /según dicho término se define en el Nuevo Contrato de Emisión de Bonos, que a su vez se define en el Contrato de Prenda/, y **/iii/** declara y reconoce expresamente que el derecho real de prenda sobre las acciones de que el Accionista era titular a la fecha del Contrato de Prenda y sobre las Nuevas Acciones otorgado en favor del Agente de Garantías Local, actuando por sí y en representación de las Partes Garantizadas, se entiende constituido desde la fecha de la inscripción del Contrato de Prenda en el Registro de Prendas sin Desplazamiento del Servicio de Registro Civil e Identificación, esto es, desde el [●] de [●]. **TERCERA: Alcance de este instrumento.** El presente instrumento complementa el Contrato de Prenda, da por reproducidas todas las disposiciones contenidas en él y se entiende formar parte del mismo para todos los efectos legales y contractuales a que haya lugar, por lo que no modifica las disposiciones del Contrato de Prenda. **CUARTA: Poder de inscripción.** Se faculta al portador de copia autorizada de esta escritura pública para llevar a cabo y requerir las inscripciones, anotaciones y subinscripciones que correspondan en los competentes registros, y para realizar todos aquellos actos que sean necesarios o convenientes para el perfeccionamiento y/o el reconocimiento de esta extensión de la prenda constituida en virtud del Contrato de Prenda. **QUINTA: Poder de rectificación.** El compareciente de esta escritura otorga poder a don [●], don [●] y don [●], para que, actuando uno cualquiera de ellos, indistintamente, pueda realizar las rectificaciones, complementaciones y/o o aclaraciones que sean necesarias realizar al presente instrumento, pudiendo suscribir las escrituras públicas o instrumentos privados que se requiera. **PERSONERÍAS.** La personería de don [●] para representar a **[ACCIONISTA]** consta de la escritura pública de fecha [●] de [●], otorgada en la Notaría de Santiago de don [●].  La personería indicada no se inserta por ser conocida del compareciente y del Notario que autoriza. EN COMPROBANTE y previa lectura, firman los comparecientes junto con el Notario que autoriza.- Se dan copias.- Doy fe.-

Dated                          , 2014

BY:

**GLOBAL PUBLIC SERVICES, S.A.**

IN FAVOUR OF:

**THE BANK OF NEW YORK MELLON**

---

**SHARE CHARGE
IN RESPECT OF SHARES IN
PANAMERICAN INVESTMENTS LTD.**

---

Appleby (Bermuda) Limited
Canon's Court
22 Victoria Street
Hamilton, HM 12
Bermuda

THIS SHARE CHARGE is made on                    , 2014

BY:

**Global Public Services, S.A.,** a company incorporated under the laws of Panama with its registered office at Avenida Santa Clara 555, Huechuraba, Santiago, Chile (the **Chargor**).

IN FAVOUR OF:

**The Bank of New York Mellon**, having its principal place of business at 101 Barclay Street, Floor 7W, New York, New York 10286, United States of America, as trustee under the Indenture (as defined below) (the **Chargee**).

WHEREAS:

(A)     By an indenture dated [DATE] 2014 (as amended, restated or supplemented in any manner whatsoever from time to time) in respect of 8.00% senior secured notes due 2018 and made, among others, Inversiones Alsacia S.A. (as issuer), the Chargee (as trustee, principal paying agent, transfer agent and registrar), The Bank of New York Mellon (as U.S. collateral trustee) and Banco Santander Chile (as Chilean collateral trustee), the Issuer has agreed to provide New Notes (as defined therein) to the Qualified Holders (as defined therein) on the terms and conditions set out therein (the **Indenture**).

(B)     As security for the issuance of the New Notes, the Chargor has agreed to charge, inter alia, its interest in all of the shares legally and beneficially owned by the Chargor in Panamerican Investments Ltd., a company incorporated under the laws of Bermuda and having its registered office at Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda (the **Company**).

(C)     The Company has an authorised share capital of US$100 consisting of 100 common shares having a par value of US$1.00 each, 100 of which have been issued, beneficially owned by, and are registered in the name of the Chargor.

(D)     It is a condition of the Indenture that the Chargor shall execute this Charge in favour of the Chargee and the same is executed by the Chargor in consideration of the grant of the facility and for other good and valuable consideration (the sufficiency of which the Chargor hereby acknowledges).

NOW THIS CHARGE WITNESSES as follows:

**1        Interpretation**

1.1     In this Charge, unless the context otherwise requires, the following words and expressions shall have the following meanings:

| this "**Charge**" | means this share charge; |
|---|---|
| "**Charged Property**" | means all of the issued shares of the Company as described in recital (C) and all other shares in the Company from time to time legally or beneficially owned by the Chargor during the Security Period (together the **Charged Shares**) and all dividends or other distributions, interest and other moneys paid or payable after the date hereof in connection therewith and all interests in and all rights accruing at any time to or in respect of all or any of the Charged Shares; |
| "**Charged Shares**" | has the meaning assigned thereto in the definition of Charged Property; |
| "**Discharge of New Notes Obligations**" | means the occurrence of all of the following:<br><br>(a)     payment in full in cash of the principal of and interest and premium (if any) on the New Notes;<br><br>(b)     with respect to each New Notes Hedge Agreement, if any, either (i) payment in full in cash of all Hedging Obligations (other than any obligations for taxes, costs, indemnifications, reimbursements, damages and other liabilities in respect of which no claim or demand for payment has been made at such time) in respect of such New Notes Hedge Agreement and the expiration or termination of such New Notes Hedge Agreement or (ii) the cash collateralization of all Hedging Obligations in respect of such New Notes Hedge Agreement on terms reasonably satisfactory to the New Notes Hedge Counterparty party thereto; and<br><br>(c)     payment in full in cash of all other New Notes Obligations (excluding Hedging Obligations) that are outstanding and unpaid at the time the New Notes are paid in full in cash (other than any obligations for taxes, costs, indemnifications, reimbursements, damages and other liabilities in respect of which no claim or demand for payment has been made at such time). |
| "**Event of Default**" | shall have the meaning as set out in section in 7.01 of the |

|  | Indenture; |
|---|---|
| the "**Parties**" | means the parties to this Charge; |
| "**New Notes Obligations**" | means the New Notes and all other Obligations of the Issuer and/or the Guarantors in respect thereof and Hedging Obligations of the Issuer and/or the Guarantors in respect of the New Notes Hedge Agreements, if any; |
| "**Secured Obligations**" | means all of the present and future obligations and liabilities (whether actual or contingent and whether owed jointly or severally or in any other capacity whatsoever) of each of the Issuer and/or the Guarantors to the Holders, the Chargor and/or the Collateral Trustees under the Indenture, the New Notes, the New Notes Hedge Agreement, and the Chilean Debt Acknowledgement Deed; |
| "**Security Interest**" | means any charge, mortgage, pledge, lien, right of set-off, security interest or other encumbrance howsoever created or arising; |
| "**Security Period**" | means the period commencing on the date of execution of this Charge and terminating upon the date on which all Secured Obligations have been unconditionally and irrevocably paid and discharged in full. |

1.2     In this Charge:

1.2.1    unless otherwise defined herein capitalised words and expressions have the meanings ascribed to them in the Indenture;

1.2.2    references to statutory provisions shall be construed as references to those provisions as amended or re-enacted or as their application is modified by other provisions from time to time and shall include references to any provisions of which they are re-enactments (whether with or without modification);

1.2.3    references to clauses and schedules are references to clauses hereof and schedules hereto; references to sub-clauses or paragraphs are, unless otherwise stated, references to sub-clauses of the clauses hereof or paragraphs of the schedule in which the reference appears;

1.2.4    references to the singular shall include the plural and vice versa and references to the masculine shall include the feminine and/or neuter and vice versa;

1.2.5    references to persons shall include companies, partnerships, associations and bodies of persons, whether incorporated or unincorporated;

1.2.6     references to assets include property, rights and assets of every description; and

1.2.7     references to any document are to be construed as references to such document as amended, restated or supplemented in any manner whatsoever from time to time.

## 2     Chargor's Representations and Warranties

The Chargor hereby represents and warrants to the Chargee that:

2.1     the Chargor is a company duly organized, validly existing and in good order under the laws of Panama;

2.2     the authorised share capital of the Company consists solely of the shares described in recital (C) hereof and such shares are fully paid, legally and beneficially owned and registered as described in the said recital;

2.3     the Company is under no obligations, nor is it liable to become under any obligation, to issue any further shares nor, without limiting the generality of the foregoing, has the Company created any option to acquire shares in the Company or any securities exchangeable for or convertible into shares of the Company;

2.4     the Chargor is the legal and beneficial owner of all of the Charged Property free from any Security Interest (other than those created by this Charge) and any options or rights of pre-emption;

2.5     any Shares acquired by the Chargor after the date of this Charge shall (subject to this Charge) be legally and/or beneficially (as the case may be) owned by the Chargor, and in each case free from any option, equity, trust or Security;

2.6     the Chargor has the full power and authority (i) to be the legal and beneficial owner of the Charged Property, (ii) to execute and deliver this Charge and (iii) to comply with the provisions of, and perform all obligations under, this Charge;

2.7     this Charge constitutes the Chargor's legal, valid and binding obligations enforceable against the Chargor in accordance with its terms except as such enforcement may be limited by any relevant bankruptcy, insolvency, administration or similar laws affecting creditors' rights generally;

2.8     the entry into and performance by the Chargor of this Charge does not violate (i) any law or regulation of any governmental, official or regulatory authority, or (ii) any agreement, contract or other undertaking to which the Chargor is a party or which is binding upon the Chargor or any of its assets;

2.9     all consents, licences, approvals, permissions and authorisations required in connection with the entry into, performance, validity and enforceability of this Charge have been obtained and are in full force and effect; and

2.10    entry into this Charge by the Chargor and enforcement hereof by the Chargee will not contravene the terms of the memorandum of association or bye-laws of the Chargor or any agreement to which the Chargor is bound or to which the Charged Property is subject.

## 3    Chargor's Covenants

The Chargor hereby covenants with the Chargee that:

3.1    the Chargor shall, on request of the Chargee, provide to the Chargee immediately on receipt by the Chargor a copy of all notices, written consents, reports, accounts, circulars and other communications issued by the Company or by any third party in respect of the Charged Shares;

3.2    the Chargor will not without the prior written consent of the Chargee, at the instruction of the Trustee in accordance with the terms of the Indenture,

    3.2.1    permit any variation of the rights attaching to the Charged Shares;

    3.2.2    take or permit any action which might result in an increase or reduction in the authorized or issued share capital of the Company; or

    3.2.3    permit any amendment to the memorandum of association or bye-laws of the Company;

in each case to the extent that such variation or amendment would impair the creation, validity or perfection of the Charge.

3.3    the Chargor will not, except as expressly permitted by the Indenture, without the prior written consent of the Chargee, at the instruction of the Trustee in accordance with the terms of the Indenture,

    3.3.1    permit any person other than the Chargor, the Chargee or any transferee nominated by the Chargee on enforcement of this Charge to be the registered holder of any of the Charged Shares;

    3.3.2    effect or permit the Company to be continued to another jurisdiction outside of Bermuda; or

    3.3.3    effect or permit any scheme of arrangement, merger, amalgamation or other reorganization applicable to the Company,

in each case to the extent that, following such action, any or all of the Charged Shares ceases to be subject to the Charge.

## 4    Security

4.1    As continuing security for the Secured Obligations the Chargor as legal and beneficial owner hereby assigns and agrees to assign to the Chargee all benefits present and future, actual and contingent accruing in respect of the Charged Property and all of the Chargor's right, title and interest to and in the Charged Property including (without limitation) all voting and other consensual powers pertaining to the Charged Shares and hereby charges and agrees to charge in favour of the Chargee all of its interest in the Charged Property by way of a first fixed charge.

4.2    The Chargor hereby agrees to deliver, or cause to be delivered, to the Chargee on or before the date of the execution of this Charge:

4.2.1    duly executed undated share transfers in respect of the Charged Shares in favour of the Chargee or its nominees together with an executed and dated letter granting the Chargee or its nominee authority to date and present the same for Registration from a Responsible Officer of the Chargor, to the extent permitted to do so by the Indenture, in the form set out in Schedule I;

4.2.2    all share certificates representing the Charged Shares;

4.2.3    an executed irrevocable proxy made in respect of the Charged Shares in favour of the Chargee in the form set out in Schedule II;

4.2.4    executed but undated letters of resignation and release together with executed and dated letters of authority to date the same from each of the directors, alternate directors and officers of the Company in the form set out in Schedule III; and

4.2.5    an undertaking from the Company to register transfers of the Charged Shares to the Chargee or its nominee in the form set out in Schedule IV.

4.3    The Chargor will deliver, or cause to be delivered, to the Chargee immediately upon (subject to clause 3.2) the issue of any further Charged Shares, the items listed in clauses 4.2.1, 4.2.2, 4.2.3, and 4.2.5 in respect of all such further Charged Shares.

4.4    The Chargor will deliver, or cause to be delivered, to the Chargee immediately upon the appointment of any further director, alternate director or officer of the Company an undated, signed letter of resignation and a dated and executed authority to date letter from such further director, alternate director or officer in a form acceptable to the Chargee.

4.5    The Chargor hereby covenants that during the Security Period it will remain the legal and the beneficial owner of the Charged Property (subject only to the Security Interests hereby created) and that it will not:

4.5.1   create or suffer the creation of any Security Interests (other than those created by this Charge) on or in respect of the whole of any part of the Charged Property or any of its interest therein; or

4.5.2   following an Event of Default, vote in respect of the Charged Shares or receive any dividends or other distributions paid by the Company in respect of the Charged Shares,

in any such case without the prior consent in writing of the Chargee.

4.6   The Chargor shall remain liable to perform all the obligations assumed in relation to the Charged Property and the Chargee shall be under no obligation of any kind whatsoever in respect thereof or be under any liability whatsoever in the event of any failure by the Chargor to perform its obligations in respect thereof.

4.7   Upon the Chargee being satisfied that the Secured Obligations have been unconditionally and irrevocably paid and discharged in full, and following a written request therefor from the Chargor, the Chargee will, subject to being indemnified to its reasonable satisfaction for the costs and expenses, including but not limited to such reasonable and documented fees, expenses and disbursements of its counsel as are incurred by the Chargee in connection therewith, promptly release the security constituted by this Charge by delivering to the Chargor an executed deed of release in the form set out in Schedule V hereto.

## 5    Dealings with Charged Property

5.1   Unless and until an Event of Default has occurred which is continuing:

5.1.1   the Chargor shall be entitled to exercise all voting and/or consensual powers pertaining to the Charged Property or any part thereof for all purposes not inconsistent with the terms of this Charge and/or the Indenture and/or the New Notes Documents;

5.1.2   the Chargor shall be entitled to receive and retain any dividends, interest or other moneys or assets accruing on or in respect of the Charged Property or any part thereof; and

5.1.3   the Chargor shall be entitled to receive all notices pertaining to the Charged Shares.

5.2   The Chargor shall pay all calls, installments or other payments, and shall discharge all other obligations, which may become due in respect of any of the Charged Property and at any time after an Event of Default which is continuing, the Chargee may if instructed by the Trustee pursuant to the Indenture, make such payments or discharge such obligations on behalf of the Chargor.  Any sums so paid by the Chargee in respect thereof shall be repayable on demand and pending such repayment shall constitute part of the Secured Obligations.

5.3     The Chargee shall not have any duty to ensure that any dividends, distributions, interest or other moneys and assets receivable in respect of the Charged Property are duly and punctually paid, received or collected as and when the same become due and payable or to ensure that the correct amounts (if any) are paid or received on or in respect of the Charged Property or to ensure the taking up of any (or any offer of any) stocks, shares, rights, moneys or other property paid, distributed, accruing or offered at any time by way of redemption bonus, rights, preference, or otherwise on or in respect of, any of the Charged Property.

5.4     The Chargor hereby authorizes, subject to the terms of the New Notes Documents, the Chargee to arrange at any time and from time to time (if any Event of Default shall have occurred and be continuing and which shall have been notified in writing to the Chargee) for the Charged Property or any part thereof to be registered in the name of the Chargee (or its nominee) thereupon to be held, as so registered, subject to the terms of this Charge.

**6     Preservation of Security**

6.1     It is hereby agreed and declared that:

6.1.1     the security created by this Charge shall be held by the Chargee as a continuing security for the payment and discharge of the Secured Obligations and the security so created shall not be satisfied by any intermediate payment or satisfaction of any part of the Secured Obligations and shall remain in full force and effect unless and until the Secured Obligations have been fully and validly paid or discharged;

6.1.2     the security so created shall be in addition to and shall not in any way be prejudiced or affected by any of the Indentures and/or other New Notes Documents;

6.1.3     the Chargee shall not be bound to enforce any other security before enforcing the security created by this Charge;

6.1.4     no delay or omission on the part of the Chargee in exercising any right, power or remedy under this Charge shall impair such right, power or remedy or be construed as a waiver thereof nor shall any single or partial exercise of any such right, power or remedy preclude any further exercise thereof or the exercise of any other right, power or remedy.  The rights, powers and remedies herein provided are cumulative and not exclusive of any rights, powers and remedies provided by law and may be exercised from time to time and as often as the Chargee may deem expedient as instructed by the Trustee in accordance with the terms of the Indenture; and

6.1.5   any waiver by the Chargee of any terms of this Charge shall only be effective if given in writing to the Chargor and then only for the purpose and upon the terms for which it is given.

6.2   Any settlement or discharge under this Charge between the Chargee and the Chargor shall be conditional upon no security or payment to the Chargee by the Company or the Chargor or any other person being avoided or set-aside or ordered to be refunded or reduced by virtue of any provision or enactment relating to bankruptcy, insolvency, administration or liquidation for the time being in force and, if such condition is not satisfied, the Chargee shall be entitled to recover from the Chargor on demand the value of such security or the amount of any such payment as if such settlement or discharge had not occurred.

6.3   The rights of the Chargee under this Charge and the security hereby constituted shall not be affected by any act, omission, matter or thing which, but for this provision, might operate to impair, affect or discharge such rights and security, in whole or in part, including without limitation, and whether or not known to or discoverable by the Chargor, the Chargee or any other person:

6.3.1   any time or waiver granted to or composition with the Chargor or any other person;

6.3.2   the taking, variation, compromise, renewal or release of or refusal or neglect to perfect or enforce any rights, remedies or securities against the Chargor or any other person;

6.3.3   any legal limitation, disability, incapacity or other circumstances relating to the Chargor or any other person;

6.3.4   any amendment or supplement to the Indenture, the other New Notes Documents or any other document or security;

6.3.5   the bankruptcy, dissolution, liquidation, amalgamation, merger, reconstruction or reorganisation of the Chargor or any other person; or

6.3.6   the unenforceability, invalidity or frustration of any obligations of the Chargor or any other person under the Indenture, the New Notes, the other New Notes Documents or any other document or security.

6.4   Until the Secured Obligations have been unconditionally and irrevocably satisfied and discharged in full to the satisfaction of the Chargee, the Chargor shall not by virtue of any payment made hereunder on account of the Secured Obligations or by virtue of any enforcement by the Chargee of its rights under, or the security constituted by, this Charge or by virtue of any relationship between or transaction involving, the Chargor and the Company (whether such relationship or transaction shall constitute the Chargor as creditor of the Company, guarantor of the obligations of the Company or as a party

subrogated to the rights of others against the Company or otherwise howsoever and whether or not such relationship or transaction shall be related to, or in connection with, the subject matter of this Charge):

6.4.1    exercise any rights of subrogation in relation to any rights, security or moneys held or received or receivable by the Chargee or any person;

6.4.2    exercise any right of contribution from any co-surety liable in respect of such moneys and liabilities under any other guarantee, security or agreement;

6.4.3    exercise any right of set-off or counterclaim against the Company or any such co-surety;

6.4.4    receive, claim or have the benefit of any payment, distribution, security or indemnity from the Company or any such co-surety; or

6.4.5    unless so directed by the Chargee at the instruction of the Trustee in accordance with the terms of the Indenture (when the Chargor will prove in accordance with such directions), claim as creditors of the Company or any such co-surety in competition with the Chargee.

The Chargor shall hold in trust for the Chargee and forthwith pay or transfer (as appropriate) to the Chargee any such payment (including an amount equal to any such set-off), distribution or benefit of such security, indemnity or claim in fact received by it.

6.5    Until the Secured Obligations have been unconditionally and irrevocably satisfied and discharged in full to the satisfaction of the Chargee, the Chargee may at any time keep in a separate account or accounts (with no liability to pay interest or investment income thereon) in the name of the Chargee for as long as instructed by the Trustee in accordance with the terms of the Indenture, any moneys received, recovered or realised under this Charge or under any other guarantee, security or agreement relating in whole or in part to the Secured Obligations without being under any intermediate obligation to apply the same or any part thereof in or towards the discharge of such amount.

## 7    Enforcement of Security

7.1    At any time after the occurrence of an Event of Default which is continuing and which has been notified in writing to a Responsible Officer of the Chargee, subject to the terms of the New Notes Documents, the security hereby constituted shall become immediately enforceable and the power of sale and other powers specified in Section 30 of the Conveyancing Act 1983 (applied in respect of personal property as well as real property) as varied or amended by this Charge shall be immediately exercisable upon and at any time thereafter and without prejudice to the generality of the foregoing the Chargee at the instruction of the Trustee in accordance with the terms of the Indenture:

7.1.1   may solely and exclusively exercise all voting and/or consensual powers pertaining to the Charged Property or any part thereof and may exercise such powers in such manner as the Chargee may think fit; and/or

7.1.2   may remove the then existing directors and officers (with or without cause) by dating and presenting the undated, signed letters of resignation delivered pursuant to this Charge; and/or

7.1.3   may receive and retain all dividends, distributions, interest or other moneys or assets accruing on or in respect of the Charged Property or any part thereof, such dividends, distributions, interest or other moneys or assets to be held by the Chargee, until applied in the manner described in clause 7.5, as additional security charged under and subject to the terms of this Charge and any such dividends, distributions, interest or other moneys or assets received by the Chargor after such time shall be held in trust by the Chargor for the Chargee and paid or transferred to the Chargee on demand;

7.1.4   may appoint by instrument any person or persons to be a receiver or receivers of the Charged Property (the **Receiver**) and remove any Receiver so appointed from all or any part of the Charged Property and appoint another or others in his stead;

7.1.5   may sell, transfer, grant options over or otherwise dispose of the Charged Property or any part thereof at any such place and in any such manner and at any such price or prices as the Chargee may deem fit, and thereupon the Chargee shall have the right to deliver, assign and transfer in accordance therewith the Charged Property so sold, transferred, granted options over or otherwise disposed of without liability; and/or

7.1.6   may complete any undated blank share transfer forms of all or any part of the Charged Property by dating the same and/or inserting its name or the name of its nominee as transferee.

7.2   The Chargor hereby waives the entitlement conferred by Section 29 of the Conveyancing Act 1983 (to the extent applicable) and agrees that Section 31 of that Act (to the extent applicable) shall not apply to the security created by this Charge.  For the avoidance of doubt, the powers of the Chargee by virtue of this Charge shall not be limited to those specified in Section 30 of the Conveyancing Act 1983.  For the purpose of all powers conferred by statute, the Secured Obligations shall be deemed to have become due and payable on the date hereof.

7.3   The Chargee shall not be obliged to make any enquiry as to the nature or sufficiency of any payment received by it under this Charge or to make any claim or to take any action to collect any moneys assigned by this Charge or to enforce any rights or benefits assigned to the Chargee by this Charge or to which the Chargee may at any time be entitled hereunder.

7.4     Upon any sale by the Chargee of the Charged Property or any part thereof, the purchaser shall not be bound to see or enquire whether the Chargee's power of sale has become exercisable in the manner provided in this Charge and the sale shall be deemed to be within the power of the Chargee, and the receipt of the Chargee for the purchase money shall effectively discharge the purchaser who shall not be concerned with the manner of application of the proceeds of sale or be in any way answerable therefor.

7.5     All moneys received by the Chargee pursuant to this Charge shall be held by it upon trust in the first place to pay or make good all such expenses, liabilities, indemnities, losses, costs, duties, fees, charges or other moneys whatsoever as may have been paid or incurred by the Chargee in exercising any of the powers specified or otherwise referred to in this Charge and the balance shall be applied in accordance with the following order of priority:-

(a)     firstly, in paying or providing for all reasonable costs, liabilities, indemnities, losses, duties, fees, charges, expenses or other money whatsoever as may have been paid or incurred by the Chargee, any nominee of the Chargee, the Trustee, Agent or any Receiver under, or in connection with, this Charge (including, but not limited to, any Receiver's reasonable remuneration);

(b)     secondly, to the applicable New Notes Hedge Counterparty, if any, for application to the payment of amounts due under the New Notes Hedge Agreements, if any, in an amount equal to the Hedge Preference Amount;

(c)     thirdly, equally and ratably, to the Trustee or the applicable New Notes Hedge Counterparty for application to the payment of all outstanding New Notes Obligations that are then due and payable in such order as may be provided in the applicable New Notes Documents in an amount sufficient to pay in full in cash all outstanding New Notes Obligations that are then due and payable (including, to the extent legally permitted, all interest accrued thereon after the commencement of any Insolvency or Liquidation Proceeding at the rate, including any applicable post-default rate, specified in the New Notes Documents, even if such interest is not enforceable, allowable or allowed as a claim in such proceeding); and

(d)     fourthly, in paying the surplus (if any) to the Chargor or such other person entitled to it.

7.6     Neither the Chargee nor its agents, managers, officers, employees, delegates and advisers shall be liable for any claim, demand, liability, loss, damage, cost or expense incurred or arising in connection with the exercise or purported exercise of any rights, powers and discretions hereunder in the absence of gross negligence or willful misconduct; however, in no event shall the Chargee be liable for consequential damages.

7.7     The Chargee shall not by reason of the taking of possession of the whole or any part of the Charged Property or any part thereof be liable to account as mortgagee-in-possession

or for anything except actual receipts or be liable for any loss upon realisation or for any default or omission for which a mortgagee-in-possession might be liable.

7.8    In addition to all other rights or powers vested in the Chargee hereunder or by statute or otherwise, the Receiver shall have the following powers;

   7.8.1    to take possession of, collect and get in all or any part of the Charged Property;

   7.8.2    in the name of the Chargor or in its own name, to bring, prosecute, enforce, defend and abandon applications, claims, disputes, actions, suits and proceedings in connection with all or any part of the Charged Property and to submit to arbitration, negotiate, compromise and settle any such applications, claims, disputes, actions, suits or proceedings;

   7.8.3    to complete any instruments of transfer of the Charged Property into the name of the Receiver or its nominee;

   7.8.4    to sell, call in, collect and convert into money the Charged Property or any of it at such place and in such manner and at such price or prices as such Receiver shall think fit;

   7.8.5    to make any arrangement or compromise which such Receiver shall think expedient;

   7.8.6    to appoint managers, offices and agents for the above purposes at such reasonable remuneration as the Receiver may determine; and

   7.8.7    to do all such other acts and things as may be considered to be incidental or conducive to any of the matters or powers aforesaid and which the Receiver lawfully may or can do as agent for the Chargor.

7.9    Every Receiver shall so far as it concerns responsibility for such Receiver's acts be deemed to be an agent of the Chargor, and the Chargor shall be solely responsible for his acts and defaults and for the payment of his remuneration and no Receiver shall at any time act as agent for the Chargee.

7.10    Every Receiver shall be entitled to remuneration for his services at a rate to be fixed by agreement between him and the Chargee at the instruction of the Trustee in accordance with the terms of the Indenture (or, failing such agreement, to be fixed by the Chargee at the instruction of the Trustee in accordance with the terms of the Indenture) appropriate to the work and responsibilities involved, upon the basis of current industry practice.

## 8    Further Assurances

The Chargor shall at any time necessary or advisable under applicable law, and from time to time as the Chargee may require, execute and do all such assurances, acts and things for:

8.1    perfecting, protecting or ensuring the priority of the security hereby created (or intended to be created) including registration of the Charge pursuant to Part V of the Bermuda Companies Act 1981;

8.2    preserving or protecting any of the rights of the Chargee under this Charge;

8.3    ensuring that the security constituted by this Charge and the covenants and obligations of the Chargor under this Charge shall inure to the benefit of any assignee of the Chargee;

8.4    facilitating the appropriation or realisation of the Charged Property or any part thereof; or

8.5    exercising any power or authority vested in the Chargee under this Charge,

in any such case, forthwith upon demand by the Chargee and solely and exclusively at the expense of the Issuer and the Guarantors.

8.6    The Chargor shall provide such assurances and do all acts and things the Receiver may in his absolute discretion require for the purpose of exercising the powers (or giving effect to the exercise of the powers) conferred on the Receiver hereunder or any of them and the Chargor hereby irrevocably appoints the Receiver to be its lawful attorney in fact to do any act or thing and to exercise all the powers of the Chargor for the purpose of exercising the powers (or giving effect to the exercise of the powers) conferred on the Receiver hereunder or any of them.

## 9    Limited Recourse

For the avoidance of doubt, the Chargor shall have no liability in respect of the New Notes Obligations other than as may be recovered by exercising remedies in respect of this Charge, and without limitation, shall not be responsible for any costs or expenses of the Chargee or the Receiver in respect of this Charge. This shall not affect the ability of the Chargee to recover such costs or expenses from the Issuer or the Guarantors under any other agreement.

**10       Power of Attorney**

The Chargor, by way of security and in order more fully to secure the performance of its obligations hereunder, hereby following an Event of Default which is continuing irrevocably appoints the Chargee and the persons deriving title under it jointly and also severally to be its attorney to execute and complete in favour of the Chargee or its nominees or of any purchaser any documents which the Chargee may from time to time require for perfecting its title to or for vesting any of the assets and property hereby charged or assigned in the Chargee or its nominees or in any purchaser and to give effectual discharges for payments, to take and institute on non-payment of any amounts overdue under any New Notes Document all steps and proceedings in the name of the Chargor or of the Chargee for the recovery of such moneys, property and assets hereby charged and to agree accounts and make allowances and give time or other indulgence to any surety or other person liable in connection with this Charge and otherwise generally for it and in its name and on its behalf and as its act and deed or otherwise to execute, seal and deliver and otherwise perfect and do any such legal assignments and other assurances, charges, authorities and documents over the moneys, property and assets hereby charged, and all such deeds, instruments, acts and things (including, without limitation, those referred to in clause 7) which may be required for the full exercise of all or any of the powers conferred or which may be deemed proper on or in connection with any of the purposes aforesaid.  The power hereby conferred shall be a general power of attorney and the Chargor hereby ratifies and confirms and agrees to ratify and confirm any instrument, act or thing which any such attorney may execute or do.  In relation to the power referred to herein, the exercise by the Chargee of such power shall be conclusive evidence of its right to exercise the same.

**11       Notices**

Any notice required to be given hereunder shall be in writing in the English language and shall be served in accordance with section 13.02 of the Indenture.

**12       Assignments**

12.1     The Chargor acknowledges and accepts that, subject to the provisions of the New Notes Documents, the Chargee may assign or transfer all or any part of its rights or obligations under this Charge to any assignee or transferee without the consent of the Chargor. The Chargee shall notify the Chargor promptly following any such assignment or transfer.

12.2     The Chargor hereby undertakes that he shall promptly comply with all reasonable requests of the Chargee or its successors and assigns in respect of any such transfer (a **transferee**) and take all steps as the Chargee may reasonably request to give the transferee the benefit of this Charge and execute any further agreement or other instrument which may be required to give effect to or perfect any such transfer.

12.3     The Chargor may not assign, novate, transfer or charge all or any of its rights or obligations under this Charge.

**13**      **Miscellaneous**

13.1    The Chargee, at any time and from time to time, may delegate by power of attorney or in any other manner to any person or persons all or any of the powers, authorities and discretions which are for the time being exercisable by the Chargee under this Charge in relation to the Charged Property or any part thereof.  Any such delegation may be made upon such terms and be subject to such regulations as the Chargee may think fit.  The Chargee shall not be in any way liable or responsible to the Chargor for any loss or damage arising from any act, default, omission or misconduct on the part of any such delegate provided the Chargee has acted reasonably in selecting such delegate.

13.2    The rights, privileges, immunities and indemnities of the U.S. Collateral Trustee set forth under the Collateral Trust Agreement are hereby incorporated herein by reference and shall apply, *mutatis mutandis*, to the Chargee.

13.3    If any of the clauses, conditions, covenants or restrictions of this Charge or any deed or document emanating from it shall be found to be void but would be valid if some part thereof were deleted or modified, then such clause, condition, covenant or restriction shall apply with such deletion or modification as may be necessary to make it valid and effective.

13.4    This Charge (together with any documents referred to herein) constitutes the whole agreement between the Parties relating to its subject matter and no variations hereof shall be effective unless made in writing and signed by each of the Parties.

13.5    The headings in this Charge are inserted for convenience only and shall not affect the construction of this Charge.

13.6    This Charge may be executed in counterparts each of which when executed and delivered shall constitute an original but all such counterparts together shall constitute one and the same instrument.

13.7    Without prejudice to any other mode of service allowed under any relevant law, the Chargor:

(a)    irrevocably appoints [     ] as its agent for service of process in relation to any proceedings before the Bermuda courts in connection with this Charge; and

(b)    agrees that failure by the process agent to notify the Chargor of the process shall not invalidate the proceedings concerned.

If any person appointed as process agent for the Chargor is unable for any reason to act as agent for service of process, the Chargor must immediately (and in any event within ten days of such event taking place) appoint another agent on terms acceptable to the Chargee and notify the Chargee of the same in writing. Failing this, the Chargee may appoint another agent for this purpose.

## 14        Law and Jurisdiction

This Charge and any non-contractual obligations arising out of or in connection with it shall be governed by and construed in accordance with the laws of Bermuda and the Parties hereby irrevocably submit to the non-exclusive jurisdiction of the courts of Bermuda, provided that nothing in this Clause shall affect the right of the Chargee to serve process in any manner permitted by law or limit the right of the Chargee to take proceedings with respect to this Charge against the Chargor in any jurisdiction nor shall the taking of proceedings with respect to this Charge in any jurisdiction preclude the Chargee from taking proceedings with respect to this Charge in any other jurisdiction, whether concurrently or not.

IN WITNESS whereof the parties hereto have caused this Charge to be jointly and severally duly executed as a Deed the day and year first before written.

Executed and Delivered                )
as a Deed by                          )
                                      )
for and on behalf of                  )
**Global Public Services, S.A.**      )
in the presence of                    ) ……………………………………………………….

_____
Signature of Witness


_____
Name, address and occupation of Witness



SIGNED and DELIVERED as a Deed

by

duly authorised for and on behalf of

**The Bank of New York Mellon**


Director

Director/Secretary

## SCHEDULE I

### SHARE TRANSFER FORM
### (EXEMPTED COMPANY)

**FULL NAME AND ADDRESS**
**OF TRANSFEROR:**    **Global Public Services, S.A.**
Avenida Santa Clara 555
Huechuraba, Santiago
Chile

_____

**FULL NAME AND ADDRESS**
**OF TRANSFEREE:**

_____

**FULL NAME OF COMPANY:**    **Panamerican Investments Ltd.**

_____

**NUMBER AND FULL**
**DESCRIPTION OF SHARES:**

_____

**CONSIDERATION:**    **In furtherance of a share charge made between Global Public Services, S.A. and The Bank of New York Mellon and dated _____, 2014**

_____

The Transferor hereby transfers to the Transferee the shares described above free of all liens, charges and encumbrances and together with all rights now or hereafter attaching thereto, but subject to the Memorandum of Association and Bye-Laws of the Company.

Duly signed this _____ day of _____, 20____, by or on behalf of:

**The Transferor in the**_____
**presence of:**    **Global Public Services, S.A.**

**Witness (Signature):** _____

**Witness Name (Print):** _____

**Witness Address (Print):**_____

**The Transferee**
**in the presence of:** _____

**Witness (Signature):** _____

**Witness Name (Print):** _____

**Witness Address (Print):**_____

Date: _____, 2014


Dear Sirs

I, [*name of Responsible Officer of the Chargor*], hereby authorise any officer or agent of the Transferee at any time, as permitted under the terms of the Indenture, to date and submit the attached Share Transfer Form for registration in the office of the Registrar of Companies.

Yours faithfully



[*name of Responsible Officer*]

## SCHEDULE II

## IRREVOCABLE PROXY

We, Global Public Services, S.A., of Avenida Santa Clara 555, Huechuraba, Santiago, Chile (the **Shareholder**) being the holder of 100 shares of Panamerican Investments Ltd., a Bermuda exempted company (the **Company**), hereby appoint(s) each and every officer of The Bank of New York Mellon and its nominee(s) from time to time (the **Proxy Holders**) the true and lawful attorney, representative pursuant to Section 78(1)(a) of the Companies Act 1981, and proxy of the Shareholder for and in the Shareholder's name, place and stead to attend all meetings of the shareholders of the Company and to vote any and all shares in the Company at the time standing in the Shareholder's name and to exercise all consensual rights in respect of such shares (including without limitation giving or withholding written consents of shareholders and calling special general meetings of shareholders) upon and during the continuance of an Event of Default (as defined in the share charge dated [DATE], 2014 and made between the Shareholder and The Bank of New York Mellon (the **Share Charge**)).

The Shareholder hereby affirms that this proxy is given pursuant to Clause 4.2.3 of the Share Charge. **THIS PROXY IS COUPLED WITH AN INTEREST AND IS IRREVOCABLE.**

The Shareholder hereby ratifies and confirms and undertakes to ratify and confirm all that any Proxy Holder may lawfully do or cause to be done by virtue hereof.

If at any time this proxy shall for any reason be ineffective or unenforceable or fail to provide the Proxy Holders with the rights or the control over the Shareholder's shares of the Company purported to be provided herein, the Shareholder shall execute a replacement instrument which provides the Proxy Holders with substantially the same control over the Company as contemplated herein. This irrevocable proxy shall be governed by the laws of Bermuda and the Shareholder irrevocably submits to the jurisdiction of the courts of Bermuda in relation to the matters contained herein.

**EXECUTED and DELIVERED**
as a DEED by

_____

for and on behalf of
Global Public Services, S.A.
in the presence of:

Name:              …………………………………
Address:           …………………………………
Occupation:      …………………………………

Witness:_____

**SCHEDULE III**

**LETTER OF RESIGNATION AND RELEASE**

To:     The Bank of New York Mellon
        101 Barclay Street, Floor 7W, New York, New York 10286, United States of America

I, [*name of director*], hereby tender my resignation as a Director [and [*other office*]] of Panamerican Investments Ltd. (the **Company**) with effect from the date of this letter.

I confirm that I have no claims or rights of action against the Company for compensation for loss of office.

_____     Date:
[*name of director*]

To:     The Bank of New York Mellon (the **Chargee**)
        101 Barclay Street, Floor 7W, New York, New York 10286, United States of America


Date: _____, 2014


Dear Sirs

I, [*name of director*], hereby authorise any officer or agent of the Chargee at any time to date and submit the attached letter of resignation on my behalf.

Yours faithfully


_____
[*name of director*]

## SCHEDULE IV

## UNDERTAKING

We, Panamerican Investments Ltd. (the **Company**) hereby irrevocably UNDERTAKE and COVENANT with The Bank of New York Mellon (or to any nominee of The Bank of New York Mellon) (the **Transferee**) to register all transfers of Charged Shares submitted to the Company for registration by the Transferee as soon as practical following the submission of such transfers and evidence of any required consent of the Bermuda Monetary Authority assenting to such transfers.

This Undertaking is given pursuant to <u>clause 4.2.5</u> of the Share Charge (the **Share Charge**) dated _____, 2014, as amended from time to time, between the Transferee and Global Public Services, S.A., and any capitalised terms used herein and not otherwise defined herein shall have the meanings given such terms in the Share Charge.


EXECUTED AS AND DELIVERED AS A DEED  )
                                      )
By _____    )
Director of the Company in the presence of        )


Name of witness:
Address of witness:

**SCHEDULE V**

**DEED OF RELEASE**


**THE BANK OF NEW YORK MELLON**


**in favour of**


**GLOBAL PUBLIC SERVICES, S.A.**


———————————————————————

**DEED OF RELEASE**

———————————————————————


APPLEBY (BERMUDA) LIMITED

Canon's Court, 22 Victoria Street
Hamilton HM12, Bermuda

DEED OF RELEASE

THIS DEED OF RELEASE dated ___ [ ], 20[ ]

**BETWEEN**

(1) **Global Public Services, S.A.,** a company incorporated and organised under the laws of Panama (the **Chargor**); and

(2) **The Bank of New York Mellon**, having its principal place of business at 101 Barclay Street, Floor 7W, New York, New York 10286, United States of America (the **Chargee**).

**WHEREAS**

A    As continuing security for the Secured Obligations, the Chargor granted a charge over the Shares in the Company dated _____, 2014 in favour of the Chargee (the **Share Charge**).

B    The Charge was registered with the Registrar of Companies (Bermuda) on [ ], 2014 bearing serial number [ ].

C    The Chargee has agreed to release the Charge pursuant to the terms of this Deed of Release.

**IT IS AGREED** as follows:

**1.    DEFINITIONS AND INTERPRETATION**

**1.1**    IN THIS DEED OF RELEASE, TERMS DEFINED IN THE FACILITY AGREEMENT SHALL, UNLESS OTHERWISE DEFINED HEREIN, HAVE THE SAME MEANING HEREIN AND:

"**Company**" means Panamerican Investments Ltd., a company incorporated under the laws of Bermuda.

"**Secured Obligations**" has the same meaning as defined within the Share Charge.

"**Shares**" means all of the shares in the share capital of the Company subject to the Charge.

**1.2**    It is intended by the parties to this Deed of Release that this document will take effect as a deed.

## 2.    RELEASE

**2.1**    By this Deed of Release, the Chargee releases and discharges the Chargor from its obligations to the Chargee under the Charge.

**2.2**    It is hereby confirmed that the Chargee has no claim against the Chargors under the Charge or any other obligations in connection therewith or supplemental thereto.

## 3.    UNDERTAKING

**3.1**    The Chargee, subject to being indemnified to its satisfaction for the costs and expenses, including (but not limited to) reasonable and documented legal fees, expenses and disbursements incurred in connection herewith, undertakes to do all things and to take all such action as is necessary to effect the release of the Charge.

## 4.    COUNTERPARTS

**4.1**    This Deed of Release may be executed in any number of counterparts which, taken together, shall be deemed to constitute one and the same instrument.

## 5.    LAW

**5.1**    This Deed of Release shall be governed by and construed in accordance with the laws of Bermuda.

**5.2**    The parties to this Deed of Release irrevocably agree that the courts of Bermuda are to have jurisdiction in respect of any action or proceedings arising out of or in connection with this Deed of Release.

**IN WITNESS WHEREOF** the Parties hereto have caused this Deed of Release to be executed the day and year first above written:


SIGNED and DELIVERED as a Deed

by

duly authorised for and on behalf of

**THE BANK OF NEW YORK MELLON**


Director

Director/Secretary